# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

CARY HENDRICK, *et al.*,

      Plaintiffs,

v.                                 CASE NO.  7:16-CV-0095

DONALD CALDWELL, *et al.*,

      Defendants.


## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Linda L. Bryant  (VSB #35010)
Deputy Attorney General

Margaret Hoehl O'Shea  (VSB #66611)
Assistant Attorney General

Nancy Hull Davidson (VSB #85536)
Assistant Attorney General


OFFICE OF THE ATTORNEY GENERAL
Criminal Justice & Public Safety Division
900 East Main Street
Richmond, Virginia 23219
(804) 225-2206 - Telephone
(804) 786-4239 - Facsimile
moshea@oag.state.va.us

*Counsel for Defendants*

April 12, 2016

# TABLE OF CONTENTS

**Page**

INTRODUCTION………………………………………………………………………1-2

STATEMENT OF FACTS…………………………………………………………...2-5

ARGUMENT AND AUTHORITIES………………………………………………5-50

    I.      Standard of Review: Rule 12(b)(1)…………………………………………...6

    II.     Standard of Review: Rule 12(b)(2)…………………………………………...6-7

    III.    Summary of Allegations……………………………………………………7-8

    IV.   Applicable Virginia Statutes………………………………………………8-10

    V.    The Complaint is Procedurally-Barred……………………………..………………10-24

        a.     Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction over Plaintiffs' challenge to the constitutionality of Virginia's interdiction statutes.

        b.     Plaintiffs' complaint is precluded by *res judicata*.

        c.     Plaintiffs' claims are not ripe for federal adjudication.

        d.     The claims for declaratory relief by Plaintiffs Manning, Williams, Deckerhoff, and Walls are barred by the statute of limitations.

    VI.   The Counts Alleging Violations of the Federal Constitution Do Not State a Claim Upon Which Relief May Be Granted…………………24-44

        a.     Claim One: Any retrospective Eighth Amendment claims are barred by *Heck v. Humphrey*, and the prospective Eighth Amendment allegations fail to state a claim.

              *1.*    *Retrospective Eighth Amendment Claims are barred by Heck v. Humphrey.*

              *2.*    *Virginia's interdiction statutes punish conduct, not status.*

              *3.*    *A misdemeanor criminal sentence imposed under the interdiction statute does not offend Eighth Amendment proportionality principles.*

ii

b.      Claim Three:  Plaintiffs do not possess a protected liberty interest, and any due process rights they possess are satisfied by the requirements for notice and an opportunity to be heard, along with the process afforded in any predicate criminal convictions.

c.      Claim Five:  Plaintiffs cannot challenge the interdiction statute of vagueness grounds because they plainly fall within its ambit, and "habitual drunkard" has an accepted definition that encompasses Plaintiffs.

d.      Claim Seven:  Because Plaintiffs are not members of a protected group, because they have not alleged discriminatory intent, and because the interdiction statues have a rational purpose, Plaintiffs have not alleged a plausible equal protection claim.

VII.    Claims Two, Four, and Six, Which Are Based on Provisions of the Virginia Constitution, Fail to State a Claim Upon Which Relief Can Be Granted…………………………………………………….44-50

a.      *Defendants are entitled to sovereign and Eleventh Amendment immunity.*

b.      *The Virginia constitutional provisions are not self-executing and, therefore, do not support independent state-law claims.*

CONCLUSION…………………………………………………………………......51

iii

## INTRODUCTION

Plaintiffs are five individuals who have been interdicted under Virginia law and, therefore, are forbidden from purchasing, possessing, or consuming alcoholic beverages. Plaintiffs allege that, because they are homeless alcoholics, this state statutory scheme is unconstitutional as applied to them. Specifically, Plaintiffs have filed suit under 42 U.S.C. § 1983, alleging violations of their civil rights under the Eighth and Fourteenth Amendments, as well as rights secured by various provisions of the Virginia Constitution. Plaintiffs seek declaratory and injunctive relief, as well as plaintiff class certification for all similarly-situated individuals in the Commonwealth of Virginia.

Defendants Caldwell and Herring are the elected Commonwealth's Attorneys for the cities of Roanoke and Richmond, respectively. Plaintiffs have brought suit against Defendants in their official capacities, additionally designating them as representatives of a putative defendant class comprised of all 120 elected Commonwealth's Attorneys in the Commonwealth of Virginia.

A civil rights action under 42 U.S.C. § 1983 is not the appropriate vehicle to collaterally challenge an un-appealed civil determination by a state trial court, particularly when the applicability and impact of that judgment is contingent upon unrealized future events. Principles of comity suggest that a federal court cannot function as a *de facto* appellate court for a state judgment that has not been appealed or otherwise challenged through the state courts.

Specifically, because a ruling in Plaintiffs' favor would, of necessity, invalidate existing state court judgments, the *Rooker-Feldman* doctrine precludes this Court from exercising jurisdiction over this case. Moreover, because Plaintiffs have had a full and fair opportunity to contest the constitutionality of their state court interdictions, those judgments carry preclusive

1

weight, rendering this suit barred under principles of claim preclusion. Because Plaintiffs' request for future equitable relief is tied to uncertain and speculative facts that may or may not come to pass, those claims are not ripe for adjudication. And because four of these five Plaintiffs were interdicted over two years ago, their request for declaratory relief is barred under the applicable statute of limitations.

Plaintiffs' case fails on the merits as well. A civil rights action cannot be used to collaterally attack a criminal sentence under the Eighth Amendment, absent a previous court order invalidating or vacating that judgment. Because Plaintiffs have not alleged lack of notice or an opportunity to be heard, and because they have failed to utilize existing state court remedies, their procedural due process allegation fails to state a plausible claim for relief. Because the phrase "habitual drunkard" is sufficiently defined, and because Plaintiffs' conduct clearly falls within the scope of the challenged statute, the interdiction statute is not void-for-vagueness. Also, because homeless alcoholics are not members of a protected class, and because Plaintiffs have not alleged that Defendants acted with discriminatory intent, the equal protection claim should be dismissed for failure to state a claim upon which relief can be granted. Finally, the state constitutional claims fail because they are predicated on constitutional provisions that are not self-executing and, therefore, cannot support an independent cause of action over which this Court could assert pendent jurisdiction.

## STATEMENT OF FACTS

"[W]hen ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint."[1] So viewed, the essential allegations of the complaint are as follows.

---

[1] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

2

1.      Plaintiffs Cary Hendrick, Bryan Manning, and Ryan Williams are residents of the City of Roanoke.  Plaintiffs Richard Deckerhoff and Eugene Walls are residents of the City of Richmond.

2.      Defendant Donald Caldwell is the elected Commonwealth's Attorney for Roanoke, Virginia, and Defendant Michael Herring is the elected Commonwealth's Attorney for Richmond, Virginia.  Defendants "represent[] the interests of the people of Virginia and [have] the discretion as to whether a defendant should be prosecuted and, if so, how the case should be tried."[2]

3.      Each plaintiff is "homeless" and "suffers from alcohol use disorder."  These two factors "make[] it nearly impossible for [them] to cease or mitigate [their] alcohol consumption."[3]

4.      On January 4, 2016, the Circuit Court for the City of Roanoke entered an order of interdiction, prohibiting Plaintiff Hendrick from possessing, purchasing, or consuming alcohol.  Plaintiff Hendrick was present at the interdiction proceeding, but he was not represented by counsel.[4]  He did not appeal the judgment of interdiction.[5]

5.      On October 10, 2010, the Circuit Court for the City of Roanoke entered an order of interdiction, prohibiting Plaintiff Manning from possessing, purchasing, or consuming alcohol.  Plaintiff Manning was not present at the interdiction proceeding.[6]  He did not appeal the

---

[2] Compl. ¶¶ 101, 102.

[3] Compl. ¶¶ 42-43, 53, 58, 67, 79, 83, 93, 94.

[4] Compl. ¶ 40.

[5] This assertion is predicated upon the online records system for the Virginia Court of Appeals and the Virginia Supreme Court, available at www.courts.state.va.us, along with the absence of any allegations in the complaint regarding an appeal or other challenge to the court's final order.

[6] Compl. ¶ 49.

3

judgment of interdiction.[7]  Plaintiff Manning has since "been arrested and prosecuted over thirty times under the Interdiction Statute."[8]

6.     On February 7, 2012, the Circuit Court for the City of Roanoke entered an order of interdiction, prohibiting Plaintiff Williams from possessing, purchasing, or consuming alcohol.  Plaintiff Williams was not present at the interdiction proceeding.[9]  He did not appeal the judgment of interdiction.[10]  Plaintiff Williams has since "been arrested and prosecuted at least twenty-five times under the interdiction statute."[11]

7.     On August 21, 2009, the Circuit Court for the City of Petersburg entered an order of interdiction prohibiting Plaintiff Deckerhoff from possessing, purchasing, or consuming alcohol.  Plaintiff Deckerhoff was not present at the interdiction proceeding.[12]  He did not appeal the judgment of interdiction.[13]  Plaintiff Deckerhoff has since been arrested and prosecuted approximately eleven times under the interdiction statute.[14]

8.     On June 12, 2012, the Circuit Court for the City of Richmond entered an order of interdiction prohibiting Plaintiff Walls from possessing, purchasing, or consuming alcohol. Plaintiff Walls was not present at the interdiction proceeding.[15]  He did not appeal the judgment

---

[7] *See supra* n.5.

[8] Compl. ¶ 51.

[9] Compl. ¶ 63.

[10] *See supra* n.5.

[11] Compl. ¶ 65.

[12] Compl. ¶ 75.

[13] *See supra* n.5.

[14] Compl. ¶ 77.

[15] Compl. ¶ 89.

4

of interdiction.[16]  Plaintiff Walls has since been arrested and prosecuted at least twelve times under the interdiction statute.[17]

## ARGUMENT AND AUTHORITIES

Plaintiffs' civil rights suit is procedurally-barred.  Because Plaintiffs have not appealed or otherwise challenged their interdiction determinations in state court, and because no Plaintiff is facing a pending interdiction prosecution, Plaintiffs are asking this Court to speculate that any future prosecution would violate their civil rights, while effectively invalidating their past judgments of interdiction and any corresponding criminal convictions.  This Court should reject Plaintiffs' request to issue what would, in essence, constitute an advisory opinion, and should further refrain from exercising jurisdiction over this collateral attack upon the un-appealed state court judgments.

Moreover, Plaintiffs' Eighth Amendment claims, which attack their potential criminal sentences, cannot be brought under section 1983, but must instead be raised on direct appeal or through a petition for a writ of habeas corpus.  Because Plaintiffs have not alleged lack of notice or an opportunity to be heard, and because they have not availed themselves of existing state remedies, their due process allegation fails to state a claim upon which relief can be granted.  Because the phrase "habitual drunkard" has a meaning that is readily ascertainable, and because Plaintiffs clearly fall within the ambit of the statutory language, the interdiction statute is not void-for-vagueness.  Also, because Plaintiffs are not members of a protected class, and because they have not alleged unequal treatment or discriminatory intent, they have failed to state a viable equal protection claim.  And finally, because the state constitutional provisions cited by

---

[16] *See supra* n.5.

[17] Compl. ¶ 91.

Case 7:16-cv-00095-GEC   Document 18   Filed 04/12/16   Page 8 of 57   Pageid#: 80

Plaintiffs are not self-executing, they cannot be asserted as separate state-law claims in this federal-question litigation.

## I.   Standard of Review:  Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction.  "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed."[18]  A challenge to a court's subject matter jurisdiction can be raised at any time and is properly considered on a motion under Rule 12(b)(1) of the *Federal Rules of Civil Procedure*.  The burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion rests with the plaintiff, the party asserting jurisdiction.[19]  "Because questions of standing and ripeness concern this Court's subject matter jurisdiction under the case or controversy clause of Article III, such issues are properly raised in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)."[20]

## II.   Standard of Review:  Rule 12(b)(6)

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint."[21]  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[22]  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a

---

[18] *United States v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

[19] *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

[20] *Kegler v. U.S. Dep't of Justice*, 436 F. Supp. 2d 1204 (D. Wyo. 2006).

[21] *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

6

defendant has acted unlawfully."[23]  Also, although the Court must consider all of the factual

allegations of the complaint as true, the Court is not bound to accept a legal conclusion couched

as a factual assertion,[24] nor should the Court accept a plaintiff's "unwarranted deductions,"

"rootless conclusions of law" or "sweeping legal conclusions cast in the form of factual

allegations."[25]

Generally, a Rule 12(b)(6) motion to dismiss "cannot reach the merits of an affirmative

defense, such as the defense that the plaintiff's claim is time-barred."[26]  However, a court may

determine the merits of a statute of limitations defense under Rule 12(b)(6) if "all facts necessary

to the affirmative defense clearly appear[] on the face of the complaint."[27]

## III.    Summary of Allegations

Plaintiffs have alleged the following seven claims as a basis for this suit:

- **Claim One:**  The interdiction statute, as applied, violates the Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment.

- **Claim Two:**  The interdiction statute, as applied, constitutes cruel and unusual punishment within the meaning of Article I, section 9 of the Virginia constitution.

- **Claim Three:**  The interdiction statute, as applied, violates Plaintiffs' Fourteenth Amendment right to due process of law.

- **Claim Four:**  The interdiction statute, as applied, violates Plaintiffs' due process rights under Article I, section 11 of the Virginia constitution.

---

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also* Fed. R. Civ. P. (8)(a)(2); *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009).

[24] *Iqbal*, 556 U.S. at 663-64.

[25] *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996).

[26] *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

[27] *Id.*; *see also United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013) ("The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim."); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

7

- **Claim Five:** The interdiction statute is void-for-vagueness because it fails to sufficiently define the term "habitual drunkard," and, therefore, should be invalidated under the Fourteenth Amendment.

- **Claim Six:** The interdiction statute is void-for-vagueness because it fails to sufficiently define the term "habitual drunkard," and, therefore, should be invalidated under Article I, section 11 of the Virginia constitution.

- **Claim Seven:** The interdiction statute, as applied, violates Plaintiffs' Fourteenth Amendment right to equal protection of the law.

## IV. Applicable Virginia Statutes

The statutory interdiction scheme is codified in Title 4.1, Chapter 3 of the Virginia Code.

As pertinent here, Virginia Code § 4.1-333 provides as follows:

> When after a hearing upon due notice it appears to the satisfaction of the circuit court of any county or city that any person, residing within such county or city, has been convicted of driving [a vehicle] while intoxicated or has shown himself to be a habitual drunkard, the court may enter an order of interdiction prohibiting the sale of alcoholic beverages to such person until further ordered. The court entering any such order shall file a copy of the order with the [Virginia Alcoholic Beverage Control Board].[28]

However, at any time, "[t]he court entering any order of interdiction may alter, amend or cancel such order as it deems proper."[29]

Interdicted individuals are generally prohibited from consuming, purchasing, possessing, attempting to consume, attempting to purchase, or attempting to possess alcoholic beverages.[30] Interdicted individuals are also subject to enhanced punishment if they are convicted of violating Virginia Code section 18.2-388, which prohibits public intoxication.[31] There is, however, a

---

[28] Va. Code Ann. § 4.1-333(A) (2010).

[29] Va. Code Ann. § 4.1-333(B). An individual may also be interdicted if convicted of illegally manufacturing, possessing, transporting, or selling alcoholic beverages, or for maintaining a common nuisance. Va. Code Ann. § 4.1-334 (2010).

[30] Va. Code Ann. § 4.1-305(A) (2015 Supp.).

[31] Va. Code Ann. § 4.1-322. Virginia Code § 18.2-388 provides that, "[i]f any person profanely curses or swears or is intoxicated in public, whether such intoxication results from alcohol,

8

statutory exception allowing interdicted individuals to receive alcoholic beverages in a

therapeutic setting, for medicinal purposes, in accordance with Virginia Code § 4.1-200.[32]

If an interdicted individual possesses alcohol or is intoxicated in public, that individual

"shall be guilty of a class 1 misdemeanor."[33]  Under Virginia law, a class 1 misdemeanor is

punishable by "confinement in jail for not more than twelve months and a fine of not more than $

2,500, either or both."[34]  A criminal defendant who has been charged with a class 1 misdemeanor

must be informed of his right to counsel, and he "shall be allowed a reasonable opportunity to

employ counsel," or, if indigent, to obtain court-appointed counsel.[35]

The Commonwealth's Attorney is an elected constitutional officer.[36]  The elected

Commonwealth's Attorney "shall have all the duties and powers imposed upon him by general

law."[37]  Specifically, the attorney for the Commonwealth has the duty of "prosecuting all

---

narcotic drug or other intoxicant or drug of whatever nature, he shall be deemed guilty of a Class 4 misdemeanor."  Va. Code Ann. § 18.2-388 (2014).  However, "[i]n any area in which there is located a court-approved detoxification center a law-enforcement officer may authorize the transportation, by police or otherwise, of public inebriates to such detoxification center in lieu of arrest; however, no person shall be involuntarily detained in such center."  *Id.*

[32] "A person in charge of an institution regularly conducted as a hospital or sanatorium for the care of persons in ill health, or as a home devoted exclusively to the care of aged people, [may] administer[] or cause[] to be administered alcoholic beverages to any bona fide patient or inmate of the institution who is in need of the same, either by way of external application or otherwise for emergency medicinal purposes."  Va. Code Ann. § 4.1-200(1) (2015 Supp.).

[33] Va. Code Ann. § 4.1-322; *see also* Va. Code Ann. § 4.1-305(C) (same).  Any person who knowingly sells alcoholic beverages to an interdicted individual is also guilty of a class 1 misdemeanor, Va. Code Ann. § 4.1-304(A) (2015 Supp.), as is any individual who knowingly purchases alcohol for an interdicted person, Va. Code Ann. § 4.1-306(A) (2015 Supp.).

[34] Va. Code Ann. § 18.2-11(a) (2014).

[35] Va. Code Ann. § 19.2-157 (2105); *see also* Va. Code Ann. § 19.2-159 (2015) (establishing procedure for appointment of counsel for indigent criminal defendants).

[36] *See* VA. CONST. art. VII, § 4 ("There shall be elected by the qualified voters of each county and city . . . an attorney for the Commonwealth."); *see also* Va. Code Ann. § 15.2-1626 (2012).

[37] Va. Code Ann. § 15.2-1627 (2012).

9

warrants, indictments or informations charging a felony."[38]  The Commonwealth's Attorney may prosecute selected misdemeanor offenses, at his discretion—but is under no statutory or constitutional obligation to do so.[39]

## V.    The complaint is procedurally-barred.

Four distinct procedural rules bar Plaintiffs from proceeding with their claims.  First, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to act as a *de facto* appellate court for the state judgments of interdiction.  Second, because Plaintiffs had a full and fair opportunity to challenge the constitutionality of their interdictions in state court, *res judicata* precludes them from now using a federal forum to litigate these claims.  Third, to the extent that Plaintiffs challenge any future criminal proceedings under the interdiction statutes, those claims are not ripe for adjudication.  And fourth, with respect to four of the five plaintiffs, their claims for declaratory relief are barred by the statute of limitations.

### a.    Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction over Plaintiffs' challenge to the constitutionality of Virginia's interdiction statutes.

Because Plaintiffs' suit is, fundamentally, an indirect appeal of an otherwise valid state-court judgment, the *Rooker-Feldman*[40] doctrine applies, and this case should be dismissed under Rule 12(b)(1) for lack of jurisdiction.[41]

---

[38] *Id.*

[39] *Id.*

[40] *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

[41] Dismissal under *Rooker-Feldman* is distinct from, but related to, *Younger* abstention, under which federal courts abstain from adjudicating a case in which the federal plaintiff seeks to enjoin pending state-court proceedings.  *See Younger v. Harris*, 401 U.S. 37 (1971).  Defendants recognize that *Younger* abstention typically does not apply to federal cases seeking declaratory relief, if there are no pending state proceedings and the federal plaintiff demonstrates a "genuine threat" of being prosecuted under the challenged law.  *See generally Steffel v. Thompson*, 415 U.S. 452, 475 (1974).  However, if any plaintiff were to be criminally charged under the

10

"Under the *Rooker-Feldman* doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'"[42]  The Fourth Circuit treats this doctrine "as jurisdictional,"[43] reasoning that "Congress . . . vested the authority to review state court judgments in the Supreme Court alone," and federal district courts are only empowered to exercise original—not appellate—jurisdiction.[44]  "The *Rooker-Feldman* doctrine, therefore, preserves a fundamental tenet in our system of federalism that, with the exception of habeas cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court."[45]  Accordingly, "[a] litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'"[46]

The controlling question in a *Rooker-Feldman* analysis "is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision."[47]  In other words, the doctrine applies in cases where a state court "loser" brings

---

interdiction statute while this case was pending, *Younger* abstention would become an additional basis for dismissing the federal proceedings. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *see also Huffman v. Pursue*, 420 U.S. 592, 602 n.16 (1975) (noting that *Younger* abstention applies both in the context of "federal injunctions against state proceedings" and "interference in the form of declaratory relief").

[42] *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994)).

[43] *Id.*; *see also Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002); *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 n.5 (4th Cir. 1997).

[44] *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198-99 (4th Cir. 2000).

[45] *Stillwell*, 336 F.3d at 316.

[46] *Id.* (quoting *Plyler*, 129 F.3d at 733) (second alteration in original).

[47] *Stillwell*, 336 F.3d at 316; *see also Jordahl*, 122 F.3d at 202; *Brown & Root*, 211 F.3d at 202.

11

a federal court action "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[48]

Also, a plaintiff "may not escape the jurisdictional bar of *Rooker-Feldman* by merely refashioning its attack on the state court judgments as a § 1983 claim."[49]  And as the Fourth Circuit has emphasized, application of the doctrine does not turn upon "whether the state court judgment is presently subject to reversal or modification."[50]  Rather, if, "'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered *or must take action that would render the judgment ineffectual*,' *Rooker-Feldman* is implicated."[51]  Thus, "[t]he *Rooker-Feldman* doctrine is in no way dependent upon the temporal procedural posture of the state court judgment, rather, the doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeals."[52]

Overall, whether a federal plaintiff's claim implicates *Rooker-Feldman* depends upon whether that claim is "inextricably intertwined" with the merits of the state-court decision.[53]  A federal constitutional claim is "inextricably intertwined" with the state-court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before

---

[48] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[49] *Jordahl*, 122 F.3d at 202; *see also Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994).

[50] *Jordahl*, 122 F.3d at 202.

[51] *Id.* (quoting *Ernst v. City of Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997) (alteration in original) (emphasis added).

[52] *Id.*

[53] *Id.*

12

it."[54]  That is, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."[55]  Also, "[t]he key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state court loser who files suit in federal court seeks redress for an injury caused by the state court decision itself.'"[56]

Here, Plaintiffs allege that any attempt to prosecute them as interdicted individuals would violate the federal constitution.  Of necessity, a ruling that Defendants could not constitutionally prosecute Plaintiffs under the interdiction statutes would invalidate, on federal constitutional grounds, their existing state court judgments of interdiction.  Their threatened injury—prosecution under the interdiction statutes—is a direct result of those existing state court judgments.  The issues raised in this suit, therefore, are "inextricably intertwined" with the judgments of the state trial courts, thereby implicating the *Rooker-Feldman* jurisdictional bar.

The Fourth Circuit encountered an analogous situation in *Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231 (4th Cir. 2013).  There, the appellants were members of a putative plaintiff class who sought to challenge, in federal court, the fees imposed upon them in connection with state-court foreclosure proceedings.  Specifically, the appellants claimed that the fees ratified by the state court violated various federal statutes, including the civil rights act.  The federal district court dismissed the complaint, and, on appeal, the Fourth Circuit affirmed, reasoning that *Rooker-Feldman* applied, and the district court lacked jurisdiction.  Specifically,

---

[54] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

[55] *Id.*

[56] *Willner v. Frey*, 243 F. App'x 744, 747 (4th Cir. 2007) (quoting *Davani v. VDOT*, 434 F.3d 712, 718 (4th Cir. 2005)).

13

the Fourth Circuit found that, "[a]lthough Appellants do not seek to 'undo' the state court judgment foreclosing on their homes, permitting their case to go forward would, in essence, hold that the state court judgments which affirmed the legal fees and commissions . . . [were] in error."[57]  That is, "[b]y affirming the foreclosures, the [] state court necessarily passed judgment on the amount of attorneys' fees and commissions," and "[p]ermitting this action to proceed would necessarily invite the district court to review and reject[] those judgments."[58]

Here, too, Plaintiffs are engaged in procedural gymnastics, attempting to bring a preventative challenge to a state court statute on issues they have not presented to any Virginia state court, but in a manner that would require this Court to invalidate their existing orders of interdiction.  Yet, as the Supreme Court has recognized, "[f]ederal post-trial intervention, in a fashion designed to annul the results of a state trial, [] deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction."[59]  And a state judicial system would not be "fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts."[60]

For these reasons, this Court should reject Plaintiffs' attempt to circumvent state-court review of Virginia's interdiction statutes through this *de facto* appellate challenge to their underlying state court decisions.  Defendants therefore request that this Court dismiss the

---

[57] *Smalley*, 526 F. App'x at 236.

[58] *Id.* at 237.

[59] *Huffman*, 420 U.S. at 609.

[60] *Id.*

14

complaint in accordance with Rule 12(b)(1), under the *Rooker-Feldman* doctrine, for lack of jurisdiction.[61]

### b. **Plaintiffs' complaint is precluded by *res judicata*.**

In *Colvin v. Deaton*, 577 F. Supp. 925 (1984), this Court held that principles of *res judicata* bar a civil rights plaintiff from raising a constitutional challenge to the Virginia interdiction statute in federal court as long as the plaintiffs had a full and fair opportunity to raise their constitutional arguments during the interdiction proceedings in state court. Because these plaintiffs, too, have been afforded a full and fair opportunity to challenge their interdiction in state court, and because this Court must give full faith and credit to those state court judgments, Plaintiffs are barred from proceeding with this suit.

In *Allen v. McCurry*, 449 U.S. 90 (1980), the United States Supreme Court held that traditional principles of claim preclusion apply to federal suits brought under 42 U.S.C. § 1983. The *Allen* Court noted that

> nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights. And nothing in the legislative history of § 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings. There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.[62]

---

[61] *Cf. Younger*, 401 U.S. at 44-45 ("[T]he National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.").

[62] *Id.* at 103-04.

Although *Allen* left open "the question whether a § 1983 claimant can litigate in federal court an issue he might have raised but did not raise in previous litigation,"[63] this Court has answered that question in the negative. Specifically, in *Colvin*, this Court applied *res judicata* to bar interdicted plaintiffs from raising federal constitutional issues in their § 1983 suit even though "no federal issues were raised at the state circuit court interdiction hearing."[64] Reasoning that the plaintiffs "had a full and fair opportunity to raise their constitutional claims at that hearing," this Court concluded that they were barred from later raising the omitted claims in federal court.[65]

These plaintiffs, too, have had a full and fair opportunity to raise their federal constitutional claims in state court. Although none of the Plaintiffs was represented by counsel at their interdiction hearing, they do not allege that they lacked notice of the hearing or the opportunity to appear. They could have appealed their judgment of interdiction to the Virginia appellate courts, raising the constitutional issues on appeal under the "good cause" exception to the rule prohibiting appellate consideration of an issue not raised before the trial court. And the circuit courts that entered the orders of interdiction still possess—in a rare statutory exception to Virginia Rule 1:1—the authority to alter, amend, or withdraw the existing order of interdiction *at any time*.[66] Therefore, Plaintiffs were not, and are not, precluded from raising their constitutional claims in state court—for example, by petitioning for withdrawal or modification of their existing orders of interdiction on constitutional grounds.

Also of note, Plaintiffs have been free to raise the constitutionality of their interdicted status in any of their subsequent prosecutions—criminal proceedings for which they are afforded

---

[63] *Id.* at 94 n.5.

[64] *Colvin*, 577 F. Supp. at 928.

[65] *Id.*

[66] *See* Va. Code Ann. § 4.1-333(B).

16

the right to counsel and, if indigent, court-appointed counsel. Plaintiff Walls, for example, was convicted for public intoxication, with the interdiction enhancement, on February 8, 2016—almost immediately preceding the filing of this suit.[67] Despite being represented by counsel at that proceeding, he did not exercise his right to appeal.[68] Indeed, at the time this suit was filed, Plaintiff Walls was still within the sixty-day window that would have allowed him to petition the state court to reconsider his interdiction-related conviction.[69] But he did not.

It is evident that Plaintiffs have determined to bypass the state court system altogether, raising their federal constitutional claims for the first time in this Court. As recognized in *Colvin*, however, "[u]nder 28 U.S.C. § 1738, a federal court must give a state court judgment the same force and effect as it has in the state in which it was rendered."[70] Where there is privity between the parties, that judgment is therefore preclusive "'as to every other matter which the parties might have litigated,'" or any issue "'incident to or essentially connected with the subject matter of the litigation, whether the same as a matter of fact were or were not considered.'"[71] These elements are satisfied under the circumstances of this case.

First, as *Colvin* implicitly recognized, there is privity between the parties. Although the interdiction petitions and any related criminal proceedings were brought on behalf of the Commonwealth of Virginia, rather than these individual defendants, the Defendants are being

---

[67] *Commonwealth v. Walls*, GC15006291-00 (Richmond General District Court).

[68] *See* Va. Code Ann. § 16.1-132 (2015) (establishing right to appeal criminal conviction from general district court to circuit court for a trial *de novo*).

[69] *See* Va. Code Ann. § 16.1-133.1 (2105) ("Within sixty days from the date of conviction of any person in a general district court . . . for an offense not felonious, the case may be reopened upon the application of such person and for good cause shown.").

[70] *Colvin*, 577 F. Supp. at 929.

[71] *Id.* (quoting *Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192 (1956)); *see also Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003).

sued in their official capacities. And, as the United States Supreme Court has recognized, an official-capacity suit is, "in all respects other than name, to be treated as a suit against the entity."[72] Accordingly, because Defendants have been sued in their official capacities, as agents of the Commonwealth of Virginia, they "stand in the shoes" of the Commonwealth for purposes of determining privity.

Second, as discussed above, the issue of whether Virginia's interdiction scheme may constitutionally be applied to these Plaintiffs is a question "incident to" the subject matter of their civil interdiction determination, as well as any subsequent criminal prosecution. Moreover, it is an issue that Plaintiffs "might have litigated" at any point during the course of their various state proceedings. Because Plaintiffs neglected to properly raise the constitutionality of their interdiction in their state proceedings, principles of claim preclusion prohibit them from doing so now.

As the Supreme Court has recognized, albeit in a different context, "considerations of comity and federalism" weigh against federal consideration of a claim that could have been properly raised in state court, even when "the losing party in the state court . . . believes that his chances of success on appeal are not auspicious."[73] Such a rule would be based "on the assumption that state judges will not be faithful to their constitutional responsibilities," a line of reasoning the Supreme Court has expressly refused to adopt.[74]

As this Court observed in *Colvin*, Plaintiffs' constitutional claims arose "from the very fact of the state court proceedings themselves," and, "[h]ad any of the [] causes raised in this court proceeding been plead in state circuit court as a defense, and had any of those defenses

---

[72] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[73] *Huffman v. Pursue*, 420 U.S. 592, 610 (1975).

[74] *Id.* at 611.

18

prevailed, the plaintiffs would not have been interdicted and the suit at bar would most certainly not have been initiated."[75]  That reasoning applies equally here.  Accordingly, principles of claim preclusion bar the Plaintiffs from challenging the constitutionality of the Virginia interdiction scheme through this action under 42 U.S.C. § 1983, and Defendants request that this Court dismiss the complaint as procedurally-barred.

### c.  Plaintiffs' claims are not ripe for federal adjudication.

Plaintiffs seek declaratory and injunctive relief that would prohibit Defendants from attempting to prosecute them as interdicted individuals.  As discussed previously, despite being pled as targeting future prosecutions, this challenge fundamentally attacks Plaintiffs' past orders of interdiction, an issue Plaintiffs are procedurally-barred from raising in this manner.  In addition to the reasons prohibiting Plaintiffs from mounting this *de facto* appeal of their interdiction orders, their attempt to obtain equitable relief preventing or otherwise affecting any future prosecutions should be dismissed under Rule 12(b)(1) because this controversy is not ripe for federal adjudication.

Article III, section 2 of the United States Constitution limits the jurisdiction of the federal courts to justiciable cases and controversies.  "A claim satisfies the case or controversy requirement 'if the conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'"[76]  Thus, "[w]hile standing determines who may bring suit, ripeness dictates when the suit may be brought."[77]  "'Because [t]he doctrine of ripeness prevents judicial

---

[75] *Colvin*, 577 F. Supp. at 929 (dismissing claims for declaratory and injunctive relief).

[76] *Stephens v. HSBC Mortgage Servs., Inc.*, 565 F. App'x 238, 240 (4th Cir. 2014) (quoting *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (internal quotations omitted) (omission in original)).

[77] *Andrew v. Lohr*, 445 F. App'x 714, 714 (4th Cir. 2011) (per curiam).

consideration of issues until a controversy is presented in clean-cut and concrete form . . .

problems such as the inadequacy of the record . . . or ambiguity in the record . . . will make a

case unfit for adjudication on the merits.'"[78]  For this reason, "[a] court should rule on the merits

of a declaratory judgment action only when declaratory relief will serve a useful purpose in

clarifying and settling the legal relations in issue, and will terminate and afford relief from the

uncertainty, insecurity, and controversy giving rise to the proceeding."[79]

      Generally, "[t]he issue of ripeness entails an analysis considering the fitness of the issues

before the court, as well as the hardship that the parties will experience if the court withholds

consideration of the dispute."[80]  "A claim is unripe 'if it rests upon contingent future events that

may not occur as anticipated, or indeed may not occur at all.'"[81]  "As with standing, the party

bringing the suit bears the burden of proving ripeness."[82]

      Here, Plaintiffs have brought an as-applied challenge to Virginia's interdiction statutes,

arguing that their combined homelessness and alcoholic propensities render them helpless to

avoid prosecution and incarceration.  Yet, determination of whether a particular prosecution

might implicate these concerns is necessarily a fact-dependent inquiry that will be "contingent

upon future events."  For example, Plaintiffs' arguments are predicated on their assumption that

they will possess or consume alcohol and will, therefore, end up being charged and prosecuted

for this behavior.  When weighing the merits of this argument, a court would need to consider

---

[78] *Stephens*, 565 F. App'x at 240 (quoting *Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010)).

[79] *Id.* (internal quotations omitted).

[80] *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013).

[81] *United States v. Simmons*, 604 F. App'x 280 (4th Cir. 2015) (per curiam) (quoting *Scoggins*, 718 F.3d at 270 (internal quotations omitted)).

[82] *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013).

specific and as-of-yet undetermined facts, such as whether the plaintiff was residing at a shelter, with a friend, in a vehicle, at a motel, or in some other area where the plaintiff might be able to exist as an "intoxicated" person who is not in "public." Similarly, the immediacy of any threatened prosecution is dependent upon similar, yet undetermined factors, such as whether a plaintiff is in or out of custody, whether the plaintiff is residing at a location "off the street," and whether the plaintiff is receiving alcohol-related treatment from a facility or other program.[83]

When determining the viability of Plaintiffs' constitutional arguments, a court would need to weigh the precise factual circumstances existing at the time the Plaintiff was criminally charged under the interdiction statute. Absent that information, the court risks issuing a declaratory judgment that amounts to little more than an advisory opinion: *If* the Plaintiff has nowhere to go, and *if* the Plaintiff is unable to control his urge to consume alcohol, and *if* the Plaintiff is able to illegally obtain that alcohol, and *if* the Plaintiff then consumes that alcohol in public, and *if* a law enforcement officer happens upon the Plaintiff, then the Plaintiff *might* be caught, arrested, convicted, and then he *might* receive an active sentence of incarceration. This parade of hypotheticals, each of which is contingent upon unrealized future behavior, renders the Plaintiffs' allegations too speculative to enable this Court to appropriately tailor any prospective equitable relief. As the Supreme Court has noted, "[f]ederal courts . . . do not render advisory opinions. For adjudication of constitutional issues, concrete legal issues, presented in actual

---

[83] *See, e.g.*, *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986) ("[O]ne must show a threat of prosecution that is both real and immediate before a federal court may examine the validity of a criminal statute." (citation omitted)); *see also* Compl. ¶ 59 (noting that Plaintiff Manning "has been sober on several occasions for months-long stretches"); Compl. ¶ 72 (noting that Plaintiff Williams "has participated in alcohol treatment programs and maintained sobriety intermittently").

cases, not abstractions are requisite. This is as true of declaratory judgments as any other field."[84]

For this reason, there is no real, substantial controversy that is currently ripe for judicial determination—any threat of future prosecution is contingent upon too many variables to make these claims presently justiciable in federal court. Accordingly, Defendants request that this case be dismissed as unripe for review.

### d. **The claims for declaratory relief by Plaintiffs Manning, Williams, Deckerhoff, and Walls are barred by the statute of limitations.**

Plaintiffs seek a declaratory judgment that, in essence, any future decision to prosecute them as interdicted individuals would violate their constitutional rights.[85] Of necessity, a declaratory judgment that Defendants could not prosecute Plaintiffs under the interdiction statutes would invalidate the extant state court judgements of interdiction. The indirect nature of the challenge does not excuse Plaintiffs from complying with the appropriate limitations period for contesting those underlying orders. Here, the appropriate limitations period is two years. Because four of these five plaintiffs were interdicted more than two years prior to the filing of this suit, their request for declaratory judgment is barred by the statute of limitations.

The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."[86] The Declaratory Judgment Act does not provide an independent

---

[84] *United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947); *see also United States v. Petrillo*, 332 U.S. 1, 5 (1947) ("We have consistently refrained from passing on the constitutionality of a statute until a case involving it has reached a stage where the decision of a precise constitutional issue is a necessity.").

[85] *See* Compl. at 30.

[86] 28 U.S.C. § 2201.

jurisdictional basis for a federal action—rather, it simply supplies an additional remedy.[87] For this reason, and because "[t]he Federal Declaratory Judgment act contains no statute of limitations,"[88] the applicable limitations period for a suit seeking declaratory relief is determined by "the basic nature of the suit in which the issues involved would have been litigated if the Declaratory Judgment Act had not been adopted."[89]

Here, Plaintiffs are seeking redress for alleged violations of their federal constitutional rights, and they have filed suit under 42 U.S.C. § 1983. For this reason, the statute of limitations governing their suit under 42 U.S.C. § 1983 also applies to their claims for declaratory relief.

When an inmate files suit under 42 U.S.C. § 1983, the governing statute of limitations is borrowed from state law.[90] For cases arising out of Virginia, federal courts borrow the two-year statute of limitations for personal injury actions, codified at Virginia Code § 8.01-243(A).[91] Accordingly, for a § 1983 action arising out of Virginia to be timely, it must be filed within two years after the cause of action accrues.

Although "the limitation period is borrowed from state law, the question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law."[92] And, "[u]nder federal

---

[87] *See, e.g.*, *City Nat'l Bank v. Edminsten*, 681 F.2d 942, 945 n.6 (4th Cir. 1982) ("[I]t is clear that § 2201 is remedial only, and is not itself a basis for federal subject matter jurisdiction.").

[88] *Ace Prop. & Cas. Ins. Co. v. Sup. Boiler Works, Inc.*, 504 F. Supp. 2d 1154, 1159-60 (D. Kan. 2007).

[89] *118 East 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 202 (2d Cir. 1982).

[90] *See Owens v. Okure*, 488 U.S. 235, 239 (1989); *Wilson v. Garcia*, 471 U.S. 261, 266-69 (1985); *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995).

[91] *See Shelton v. Angelone*, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001); *see also Banks v. Fowlkes*, No. 1:13cv926, 2014 U.S. Dist. LEXIS 163621, at *7-8 (E.D. Va. Nov. 20, 2014).

[92] *Nasim*, 64 F.3d at 955.

Case 7:16-cv-00095-GEC   Document 18   Filed 04/12/16   Page 26 of 57   Pageid#: 98

law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."[93]

Here, four of the five Plaintiffs—Plaintiffs Manning, Williams, Deckerhoff, and Walls—were interdicted more than two years before this suit was filed. Specifically, Plaintiff Manning was interdicted in 2010, Plaintiff Williams was interdicted in 2012, Plaintiff Deckerhoff was interdicted in 2009, and Plaintiff Walls was interdicted in 2012. At the time the state court entered the orders of interdiction, these four Plaintiffs possessed "sufficient facts about the harm done" that a "reasonable inquiry" would have "reveal[ed] [their] cause of action."[94]

This suit, however, was not filed until March 3, 2016. Because Plaintiffs brought their request for declaratory relief more than two years after entry of the orders being challenged, their claims under the Declaratory Judgment Act are barred by the statute of limitations.[95] Accordingly, Defendants request that the claims for declaratory relief as to Plaintiffs Manning, Williams, Deckerhoff, and Walls be dismissed as time-barred.

**VI.    The counts alleging violations of the federal constitution do not state a claim upon which relief may be granted.**

Procedural bars aside, Plaintiffs, substantively, have not stated a claim upon which relief could be granted. With respect to their Eighth Amendment claim, Plaintiffs are barred under *Heck v. Humphrey* from attempting to challenge their criminal sentences in this civil context. Plaintiffs have not alleged lack of notice and an opportunity to be heard, and, therefore, their

---

[93] *Id.*

[94] *Id.*

[95] *See, e.g.*, *Lawrence v. Cooper*, 298 F. App'x 884 (4th Cir. 2010) (per curiam) (affirming district court judgment that claims for declaratory relief were barred by the statute of limitations where the litigant challenged entry of a court order on constitutional grounds, reasoning that the claim accrued when the state court order was filed, but the complaint was not filed until after the applicable § 1983 statute of limitations had expired).

procedural due process claim fails. Because the phrase "habitual drunkard" has an accepted meaning, and because Plaintiffs fall within the ambit of the interdiction statute, the statute is not void-for-vagueness. Finally, because homeless alcoholics are not a protected class, because Plaintiffs have not alleged intentional discrimination, and because the interdiction statute survives rational basis review, the equal protection allegation, too, fails to state a plausible claim to relief.

### a. Claim One: Any retrospective Eighth Amendment claims are barred by *Heck v. Humphrey*, and the prospective Eighth Amendment allegations fail to state a claim.

Plaintiffs allege that the interdiction statute "criminalizes an addiction," thereby "inflict[ing] 'cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments,' because addiction 'is an illness which may be contracted innocently or involuntarily.'"[96] They further contend that application of the statute to them is cruel and unusual because it is grossly disproportionate to the severity of the crime.[97]

### 1. *Retrospective Eighth Amendment Claims are barred by Heck v. Humphrey.*

To the extent that Plaintiffs are seeking to invalidate their past criminal convictions, they have failed to state a plausible claim for relief. Specifically, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that, if a claim under 42 U.S.C. § 1983 would necessarily invalidate an existing and presumptively valid state court judgment of conviction, that suit is not cognizable under § 1983. Rather, to state a claim, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a

---

[96] Compl. ¶ 118.

[97] Compl. ¶ 127.

Case 7:16-cv-00095-GEC   Document 18   Filed 04/12/16   Page 28 of 57   Pageid#: 100

federal court's issuance of a writ of habeas corpus . . . ."[98]  In other words, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[99]  Thus, "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."[100]

Also, although "*Heck* dealt with a § 1983 claim for damages, the Court did not limit its holding to such claims," and the Fourth Circuit has held that it applies equally "where a criminal defendant seeks injunctive relief that necessarily implies the invalidity of his conviction."[101]  For this reason, to the extent that Plaintiffs "seek[] to use § 1983 to invalidate a final state court conviction whose lawfulness has in no way been impugned,"[102] they have failed to state a claim upon which relief can be granted.

2.  *Virginia's interdiction statutes punish conduct, not status.*

To the extent that Plaintiffs challenge their future prosecutions, their complaint similarly fails.  Plaintiffs have alleged that Virginia's interdiction statute violates the Eighth Amendment because it impermissibly punishes a "status" or "condition"—that of being a homeless alcoholic.  The interdiction statute, however, does not punish "status."  Rather, to receive a criminal conviction with an interdiction-related enhanced sentence, the defendant must have engaged in

_____

[98] *Heck*, 512 U.S. at 486-87.

[99] *Id.* at 487.

[100] *Id.* at 489.

[101] *Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002).

[102] *Id.* at 375.

an *act*.  That act—possession or consumption of alcohol in violation of a court order forbidding the same—is what forms the basis for the criminal sentence.  The Supreme Court recognized as much in *Powell v. Texas*, 392 U.S. 514 (1968), holding that a criminal statute aimed at deterring public intoxication punishes an act, not a "status," and, therefore, does not run afoul of the Eighth Amendment.[103]  Indeed, every single federal and state case to address this issue— including the Fourth Circuit—has held that Virginia's interdiction statutes do not punish mere "status" and, therefore, do not violate the Eighth Amendment.[104]

In this respect, the interdiction statutes are analogous to laws prohibiting possession of illegal narcotics.  Those laws do not criminalize the status of being addicted to narcotics—they criminalize the act of possessing or using those narcotics.  For this reason, narcotics laws do not categorically violate the Eighth Amendment, even though narcotics addicts are more likely to be charged and convicted under those statutes.  As Justice Black noted in his concurring opinion in *Powell*, if an overwhelming urge to commit an act were sufficient to trigger the protections of the

---

[103] *See Powell*, 392 U.S. at 542 (Black, J., concurring) (noting that a contrary holding would "require converting *Robinson* [*v. California*, 370 U.S. 660 (1962)] into a case protecting actual behavior, a step we explicitly refused to take in that direction").

[104] *See Fisher v. Barrick*, 639 F.2d 191, 192 (4th Cir. 1981) (affirming district court decision that "the provisions of Va. Code § 4-62(2), making it a crime for one interdicted as a habitual drunkard to purchase or possess alcoholic beverages do not threaten cruel and unusual punishment"); *Jackson v. Commonwealth*, 44 Va. App. 218, 222-23, 604 S.E.2d 122, 125 (Ct. App. 2004) ("Code §4.1-322 imposes no criminal sanction for the status of being an alcoholic.  It forbids specific behavior:  possession of alcohol and public drunkenness by interdicted persons.  Therefore . . . Code § 4.1-322 does not violate the Eighth Amendment by punishing status or by imposing cruel and unusual punishment."); *Commonwealth v. Reyes*, No. CM06000177, 72 Va. Cir. 105, 106 (Alexandria Cir. Ct. Sept. 19, 2006) (denying motion to dismiss charge for being drunk in public after having been interdicted, reasoning that "the Defendant is being prosecuted and facing punishment, 'not for being a chronic alcoholic, but for being drunk in public on a particular occasion,' and, therefore, he is not facing criminal sanction for his mere status"); *see also Rakes v. Coleman*, 359 F. Supp. 370, 379-80 (E.D. Va. 1973) (relying on *Powell* to dismiss plaintiff class action alleging that continued enforcement of the public drunkenness statute against chronic alcoholics violated the Eighth Amendment).

27

Eighth Amendment, thereby shielding the actor from the consequences of his prohibited conduct, "[a] wide variety of sex offenders would be immune from punishment . . . ."[105]

The "primary purpose" of the Eighth Amendment "has always been considered . . . to be directed at the method or kind of punishment imposed for the violation of criminal statutes; the nature of the conduct made criminal is ordinarily relevant only to the fitness of the punishment imposed."[106] Where the punishment imposed is not predicated on mere status, but instead constitutes "a criminal sanction for public behavior which may create substantial health and safety hazards," the Eighth Amendment is not offended.[107] As the Supreme Court has explained, "[t]he doctrines of *actus reus*, *mens rea*, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States."[108] The question whether to "punish" interdicted alcoholics—not because they are homeless, but because they illegally possess or consume alcohol—is therefore one of policy, not of constitutional validity.[109]

> 3. *A misdemeanor criminal sentence imposed under the interdiction statute does not offend Eighth Amendment proportionality principles.*

Generally speaking, "[a] defendant may challenge the proportionality of a sentence under the Eighth Amendment in two different ways."[110] "Under an 'as-applied' challenge, a defendant

---

[105] *Powell*, 392 U.S. at 545 (Black, J., concurring).

[106] *Id.* at 531-32.

[107] *Id.* at 532.

[108] *Id.* at 536.

[109] *See id.*

[110] *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir. 2014).

28

contests the length of a certain term-of-years sentence as being disproportionate given all the circumstances in a particular case."[111] "In a 'categorical' challenge, a defendant asserts that an entire class of sentences is disproportionate based on the 'nature of the offense' or 'the characteristics of the offender.'"[112]

The scope of a proportionality review, however, is limited. "In the context of an as-applied challenge, the Court has explained that the 'narrow proportionality principle' of the Eighth Amendment does not require strict proportionality between crime and sentence, but forbids only extreme sentences that are grossly disproportionate to the crime."[113] "With respect to a categorical challenge, the reviewing court first determines whether a national consensus against the sentencing practice at issue is evident from objective indicia of society's standards, as expressed in legislative enactments and state practice."[114]

Here, Plaintiffs allege that "the interdiction statute as applied to Plaintiffs is cruel and unusual within the meaning of the Eighth and Fourteenth Amendments because it is grossly disproportionate to the severity of the crime."[115] Defendants construe this allegation as attempting to state an as-applied proportionality challenge to the range of sentences that might be imposed upon a finding that a criminal defendant has violated the interdiction statutes. An as-applied challenge, however, cannot be decided in a vacuum—Plaintiffs are required to state the length-of-sentence that they allege would constitute gross disproportionality. The mere potential for incarceration falls far short of stating an Eighth Amendment claim.

---

[111] *Id.* (internal quotations omitted).

[112] *Id.*

[113] *Id.* (internal quotations omitted).

[114] *Id.* at 577.

[115] Compl. ¶ 127.

29

From a practical viewpoint, this pleading failure characterizes the procedural flaws with Plaintiffs' complaint. By bringing a generalized Eighth Amendment challenge to a criminal statute, divorced from the appeal of a criminal sentence or a proceeding in habeas, Plaintiffs ask this Court to speculate that a hypothetical sentence they might receive, for a crime they have not yet committed, would suffice to state an as-applied proportionality challenge to this state criminal statute. Plaintiffs' allegations, therefore, are too tenuous to state a cognizable claim.

Regardless, within the Fourth Circuit, "'extensive proportionality analysis' is required 'only in those cases involving life sentences without parole,' or, alternatively, in cases involving 'terms of years without parole' that are functionally equivalent to life sentences 'because of [the defendants'] ages.'"[116] "[L]esser sentences that are clearly within the prerogative of [the legislature] . . . may be disposed of swiftly."[117] Here, the range of punishment for possession or consumption of alcohol by an interdicted individual encompasses a jail sentence of up to twelve months. This range of incarceration is identical to the potential punishment for individuals who sell or provide alcohol to interdicted individuals, as well as the range of punishment for possession of alcohol by a person under the age of 21. Indeed, the majority of the alcohol-related offenses codified in Title 4.1 of the Virginia Code—the Alcohol Beverage Control Act—are designated as Class 1 misdemeanors. The identical penalties for these alcohol-related offenses undermines Plaintiffs' allegation that punishment as a Class 1 misdemeanor is disproportionate to the alcohol-related offense charged. Defendants further note that possessing or consuming alcohol after having been interdicted is contemptuous conduct directly violating the underlying court order of interdiction, a factor that would support a sentence of incarceration.

---

[116] *Cobler*, 748 F.3d at 578 (quoting *United States v. Rhodes*, 779 F.2d 1019, 1028 (4th Cir. 1985)).

[117] *United States v. Wellman*, 663 F.3d 224, 231 (4th Cir. 2011).

30

Considering the circumstances, Plaintiffs have failed to allege sufficient facts from which a threshold inference of gross disproportionality could be established.[118]  Because Plaintiffs have not pled a sufficient factual basis from which this Court could determine that any term of imprisonment is disproportionate to the crime of possession of alcohol by an interdicted individual, Plaintiffs have failed to state a plausible claim that the interdiction statutes violate the proportionality requirement of the Eighth Amendment.

**b.  Claim Three:  Plaintiffs do not possess a protected liberty interest, and any due process rights they possess are satisfied by the requirements for notice and an opportunity to be heard, along with the process afforded in any predicate criminal convictions.**

In Claim Three, Plaintiffs allege that their procedural due process right have been violated, reasoning that "a person subject to a civil interdiction proceeding does not have the right to counsel or to a trial by jury, and the government is not required to prove all the elements of its case beyond a reasonable doubt."[119]  As discussed previously, Plaintiffs' due process challenge to the method of their initial interdiction is procedurally-barred under *Rooker-Feldman* and principles of claim preclusion.  And procedural bars aside, Plaintiffs have also failed to allege a plausible claim to relief.

The Due Process clause applies when governmental action deprives a person of a legitimate liberty or property interest.[120]  The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest.[121]  "Protected liberty interests 'may arise from two sources – the Due Process Clause itself and the laws of the

---

[118] *See Jackson*, 44 Va. App. at 226, 604 S.E.2d at 126 (holding that the possible range of punishment under the interdiction statute did not violate "the Eighth Amendment protections against excessive and disproportionate penalties").

[119] Compl. ¶ 141.

[120] *Bd. of Regents v. Roth*, 408 U.S. 564 (1972).

[121] *See id.*; *see also Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

31

States.'"[122]  If, and only if, a protected interest has been established, is it necessary to determine whether a plaintiff has been deprived of that interest, and, if so, "whether the procedures attendant upon that deprivation were constitutionally sufficient."[123]

First, Plaintiffs have failed to sufficiently identify a liberty interest directly affected by their circuit court orders of interdiction.  The interdiction orders do not, in and of themselves, result in the Plaintiffs' incarceration.  Rather, they are civil court judgments warning Plaintiffs that if they engage in certain future conduct, they will be subject to criminal prosecution.  For this reason, the interdiction orders did not directly deprive Plaintiffs of their "liberty."

Moreover, the interdiction orders do not result in the deprivation of any state-protected interest.  Plaintiffs do not have a liberty or property interest in the possession or consumption of alcohol.[124]  Issuance of an order warning Plaintiffs that they could be subject to criminal sanctions if they engage in this conduct does not, therefore, trigger federal due process requirements.  Nor does the label "habitual drunkard" give rise to any protected liberty interest.  As the Supreme Court has held, mere injury to reputation—even if defamatory—does not constitute the deprivation of a protected interest.[125]  Thus, because Plaintiffs have not identified a protected interest, their procedural due process allegation fails to state a claim upon which relief can be granted.

---

[122] *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).

[123] *Id.* at 460 (citing *Hewitt*, 459 U.S. at 472).

[124] *See Collins v. Hall*, 991 F. Supp. 1065, 1071-72 (N.D. Ind. 1997) (granting summary judgment to defendant where the plaintiff alleged that the state habitual drunkard statute violated procedural due process, reasoning that the plaintiff did not "suffer[] a deprivation of a liberty interest protected by the federal constitution").

[125] *Paul v. Davis*, 424 U.S. 693 (1976).

32

Second, even if Plaintiffs possess an interest protected by the Due Process Clause, the state procedures established through the interdiction scheme are sufficient to safeguard that interest. At its core, procedural due process requires fair notice and an opportunity to be heard.[126] Beyond those threshold requirements, though, due process is "flexible and calls for such procedural protections as the particular situation demands."[127]

Under the Virginia statute, an order of interdiction may only issue upon notice and an opportunity to be heard.[128] The interdicted individual may choose to appear at the hearing and fully participate in those proceedings, as by inspecting the evidence, calling witnesses, and presenting rebuttal evidence. Moreover, the interdicted individual has a right to appeal the civil judgment of interdiction, and the interdicting court is authorized to revisit and revise that order at any time. These processes are more than sufficient to protect against erroneous deprivation of any protected interest.

Also of note, an order of interdiction will issue only upon a showing that the subject is a "habitual drunkard" or has been convicted of driving while intoxicated. To the extent that an interdiction proceeding is predicated upon underlying criminal convictions, any due process rights the interdicted defendant possesses are supplied by the validity of the underlying orders of conviction.[129]

---

[126] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014).

[127] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

[128] Va. Code Ann. § 4.1-333 ("When after a hearing *upon due notice* . . . ." (emphasis added)).

[129] *See, e.g.*, *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) (procedural due process is not implicated by placement on a sex offender registry because that placement turns "on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest"); *Doe v. VSP*, 713 F.3d 745, 759 n.13 (4th Cir. 2013) (procedural due process not implicated by automatic placement on the Virginia sex offender

For these reasons, the Plaintiffs' situation is distinguishable from that presented in *Washington v. Constantineau*, 400 U.S. 433 (1970), a case in which the Supreme Court held that a state law permitting a municipality to prohibit the sale of alcoholic beverages to certain individuals, without notice or a hearing, violated procedural due process. Because that statute did not "contain any provision whatsoever for notice and hearing," and because the prohibited individual never had an opportunity to challenge the posting, the Supreme Court concluded that the state statute was facially unconstitutional.[130]

Here, by contrast, an interdicted individual is given notice, an opportunity to be heard, an opportunity to appeal, and an unlimited opportunity to petition for reconsideration of an order of interdiction. These safeguards are more than sufficient to satisfy procedural due process in this context. In this respect, the present case is analogous to the situation presented in *Snider International Corporation v. Town of Forest Heights*, 739 F.3d 140 (4th Cir. 2014), a case in which the appellants contended that the procedures surrounding automated traffic citations violated procedural due process. There, the Fourth Circuit held that the availability of a pre-deprivation hearing made the statutory scheme "not only constitutionally adequate but possibly even more than due process requires."[131]

As in *Snider*, "[i]t is difficult to see how additional process could significantly reduce the chance of erroneous deprivation, especially given the trial mechanism already in place."[132] Moreover, "the mere availability of a trial in which to present their grievances undermines [the

---

registry because the plaintiff "has been afforded due process in the form of a trial for her underlying offense").

[130] *Constantineau*, 400 U.S. at 439.

[131] *Snider*, 739 F.3d at 149.

[132] *Id.*

Plaintiffs'] arguments."[133]  Specifically, the Fourth Circuit has held that where a § 1983 litigant possesses state court remedies that would enable him to mount a pre- or post-deprivation challenge, the litigant's failure to utilize those remedies "is fatal" to a procedural due process claim.[134]  That is, if the litigant "has had, and continues to have, notice and an opportunity to be heard" in the state courts, "he cannot plausibly claim that [the state's] procedures are unfair when he has not tried to avail himself of them."[135]

For these reasons, the procedures established by the interdiction statutes satisfy the basic requirements of procedural due process.  Because Plaintiffs have not alleged lack of notice or lack of an opportunity to be heard, nor have they attempted to remedy any alleged deprivation through the provided state-court remedies, they have failed to state a plausible claim that their due process rights have been, or are at risk of being, violated.

Plaintiffs allege, however, that the interdiction statutes are unconstitutional because individuals facing an interdiction hearing are not provided with counsel.  However, because an individual being interdicted is not subject to immediate arrest, prosecution, or imprisonment upon entry of that order, the interdictions proceedings are civil in nature, and the right to counsel does not attach.  As the Fourth Circuit has reasoned in an analogous context, even where a civil proceeding "provide[s] a basis for the subsequent prosecution [of a] crime," an adverse finding in that context does not "bring[] an immediate and automatic loss of liberty."[136]  Because the individual "comes under the threat of incarceration *only if* he subsequently determines to take the law into his own hands" by violating the court order, the constitutional right to counsel does not

---

[133] *Id.* at 150.

[134] *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008).

[135] *Id.*

[136] *Ferguson v. Gathright*, 485 F.2d 504, 506 (4th Cir. 1973).

35

attach to that proceeding.[137]  That logic applies equally here.  "It is [the Plaintiffs'] subsequent defiance of the law . . . that brings into play the criminal processes and place[s] [them] in peril of imprisonment."[138]  Accordingly, neither the due process clause nor the Sixth Amendment requires that an interdicted individual be afforded an automatic right to counsel.

Further, in any future criminal proceeding that relies upon the civil order of interdiction, the criminal defendant is provided with a right to counsel, and, if indigent, court-appointed counsel.[139]  The prosecution must prove its case beyond a reasonable doubt, and the defendant has a meaningful opportunity to raise any defenses to the case against him.  Because these criminal interdiction proceedings comport with all of the traditional due process requirements for criminal cases, prosecution for a criminal offense, under the interdiction statutes, does not violate procedural due process.

In sum, Plaintiffs have not alleged that they lacked notice or an opportunity to be heard prior to the civil interdiction proceedings.  And they have not alleged any procedural irregularities with respect to any subsequent criminal proceeding predicated upon the civil interdiction order.  Because Plaintiffs have not been deprived of a protected interest, and because any deprivation only issues after notice and an opportunity to be heard, Plaintiffs have not stated a plausible claim that their past or future prosecutions violate the federal Due Process Clause.

---

[137] *Id.* (emphasis in original).

[138] *Id.*

[139] *See* Va. Code Ann. § 19.2-157; *see also* Va. Code Ann. § 19.2-159 (establishing procedure for appointment of counsel for indigent criminal defendants).

36

**c. Claim Five: Plaintiffs cannot challenge the interdiction statute of vagueness grounds because they plainly fall within its ambit, and "habitual drunkard" has an accepted definition that encompasses Plaintiffs.**

In Claim Five, Plaintiffs allege that, as applied, the interdiction statute is void-for-vagueness because it "fails to define what constitutes a 'habitual drunkard," also failing to "provide any guidance to law enforcement to prevent arbitrary and discriminatory enforcement."[140] Plaintiffs, however, lack standing to mount a vagueness challenge, and they have failed to state a plausible claim that the statute is unconstitutionally vague as applied to them.

A vagueness challenge to a statute not involving First Amendment freedoms "must be examined in light of the facts of the case at hand."[141] For this reason, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness."[142] "The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative manner, but rather in the sense that no standard of conduct is specified at all.'"[143]

The conduct plainly targeted by the Virginia interdiction statute is possession or consumption of alcoholic beverages by individuals who have a demonstrated history of public drunkenness. Plaintiffs—by their own allegations—"have been unable to maintain sobriety," and have a compulsion "to consume alcohol over time" that "is largely uncontrollable and

---

[140] Compl. ¶¶ 156, 158.

[141] *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

[142] *Parker v. Levy*, 417 U.S. 733, 756 (1974).

[143] *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.7 (1982) (quoting *Smith v. Goguen*, 415 U.S. 566, 578 (1974) (internal quotations omitted)).

inevitable."[144]  Moreover, Plaintiff Manning "has been arrested and prosecuted over thirty times under the Interdiction Statute,"[145]  Plaintiff Williams "has been arrested and prosecuted at least twenty-five times under the interdiction statute,"[146] Plaintiff Deckerhoff "has been arrested and prosecuted at least eleven times under the Interdiction Statute,"[147] and Plaintiff Walls "has been arrested and prosecuted at least twelve times under the Interdiction Statute."[148]

The factual allegations regarding Plaintiffs' alcoholic tendencies, when coupled with their lengthy history of alcohol-related convictions, "engenders a reasonable basis upon which a court could conclude that [each] plaintiff is an 'habitual drunkard.'"[149]  Because Plaintiffs' "actions clearly fall within the terms of the statute in question," they lack standing to challenge the interdiction statute on vagueness grounds.

Even if this Court considers the sufficiency of Plaintiffs' allegations, the phrase "habitual drunkard" is not unconstitutional as applied to them.  "The Constitution does not require a precise statutory definition for every essential term used in a statute, but merely requires that the terms used have a meaning which would give a person of ordinary intelligence fair notice that his conduct is forbidden by the statute."[150]  "The underlying principle is that no man shall be held

---

[144] Compl. ¶¶ 23, 27.

[145] Compl. ¶ 51.

[146] Compl. ¶ 65.

[147] Compl. ¶ 77.

[148] Compl. ¶ 91.

[149] *Fisher v. Coleman*, 486 F. Supp. 311, 314 (W.D. Va. 1979), *aff'd*, 639 F.2d 191 (4th Cir. 1981).

[150] *Id.*

criminally responsible for conduct which he could not reasonably understand to be proscribed."[151]

Here, Plaintiffs have not stated a plausible claim that Virginia's interdiction statute is unconstitutionally vague as applied. As this Court has held in an analogous context, Plaintiffs "cannot reasonably argue that [they were] not forewarned by the terms of [the statute] that [they] would be covered by the term 'habitual drunkard,' particularly in light of [their] admitted alcoholism . . . [and] repeated arrests and convictions . . . ."[152] Moreover, "there is no contention on [Plaintiffs'] part that had the statute's coverage been known to [them, they] would have acted differently."[153]

Also, as this Court previously held, "[t]he term 'habitual drunkard' does have a meaning which is sufficiently precise."[154] Specifically,

> The individual terms of the statute are sufficiently precise in their ordinary meaning to include plaintiff's conduct. "Habitual" is defined in the following terms: "of the nature of a habit; done constantly or repeatedly." The term "drunkard" is defined, in part, as one who is habitually drunk, and the term "drunk" is defined as being "intoxicated with alcoholic liquor to the point of impairment of physical and mental faculties; inebriated." Viewed together, the common meaning of the terms habitual drunkard clearly encompasses one who, like the plaintiff, is admittedly in the continual habit of being intoxicated from alcohol.[155]

As in *Fisher*, "[t]o suggest that any court would be required to speculate as to the applicability of [the interdiction statute] to [these] plaintiff[s]' behavior is to ignore the apparent purpose of the statute in question," which is to regulate "the sale and consumption of alcohol to protect the

---

[151] *Id.*

[152] *Id.*

[153] *Id.*

[154] *Id.* at 315.

[155] *Id.*

39

health, safety and welfare of its citizens."[156]  For this reason, the "term 'habitual drunkard' . . . is

sufficiently precise to inform [these] plaintiff[s] and those required to apply the statute that

[these] plaintiff[s'] behavior clearly falls squarely within the terms of the statute."[157]  Thus, the

interdiction statute "is not impermissibly vague as applied."[158]

In sum, Plaintiffs have not stated a plausible claim that Virginia's interdiction statute is

unconstitutionally vague as applied to them.  Because the factual allegations in the complaint

plainly bring Plaintiffs within the scope of the interdiction statute, Plaintiffs lack standing to

challenge the constitutionality of the statute on vagueness grounds.  And, even if this Court

considers the sufficiency of the vagueness allegations, the phrase "habitual drunkard" has a

sufficiently precise meaning, and Plaintiffs fall within the ambit of that meaning.  Accordingly,

the statute is not void-for-vagueness.

    **d.  Claim Seven:  Because Plaintiffs are not members of a protected group, because
they have not alleged discriminatory intent, and because the interdiction statues
have a rational purpose, Plaintiffs have not alleged a plausible equal protection
claim.**

In Claim Seven, Plaintiffs allege that the interdiction statute "subjects Plaintiffs to

unequal treatment under the law for conduct that is otherwise legal and to incarceration that

constitutes a deprivation of liberty, which is a fundamental right."[159]  Plaintiffs, however, have

failed to state a plausible claim that the interdiction statute violates the Equal Protection Clause.

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has

been treated differently from others with whom he is similarly situated and that the unequal

---

[156] *Id.*

[157] *Id.* at 316.

[158] *Id.*; *accord Colvin*, 577 F. Supp. at 927 n.2 ("[T]he *Fisher* opinion remains an accurate
statement of the law in this district.").

[159] Compl. ¶ 169.

treatment was the result of intentional or purposeful discrimination."[160] "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."[161]

Here, Plaintiffs have not alleged that they are treated differently from other, similarly-situated individuals. To the extent that Plaintiffs allege they are subject to prosecution under the interdiction statute more frequently than individuals who are not homeless, Plaintiffs are not similarly situated to non-homeless individuals. And although Plaintiffs allege that the penalties that attach to interdiction are "more acute for Plaintiffs than other interdicted persons,"[162] the statutes are conduct-based and apply equally to all interdicted people who engage in one of the classes of prohibited conduct. For this reason, Plaintiffs have not sufficiently alleged that they are treated differently than a similarly-situated class of interdicted individuals.

To the extent that Plaintiffs allege that they are interdicted more frequently than non-alcoholics, Plaintiffs are not similarly situated to that class of individuals, either. And as noted previously, the interdiction statute does not classify on the basis of alcoholic propensities—it targets recidivist and criminal conduct, not status.

Moreover, to the extent that Plaintiffs allege that they are treated differently than individuals who have not been interdicted, Plaintiffs are not similarly situated to non-interdicted persons. Non-interdicted individuals have a different legal status than Plaintiffs. Consuming alcohol is legal for non-interdicted individuals because they have not been convicted of repeated alcohol-related crimes. Also, non-interdicted people risk the same treatment as Plaintiffs if they engage in the same conduct. Individuals who are drunk in public or who drive under the

---

[160] *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

[161] *Id.*; *see also Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818-19 (4th Cir. 1995).

[162] Compl. ¶ 170.

41

influence may be arrested, convicted, and incarcerated just as Plaintiffs were.  They may further be declared a "habitual drunkard" if they repeat the offense, as Plaintiffs have.

For these reasons, Plaintiffs have not stated a plausible claim that they are being treated differently than similarly situated individuals.  Absent unequal treatment, Plaintiffs' equal protection claim fails.

Further, Plaintiffs have failed to allege that any difference in treatment is a result of intentional or purposeful discrimination.  In order to state an equal protection claim, Plaintiffs must set forth "specific, non-conclusory factual allegations that establish improper motive."[163]  They have not done so here.  The complaint does not allege any specific intent on the part of Defendants to target homeless individuals or alcoholic individuals.  Plaintiffs state only that Defendants "must ensure compliance with relevant Commonwealth laws."[164]  This allegation is insufficient to state a claim of purposeful discrimination.  Because the complaint does not allege intentional or purposeful discrimination, Plaintiffs have not stated a plausible equal protection violation.

Finally, even if Plaintiffs are considered to have alleged unequal treatment and intentional discrimination, the facts, as alleged, affirmatively show that any difference in treatment between Plaintiffs and other individuals would survive rational-basis review.  "[W]hen a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"[165]  Because Plaintiffs' allegations do not implicate a fundamental right, and because

---

[163] *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003).

[164] Compl. ¶¶ 101-02.

[165] *Veney v. Wyche*, 293 F.3d at 731 (quoting *Heller v. Doe*, 509 U.S. 312, 319-320 (1993)).

homeless, interdicted alcoholics are not a suspect class,[166] the interdiction statute need only

survive rational-basis review. The relevant inquiry, therefore, is whether any unequal treatment

"has a fair and substantial relation to the object of the [classification]."[167]

Reducing alcohol-related crimes by repeat offenders serves a legitimate government

purpose in preventing, *inter alia*, alcohol poisoning and drunk driving deaths. Government has

regulated alcohol consumption throughout this country's history. Indeed, "[p]ublic drunkenness

has been a crime throughout our history, and even before our history it was explicitly proscribed

by a 1606 English statute."[168] Yet, as noted by the Supreme Court, "it cannot be denied that the

destructive use of alcoholic beverages is one of our principal social and public health

problems."[169] The Court has therefore declined to strike down, under rational basis review, "use

of the criminal process as a means of dealing with the public aspects of problem drinking."[170]

Here, the interdiction statutes are a legitimate exercise of the police powers of the state.

Identifying certain persons as recidivist "drunkards," and then subjecting those persons to

heightened criminal sentences for public drunkenness or possession of alcohol, is reasonably

related to the legitimate governmental purpose of promoting public safety. As Justice Black

observed,

> Apart from the value of jail as a form of treatment, jail serves other
> traditional functions of the criminal law. For one thing, it gets the
> alcoholics off the street, where they may cause harm in a number
> of ways to a number of people, and isolation of the dangerous has

---

[166] *See, e.g.*, *Reyes*, 72 Va. Cir. at 106 ("[I]nterdicted alcoholics are not a protected class . . . ."); *see also Mitchell v. Comm'r of the SSA*, 182 F.3d 272, 274 (4th Cir. 1999) ("Alcoholics are neither a suspect nor a quasi suspect class for purposes of equal protection analysis.").

[167] *Evans v. Thompson*, 881 F.2d 117, 121 (4th Cir. 1989).

[168] *Powell*, 392 U.S. at 538 (Black, J., concurring).

[169] *Powell*, 392 U.S. at 526-27.

[170] *Id.* at 530.

> always been considered an important function of the criminal law. In addition, punishment of chronic alcoholics can serve several deterrent functions—it can give potential alcoholics an additional incentive to control their drinking, and it may, even in the case of the chronic alcoholic, strengthen his incentive to control the frequency and location of his drinking experiences.[171]

Those observations apply equally here. Any disparate treatment under the Virginia interdiction statute, therefore, "has a fair and substantial relation to the object of the [classification],"[172] and survives rational-basis review.

In sum, Plaintiffs have not pled sufficient facts to satisfy each requirement of an equal protection claim. They have not alleged unequal treatment between similarly situated individuals, nor have they alleged intentional discrimination. And, to the extent that the interdiction scheme "classifies" individuals as "habitual drunkards," the purpose of that classification is reasonably-related to legitimate governmental objectives. Defendants therefore request that the equal protection allegation be dismissed for failure to state a plausible claim to relief.

## VII. Claims Two, Four, and Six, which are based on provisions of the Virginia Constitution, fail to state a claim upon which relief can be granted.

In claim 2, Plaintiffs allege that their "[p]unishment" for the "status" of being a "homeless individual[] addicted to alcohol" constitutes "cruel and unusual punishment in violation of Plaintiffs' rights under Article I, Section 9 of the Constitution of Virginia."[173] In claims 4 and 6, Plaintiffs allege that the "Interdiction Statute," generally, "violates Plaintiffs' due process rights under Article 1, Section 11 of the Constitution of Virginia."[174]

---

[171] *Id.* at 539 (Black, J., concurring).

[172] *Evans*, 881 F.2d at 121.

[173] Compl. ¶ 135.

[174] Compl. ¶ 150 (procedural due process), ¶ 163 (void-for-vagueness).

44

Plaintiffs' state-law claims are barred for two reasons.  First, Defendants, in their official capacities, are entitled to both sovereign and Eleventh Amendment immunity on the asserted state-law claims.  Accordingly, these claims should be dismissed for lack of jurisdiction.[175]  Second, because the asserted constitutional provisions are not self-executing, they do not state a claim under Virginia law.

Plaintiffs have brought this action under 42 U.S.C. § 1983, which "provides a cause of action to those whose *federal* rights have been violated under color of state law."[176]  "[I]t does not provide a cause of action for violations of *state* rights."[177]  Accordingly, to state a claim over which this Court could exercise pendent jurisdiction, a cause of action based on the Virginia constitution must be cognizable as an independent, viable claim under state law.[178]

The Supreme Court of Virginia has made clear that the provisions of the Constitution of Virginia do not provide an independent basis for a private right of action unless they are self-executing.[179]  Where state action is being challenged, the self-executing requirement is logically grounded in the concept of sovereign immunity.  The Commonwealth cannot be sued without its

---

[175] The Fourth Circuit has noted that it is not clear "whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)."  *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000).  It has been noted, however, that "[t]he recent trend . . . appears to treat Eleventh Amendment Immunity motions under Rule 12(b)(1)."  *Haley v. Va. Dep't of Health*, No. 4:12cv00016, 2012 U.S. Dist. LEXIS 161728, at *5 n.2 (W.D. Va. Nov. 13, 2012).  The underlying rationale is that, "although the Eleventh Amendment immunity is not a 'true limit' of [the] Court's subject matter jurisdiction, . . . it is more appropriate to consider [this] argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power."  *Beckham v. AMTRAK*, 569 F. Supp. 2d 542, 547 (D. Md. 2008) (cited in *Haley*, 2012 U.S. Dist. LEXIS 161728, at *5 n.2).

[176] *Doe v. Rector & Visitors of George Mason Univ.*, No. 1:15cv209, 2015 U.S. Dist. LEXIS 125230, at *34 (E.D. Va. Sept. 16, 2015) (emphasis in original).

[177] *Id.*

[178] *See id.*

[179] *See Robb v. Shockoe Slip Found.*, 228 Va. 678, 681, 324 S.E.2d 674, 676 (1985).

consent, which, absent implementing legislation, must be expressed in the constitutional provision itself.

### a. __Defendants are entitled to sovereign and Eleventh Amendment immunity.__

Because Defendants are state actors being sued in an official capacity, they are entitled to sovereign immunity with respect to any pendent state-law claims for which the Commonwealth has not waived its immunity. As discussed below, the asserted state constitutional provisions are not self-executing, and, therefore, cannot be used to bring pendent state-law claims against the non-consenting sovereign—and, by extension, these Defendants.

Also, the Eleventh Amendment protects Defendants from being sued, in their official capacity, for state-law claims for which the sovereign has not waived its immunity from suit in federal court.[180] The "ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court."[181] This protection also precludes a federal district court from exercising supplemental jurisdiction over a state-law claim for which the sovereign has not waived its Eleventh Amendment immunity.[182] Because the Commonwealth of Virginia has not consented to being sued, in federal court, for alleged

---

[180] *See In re Sec'y of the Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1144-45 (4th Cir. 1993) (holding that the district court lacked jurisdiction to consider a claim against a state official, noting that, even if the claim "might otherwise have fallen within the court's ancillary or pendent jurisdiction, the Eleventh Amendment deprived the district court of jurisdiction to entertain that claim, because it was in effect a claim against the state itself").

[181] *Bd. of Trustees of Univ. Ala. v. Garrett*, 31 U.S. 356, 363 (2001).

[182] *See County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985) ("The Eleventh Amendment forecloses . . . the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State."); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment[.]"); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) (holding that the Eleventh Amendment applies to bar suit against a sovereign even where the asserted basis for that jurisdiction is "ancillary and supplemental").

46

violations of the Virginia constitution, Defendants are entitled to Eleventh Amendment immunity on each of the asserted state constitutional claims.[183]

**b. The Virginia constitutional provisions are not self-executing and, therefore, do not support independent state-law claims.**

Apart for the issue of immunity, the state constitutional claims do not state a claim under Virginia law. A constitutional provision is self-executing when it expressly so declares.[184] Absent such a declaration, "[a] constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."[185] Overall, "[t]he question is one of intention in every case, and, if it is apparent that no subsequent legislation is necessary to carry such provision into effect, then such provision is self-executing."[186]

The due process clause, Article I, section 11 of the Virginia constitution, does not supply an independent cause of action. As this Court has observed, "the only portion of Article I, § 11 that has been held to be self-executing is that which applies to private property 'taken or damaged for public us, without just compensation,'" and "Virginia courts have repeatedly rejected the assertion that a private right of action exists under Article I, § 11 for deprivation of

---

[183] *See In re Sec'y of the Dep't of Crime Control*, 7 F.3d at 1144-45; *cf. McConnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir. 1978) ("The Virginia Torts Claims Act while generally waiving sovereign immunity for tort claims filed in state courts, does not waive the state's Eleventh Amendment immunity.").

[184] *See, e.g.*, VA. CONST. art. I, § 8.

[185] *Newport News v. Woodward*, 104 Va. 58, 60-61, 51 S.E. 193, 194 (1905).

[186] *Robertson v. Staunton*, 104 Va. 73, 77, 51 S.E. 178 (1905).

47

life or liberty."[187]  For this reason, Claims 4 and 6—each of which are based upon Article I, § 11—fail to state a claim upon which relief can be granted.

Claim 2 is brought under Article I, section 9 of the Virginia constitution.  Article I, section 9 provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted . . . ."  This section is not made expressly self-executing, as is Article I, section 8, for example.  And no court has seemingly addressed the issue of whether this provision of the Virginia Bill of Rights should be considered self-executing, or whether it "merely indicates principles, without laying down rules by means of which those principles may be given the force of law."[188]  However, the language of this provision, coupled with its historical interpretation, indicate that it is not self-executing and, therefore, cannot sustain an independent cause of action under Virginia law.

First, the language of Article I, section 9, although phrased in the negative, merely states that cruel and unusual punishments "ought not" be imposed.  This language does not carry the same prohibitive or compulsive weight as the phrase "shall not."[189]  Article I, section 9, therefore, appears to set forth "principles," and does not "lay[] down rules by means of which those principles may be given the force of law."[190]  For this reason, the language of Article I, section 9 indicates that it is mandatory or directive, rather than self-executing.

---

[187] *Botkin v. Fisher*, No. 5:08cv00059, 2009 U.S. Dist. LEXIS 24554, at *16 (W.D. Va. Mar. 25, 2009) (citing cases); *accord Doe*, 2015 U.S. Dist. LEXIS 125230, at *34-35; *Muniz v. Fairfax Cty.*, No. 1:05cv1067, 2005 U.S. Dist. LEXIS 43024, at *5 (E.D. Va. Nov. 14, 2005).

[188] *Woodward*, 104 Va. at 61, 51 S.E. at 194.

[189] *Cf.* U.S. CONST. amend. XIII.

[190] *Woodward*, 104 Va. at 61, 51 S.E. at 194.

Moreover, as the Virginia Supreme Court has noted, the provisions of the Virginia Bill of Rights "have remained the same as they were originally adopted in . . . 1776."[191]  For this reason, Article I, section 9 "impose[s] no limitation on the legislative right to determine and prescribe by statute the quantum of punishments deemed adequate by the legislature."[192]  Accordingly, although this section of the Virginia Bill of Rights may be utilized, for example, to attack a criminal sentence on direct appeal or through a timely-filed petition for a writ of habeas corpus,[193] it cannot sustain an independent, common law action divorced from any criminal proceeding or other recognized state-law cause of action.

The Virginia Supreme Court implicitly recognized this principle in *Orbe v. Johnson*, 267 Va. 560, 601 S.E.2d 547 (2004), a case in which the petitioner sought a declaratory judgment that his imminent execution would violate article I, section 9 of the Virginia Constitution.  The Virginia Supreme Court held that the petitioner could not base his declaratory judgment action on an alleged violation of Article I, section 9, reasoning, in part, that "a declaratory judgment action is not a substitute for an appeal or collateral attack upon conviction," and the issue on appeal "should have been raised before the trial court in [the] criminal case and on direct appeal from that judgment."[194]  For these reasons, Article I, section 9 is not self-executing, and Claim 2 should be dismissed for failure to state a claim.

Defendants further note that Claim 2 does not state sufficient facts from which a violation of Article I, section 9 could be established.  The Virginia Supreme Court has rejected, almost

---

[191] *Hart v. Commonwealth*, 131 Va. 726, 741, 109 S.E. 582, 586 (1921).

[192] *Id.*

[193] *See, e.g.*, *Jackson v. Commonwealth*, 44 Va. App. 218, 604 S.E.2d 122 (2004) (discussing analogous claims in the context of a direct appeal from a conviction for possessing alcohol after having been interdicted).

[194] *Orbe v. Johnson*, 267 Va. 560, 563, 601 S.E.2d 547, 549-50 (2004).

completely, the concept of proportionality review for criminal sentences under Article I, section 9.[195]  Rather, the Virginia Court of Appeals has expressly held that proportionality review is only appropriate for death sentences and sentences of life without the possibility of parole.[196]  Also, the Virginia Supreme Court has held that the only punishments prohibited by Article I, section 9 are those "as were regarded as cruel and unusual when such provision of the Constitution was adopted in 1776, namely, such bodily punishments as involve torture or lingering death, such as are inhumane and barbarous, as for example, punishment by the rack, by drawing and quartering, leaving the body hung in chains, or on the gibbet, exposed to public view, and the like."[197]  Plaintiffs' allegation—that they are being "punished" for being homeless alcoholics—is predicated on a proportionality review not recognized as a matter of Virginia law, and for a punishment falling far short of this threshold.[198]

For these reasons, the claims predicated on alleged violations of the Virginia constitution fail to state a claim over which this Court could exercise pendent jurisdiction.[199]  Accordingly, Defendants request that Claims 2, 4, and 6 be dismissed.

---

[195] See, e.g., Cole v. Commonwealth, 58 Va. App. 642, 653-54, 712 S.E.2d 759 (2011) ("We thus agree that proportionality review 'is not available for any sentence less than life imprisonment without the possibility of parole.'" (quoting United States v. Malloy, 568 F.3d 166, 180 (4th Cir. 2009))).

[196] Id.

[197] Hart, 131 Va. at 741-42, 109 S.E. at 586-87.

[198] See generally Powell, 392 U.S. at 538 (Black, J., concurring) ("Public drunkenness has been a crime throughout our history, and even before our history it was explicitly proscribed by a 1606 English statute.").

[199] Defendants further note that Plaintiffs neglect to allege, as a jurisdictional basis for their suit, any federal statute that would confer jurisdiction on this court to adjudicate the separate state-law claims.  Nonetheless, Defendants recognize that 28 U.S.C. § 1367 would vest this Court with discretionary, supplemental jurisdiction over any properly pleaded, pendent state-law claims for which Defendants could not claim immunity.

# CONCLUSION

Almost a century ago, the United States Supreme Court recognized that "no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury."[200] This is not such a case. Rather, this Court should reject Plaintiffs' attempt to circumvent the state judiciary and collaterally attack their state-court judgments of interdiction.

Because Plaintiffs' suit is procedurally barred, and because, substantively, they have failed to state a plausible claim to relief, Defendants respectfully request that this Court GRANT their motion to dismiss and order any such other relief as the Court may deem just.

Respectfully submitted,

DONALD CALDWELL and MICHAEL HERRING, Defendants.

By:     s/  Margaret Hoehl O'Shea
        Margaret Hoehl O'Shea, VSB #66611
        Assistant Attorney General
        Criminal Justice & Public Safety Division
        Office of the Attorney General
        900 East Main Street
        Richmond, Virginia 23219
        (804) 225-2206
        (804) 786-4239 (Fax)
        Email:  moshea@oag.state.va.us

---

[200] *Mass. State Grange v. Benton*, 272 U.S. 525, 527 (1926); *see also Fenner v. Boykin*, 271 U.S. 240, 243 (1926) (noting that federal injunctions against state criminal law enforcement should be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate").

51

s/  Nancy Hull Davidon
Nancy Hull Davidson, VSB #85536
Assistant Attorney General
Criminal Justice & Public Safety Division
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 692-0551
(804) 786-4239 (Fax)

*Counsel for Defendants.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of April 2016, I electronically filed the foregoing

Memorandum in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the

CM/ECF system, which will send a notification of such filing (NEF) to the following:

Mary Frances Charlton
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
maryc@justice4all.org

Mary Bauer
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
mary@justice4all.org

Erin Trodden
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
erin@justice4all.org

Amy Walters
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
amyw@justice4all.org

Mark D. Young
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7680
mark.d.young@skadden.com

Donald P. Salzman
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7983
donald.salzman@skadden.com

Theodore M. Kneller
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7264
ted.kneller@skadden.com

Maureen A. Donley
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7570
maureen.donley@skadden.com

And I hereby certify that I have mailed the document by United States Postal Service to the

following non-filing user:  N/A

By:    <u>s/  Margaret Hoehl O'Shea</u>
Margaret Hoehl O'Shea, AAG, VSB #66611
*Attorney for Defendants*
Criminal Justice & Public Safety Division
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us

54