**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

CARY HENDRICK, *et al.*,

      *Plaintiffs*,

v.

DONALD CALDWELL, *et al.*,

      *Defendants*.

Civil Action No.: 7:16-cv-00095 (GEC)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Dated: May 20, 2016

Mary Frances Charlton (VBN: 85387)
Mary Bauer (VBN: 31388)
Erin Trodden (VBN: 71515)
Amy Walters (VBN: 85650)

LEGAL AID JUSTICE CENTER
1000 Preston Ave. Ste. A
Charlottesville, VA 22903
Phone: (434) 529-1839
maryc@justice4all.org

*Attorneys for Plaintiffs*

Mark D. Young, *pro hac vice*
Maureen A. Donley, *pro hac vice*
Donald P. Salzman, *pro hac vice*
Theodore M. Kneller, *pro hac vice*

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave NW
Washington, DC 20005
Phone: (202) 371-7264
ted.kneller@skadden.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................4

STANDARD OF REVIEW ...................................................................................................7

SUMMARY OF ARGUMENT .............................................................................................8

ARGUMENT ......................................................................................................................10

    A.    The Complaint seeks only prospective relief against the genuine, future
threat of prosecution; therefore, Defendants' procedural defenses are
inapplicable. ..........................................................................................................10

        1.    The *Rooker-Feldman* doctrine does not bar the Complaint's
constitutional challenges to a state statutory scheme in federal
district court. ........................................................................................10

        2.    Res Judicata does not apply to claims arising out of operative facts
not at issue in the prior adjudication, and the Complaint challenges
only *future* prosecutions. ...................................................................14

        3.    Ripeness: Plaintiffs' claims are ripe because the Complaint
sufficiently pleads a genuine threat of future injury. ...............................20

        4.    The Statute of Limitations is not a bar to Plaintiffs' claims because
it does not begin to run until Plaintiffs' injuries accrue, and
Plaintiffs challenge only future prosecutions under the Interdiction
Statute. ...................................................................................................24

    B.    Accepting the pleaded facts as true, the Complaint sufficiently states
claims that the Interdiction Statute inflicts cruel and unusual punishment,
denies due process, and unconstitutionally discriminates against Plaintiffs..........29

        1.    The statutory scheme inflicts cruel and unusual punishment
because it criminalizes Plaintiffs' disease—chronic alcoholism. ..............29

        2.    Due Process: The interdiction scheme impermissibly deprives
Plaintiffs of the constitutionally mandated due process protections
that all elements of a crime be proven beyond a reasonable doubt
and the right to counsel. .........................................................................36

3.      Vagueness: The Interdiction Statute is, and Plaintiffs have standing to challenge the statute as, unconstitutionally vague because it does not give adequate notice that interdicted persons can be incarcerated for constructive possession of alcohol, and the statute encourages arbitrary and discriminatory enforcement.............................43

4.      Equal Protection:  The Interdiction Statute is subject to strict judicial scrutiny and violates the Equal Protection Clause because it discriminates against homeless alcoholics and infringes on a fundamental right—personal liberty. ........................................................50

C.     Under the Supreme Court of Virginia's jurisprudence, the Virginia Constitution's provisions providing due process and prohibiting cruel and unusual punishment are self-executing, and therefore, Defendants cannot claim sovereign immunity....................................................................................58

CONCLUSION....................................................................................................................62

# TABLE OF AUTHORITIES

## CASES

*A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia*, 655 F.3d 342 (4th Cir. 2011) ............................................................. 28

*Allen v. McCurry*, 449 U.S. 90 (1980) ................................................................. 17, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 7, 8

*Banks v. Fowlkes*, 2014 U.S. Dist. LEXIS 163621 (E.D. Va. Nov. 20, 2014) ............................ 27

*Beall v. Abbott Labs.,* 130 F.3d 614 (4th Cir. 1997) .................................................. 27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 7

*Botkin v. Fisher*, 2009 WL 790144 (W.D. Va. Mar. 25, 2009) .......................................... 60

*Breed v. Jones*, 421 U.S. 519 (1975) ..................................................................... 53

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) ............................................................. 27

*Brown v. Felsen,* 442 U.S. 127 (1979) ................................................................... 15

*Chandler v. Fretag*, 348 U.S. 3 (1954) .................................................................. 43

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hasting Coll. of the Law v. Martiniez*, 561 U.S. 661 (2010) ............................................................................. 53

*City of Chi. v. Morales*, 527 U.S. 41 (1999) ............................................................. 45

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .................................. 50, 54, 58

*Coates v. Cincinnati*, 402 U.S. 611 (1971) .............................................................. 47

*Cole v. Commonwealth*, 712 S.E.2d 759 (Va. Ct. App. 2011) .......................................... 61

*Collins v. Hall*, 991 F. Supp. 1065 (N.D. Ind. 1997) .................................................. 37

*Colvin v. Deaton*, 577 F. Supp. 925 (W.D. Va. 1984) ............................................ 17, 19, 20

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ................................................. 10

*Davani v. Va. DOT*, 434 F.3d 712 (4th Cir. 2006) .................................................... 10, 12

*Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471 (4th Cir. 2005) .......................................... 25

*Digiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365 (Va. 2011)..... 59, 60, 61

*Doe v. Duling*, 782 F.2d 1202 (4th Cir. 1986) ................................................................... 3, 21, 23

*Doe v. Va. Dep't of State Police*, 713 F.3d 745 (4th Cir. 2013) ................................................. 23

*Driver v. Hinnant*, 356 F.2d 761 (4th Cir. 1966) ................................................................... 31, 32

*Dunn v. Blumstein*, 405 U.S. 330 (1972) ............................................................................... 54

*Eldridge v. Bouchard*, 645 F. Supp. 749 (W.D. Va. 1986) .......................................................... 27

*Ellis v. Dyson*, 421 U.S. 426 (1975) ................................................................................... 19, 20

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ..................... 10, 11, 12, 13

*Ferguson v. Gathright*, 485 F.2d 504 (4th Cir. 1973) ............................................................ 41, 42

*Fields v. Durham*, 909 F.2d 94, 96 (4th Cir. 1990) ................................................................. 41

*Fischer v. Coleman*, 486 F. Supp. 311 (W.D. Va. 1979) ................................................... passim

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ............................................................................. 53

*Franklin v. District of Columbia*, 248 A.2d 677 (D.C. App. 1968) ............................................. 42

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ........................................................................ 39

*Golden v. Zwickler*, 394 U.S. 103 (1969) ............................................................................... 3

*Gray v. Va. Sec'y of Transp.*, 662 S.E.2d 66 (Va. 2008) ........................................................ 59, 61

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................................. 47

*Griffis v. Weinberger*, 509 F.2d 837 (9th Cir. 1975) ................................................................ 57

*Haring v. Prosise*, 462 U.S. 306 (1983) ............................................................................... 16, 18

*Heck v. Humphrey*, 512 U.S. 477 (1994) ............................................................................... 29

*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997) ................................................................ 61

*In re Gault*, 387 U.S. 1 (1967) ............................................................................................ 37

*In re Winship*, 397 U.S. 358 (1970) ................................................................................... 38, 39

*Jackson v. Commonwealth*, 604 S.E.2d 122 (Va. Ct. App. 2004) ............................................... 34

*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................................................................. 38

*Jenkins v. Home Ins. Co.*, 635 F.2d 310 (4th Cir. 1980).................................................. 27

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) .............................................................. 8

*Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006) ...................................... 33

*Kane v. Hargis*, 987 F.2d 1005 (4th Cir. 1993) ......................................................... 18

*Keith v. Aldridge*, 900 F.2d 736 (4th Cir. 1990) ................................................... 15, 16

*Kolender v. Lawson*, 461 U.S. 352 (1983)................................................ 44, 45, 46, 47

*Lassiter v. Dep't. of Soc. Servs.*, 452 U.S. 18 (1981) ............................................... 37

*Ledezma-Cosino v. Lynch*, ___ F.3d ___, 2016 WL 1161260 (9th Cir. Mar. 24, 2016) ....... passim

*Long v. Florida*, 805 F.2d 1542 (11th Cir. 1986) ...................................................... 27

*Lytle v. Brewer*, 73 F. Supp. 2d 615 (E.D. Va. 1999) ................................................. 21

*Marina One, Inc. v. Jones*, 22 F. Supp. 3d 604 (E.D. Va. 2014)................................... 26

*Marks v. United States*, 430 U.S. 188 (1977) ...................................................... 31, 33

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ....................................................... 39, 40

*Medina v. California*, 505 U.S. 437 (1965) ............................................................. 39

*Montana v. United States*, 440 U.S. 147 (1979) ...................................................... 15

*Mora v. City of Gaithersburg*, 519 F.3d 216 (4th Cir. 2008) ..................................... 41

*Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981) ........................ 15

*Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995) ...................... 25, 27

*Owens v. Okure*, 488 U.S. 235 (1989) ................................................................... 27

*Oyler v. Boles*, 368 U.S. 448 (1962) ..................................................................... 43

*Papachristou v.City of Jacksonville*, 405 U.S. 156 (1972)..................................... 46, 48

*People v. Olivas*, 551 P.2d 375 (Cal. 1976)............................................................ 53

*Police Dep't. of City of Chi. v. Mosley*, 408 U.S. 92 (1972) ...................................... 54

*Powell v. Texas*, 392 U.S. 514 (1968)............................................................. passim

*Pueschel v. United States*, 369 F.3d 345 (4th Cir. 2004).......................................... 16

*Rakes v. Coleman*, 359 F. Supp. 370, 379 (E.D. Va. 1973)...................................................... 34

*Rehab. Ass'n of Va., Inc. v. Kozlowski,* 838 F. Supp. 243 (E.D. Va. 1993) ................................ 28

*Republican Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1992) ............................................. 7

*Robb v. Shockoe Slip Found.,* 324 S.E.2d 674 (Va. 1985) ........................................................ 59

*Robertson v. City of Staunton*, 51 S.E. 178 (Va. 1905) ............................................................. 59

*Robinson v. California*, 370 U.S. 660 (1962) ........................................................ 29, 31, 36, 61

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) .................................................................... 10

*San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1 (1973) ........................................ 50, 54

*Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262 (4th Cir. 2013) ......................... 23

*Selected Risks Ins. Co. v. Dean*, 355 S.E.2d 579 (Va. 1987) .................................................... 18

*Shapiro v. Thompson*, 394 U.S. 618 (1969) ....................................................................... 53, 54

*Shelton v. Angelone*, 148 F. Supp. 2d 670 (W.D. Va. 2001) ..................................................... 27

*Shelton v. Tucker*, 364 U.S. 479 (1960) .................................................................................... 54

*Skinner v. Switzer,* 562 U.S. 521 (2011) ................................................................... 10, 13, 14

*Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140 (4th Cir. 2014)........................ 40, 41

*Souter v. County of Warren,* 2014 WL 1268817 (W.D. Va. Mar 26, 2014)................................ 14

*Steffel v. Thompson*, 415 U.S. 452 (1974) ....................................................................... 19, 20, 26

*Stephens v. HSBC Mortg. Servs., Inc.*, 565 F. App'x. 238 (4th Cir. 2014) ................................ 24

*Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013)............................................................................ 8

*Turner v. Rogers*, 564 U.S. 431 (2011)...................................................................................... 40

*United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014) .............................................................. 36

*United States v. Simmons*, 604 F. App'x. 280 (4th Cir. 2015)............................................. 22, 23

*Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653 (4th Cir. 1989)........................................................... 27

*Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290 (4th Cir. 2007) ........... 51

*Vester v. Rogers*, 795 F.2d 1179 (4th Cir. 1986) ...................................................................... 21

*Walker v. True*, 399 F.3d 315 (4th Cir. 2005) ............................................................. 8

*Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005) ............................................... 12

*Williams v. Rhodes*, 393 U.S. 23 (1968) .................................................................. 54

*Willner v. Frey*, 243 Fed. App'x. 744 (4th Cir. 2007) .............................................. 11

*Wilson v. Garcia*, 471 U.S. 261 (1985) .............................................................. 25, 27

## STATUTES

28 U.S.C. § 2201 ........................................................................................................ 21

42 U.S.C. § 1983 ................................................................................................. passim

Va. Code § 18.2-250 ................................................................................................. 35

Va. Code § 4.1-304 .............................................................................................. 35, 38

Va. Code § 4.1-305 ......................................................................................... 1, 36, 38

Va. Code § 4.1-322 ..................................................................................... 1, 36, 38, 40

Va. Code § 4.1-333 ................................................................................................ 1, 41

Va. Code § 8.01-243(A) ............................................................................................ 27

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 7

Fed. R. Civ. P. 8(c) ................................................................................................... 25

## OTHER AUTHORITIES

18 James Wm. Moore et al., Moore's Federal Practice § 131.52 (3d ed. 2016) ................ 15

*Black's Law Dictionary* (10th ed., Thomson Reuters 2014) ................................. 46, 62

Kent Greenawalt, *Uncontrollable' Actions and the Eighth Amendment: Implication of Powell v. Texas*, 69 Colum. L.Rev. 927, 931 (1969) ........................................ 33

Nicki Kuckes, *Civil Due Process, Criminal Due Process*, 25:1 Yale L.J. 18-20 (2006) ............ 39

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. VIII ........................................................................... passim

U.S. CONST. amend. XIV, § 1 ................................................................... passim

V.A. CONST. art. I, § 10 .................................................................................. 60

V.A. CONST. art. I, § 11 ...................................................................... 58, 60, 61

V.A. CONST. art. I, § 14 ............................................................................ 59, 60

V.A. CONST. art. I, § 5 ....................................................................................... 59

V.A. CONST. art. I, § 9 ........................................................................ 58, 60, 61

# INTRODUCTION

Plaintiffs bring this lawsuit on behalf of themselves and other similarly situated, homeless individuals suffering from alcoholism ("Plaintiffs"), challenging the future enforcement of specific parts of Va. Code §§ 4.1-305, 4.1-322, and 4.1-333 (together, the "Interdiction Statute") on various constitutional grounds. Specifically, Plaintiffs challenge the Interdiction Statute's criminalization of alcohol possession, consumption, or purchases (and attempts of the same) (collectively "the possession and consumption prongs").[1] Plaintiffs include individuals who have been found to be "habitual drunkards" and then subsequently incarcerated under the Interdiction Statute, as well as homeless alcoholics who have not been interdicted or incarcerated. Each member of the Plaintiff class—whether already interdicted or not—faces a genuine risk of incarceration under the possession and consumption prongs of the Interdiction Statute simply because of her or his status as a homeless person who suffers from an addiction to alcohol. The Complaint thus challenges the future application of the possession and consumption branches—and only those branches—of the Interdiction Statute to the Plaintiff class on various constitutional grounds.

The Complaint alleges that, as applied to the Plaintiff class, the possession and consumption prongs of the Interdiction Statute contravene the U.S. and Virginia Constitutions. The Interdiction Statute allows Defendants to criminalize a homeless individual for having the disease of alcoholism and thereby constitutes *cruel and unusual punishment*. The Interdiction Statute also contravenes *due process* both by failing to afford any Plaintiff with counsel or the protections of a reasonable doubt standard in the civil "habitual drunkard" designation

---

[1]     For simplicity, Plaintiffs memorandum generally refers to "alcohol possession or consumption" to mean more broadly "alcohol possession, consumption, or purchases (and attempts thereof)."

proceeding and by using that impermissibly vague statutory standard to facilitate arbitrary law enforcement. And, the Interdiction Statute discriminates against the Plaintiff class in violation of Plaintiffs' rights to *equal protection* of law.

Defendants misperceive many fundamental elements of the Complaint and have filed a Motion to Dismiss largely aimed at allegations Plaintiffs have not made. Contrary to the Motion to Dismiss, no Plaintiff has sought relief through this lawsuit from his or her designation as a "habitual drunkard" in the civil interdiction proceeding. No Plaintiff is attempting to appeal any prior state court criminal judgment through this lawsuit. Further, no Plaintiff is trying to strike down the Commonwealth's authority to have anyone declared to be a "habitual drunkard." No Plaintiff is trying to prevent the Commonwealth from interdicting persons as a "habitual drunkard," from then prohibiting others from selling alcohol to interdicted persons, or from incarcerating interdicted persons if they risk public safety through public drunkenness.

Instead, the Complaint targets future prosecutions of those branded as "habitual drunkards" for just two crimes—possession and consumption of alcohol. Once so branded, the Complaint alleges that it is inevitable that alcoholics who are homeless will possess or consume alcohol in public, in plain view of law enforcement personnel, rendering eventual arrest and incarceration a foregone conclusion. Accordingly, as applied to individuals that are alcoholics and homeless, the Interdiction Statute unconstitutionally criminalizes those with a particular status: homeless alcoholics.

Once properly focused on the Complaint's actual allegations, the multiple procedural arguments in the Motion to Dismiss are easily refuted. For example, Defendants claim that this case is not ripe, simultaneously contending that Plaintiffs are both too early (those who have not been interdicted) and too late (those who have already been interdicted). Defs.' Mem. In Supp.

Mot. to Dismiss ("Defs.' Mem.") at 19. The ripeness test for both groups is whether they are at genuine risk of having the statute applied to them. *Doe v. Duling*, 782 F.2d 1202, 1205 (4th Cir. 1986) (citing *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969)). Here, both groups are at genuine risk. For the yet-to-be-interdicted Plaintiffs, it is almost certainly a matter of time before they are labeled "habitual drunkards" and then subsequently incarcerated for consumption or possession of alcohol; and the already-interdicted Plaintiffs are at risk of incarceration for consuming or possessing alcohol—or constructively possessing alcohol by simply being in the presence of others drinking beer or liquor. Both groups are at genuine risk of injury caused by the Interdiction Statute.

Defendants respond that Plaintiffs could control their alcohol consumption which would decrease, or make uncertain, the risk of either interdiction or incarceration. Defs.' Mem. at 20-21. The Complaint alleges, consistent with modern science, that chronic alcoholism is a disease which manifests a non-volitional compulsion to consume alcohol, making it almost inevitable that any Plaintiff will possess or consume alcohol following branding as a habitual drunkard. The Complaint further alleges that homelessness exacerbates alcoholism thereby increasing this risk for the Plaintiff class. Those factual allegations must be accepted as true for purposes of the Motion to Dismiss. Defendants' arguments ignore that basic legal precept—a flaw that permeates their motion. When the actual allegations in the Complaint are considered and accepted as true, the Complaint must be considered to be ripe for adjudication now.

For these and the many other reasons we discuss below, Defendants' Motion to Dismiss should be rejected.

## STATEMENT OF FACTS

The named Plaintiffs in this action are homeless individuals suffering from the disease of alcohol use disorder—chronic alcoholism. Compl. ¶¶ 1, 5, 22-25. The named Plaintiffs have brought a class action lawsuit on behalf of all homeless, chronic alcoholics in the Commonwealth. Compl. ¶¶ 1, 42, 44, 53-54, 66, 68, 79-80, 93, 95. Plaintiffs suffer from an addiction, chronic alcoholism, which is exacerbated by their homelessness. Compl. ¶¶ 24-26, 43, 58, 67, 83, 94. This addiction causes Plaintiffs to pathologically pursue alcohol and creates an involuntary compulsion to drink alcohol. Compl. ¶¶ 25, 27, 108, 125, 170. Chronic alcoholics suffer from alcohol dependency, which develops when the brain adapts to repeated exposure to alcohol and, ultimately, can function normally only when alcohol is present in the body. Compl. ¶¶ 25, 34 n.1. When chronic alcoholics do not have alcohol in their system, they suffer from withdrawal, which causes physiological reactions that can be severe or even life threatening. Compl. ¶ 34 n.1. For example, certain named Plaintiffs suffer from shaking, dry-heaves, increased blood pressure, or seizures when they stop using alcohol. Compl. ¶¶ 47, 73.

Under the Interdiction Statute, any Commonwealth's Attorney may seek an order of interdiction in a civil proceeding against any person that has "shown himself to be an habitual drunkard." Compl. ¶¶ 1-2, 15-17, 19. Once interdicted, the Interdiction Statute prohibits the sale of alcohol to the interdicted person and imposes additional penalties for being drunk in public. Compl. ¶¶ 3-4, 15, 17-18. The Interdiction Statute also creates a new crime: it is a Class 1 misdemeanor for an interdicted person to possess, consume, or purchase (or attempt to possess, consume, or purchase) alcohol, which is punishable by up to one year in jail and/or a $2,500 fine. Compl. ¶¶ 1, 3-4, 8, 16-19.

Plaintiffs lack a fixed, regular, and adequate nighttime residence and are, therefore, homeless. Compl. ¶¶ 22, 45, 69, 82, 99. As a consequence, Plaintiffs spend most of their lives in public places. Compl. ¶¶ 5, 123-24, 142, 155, 170. Plaintiffs' disease—chronic alcoholism—inevitably results in compulsive and involuntary alcohol use. Compl. ¶¶ 25, 27, 123-25, 170. For Plaintiffs, compulsive and involuntary possession or consumption of alcohol is inextricable from their status as homeless, chronic alcoholics. Compl. ¶¶ 25, 27, 108, 125,170. Therefore, Plaintiffs' homelessness and chronic alcoholism makes it almost inevitable that they will be interdicted as habitual drunkards and subsequently arrested, prosecuted, and incarcerated for possession or consumption of alcohol, which is a condition of their disease. Compl. ¶¶ 1, 126, 142, 170.

Each of the named Plaintiffs has been interdicted as a "habitual drunkard." Compl. ¶¶ 2, 40, 49, 63, 75, 89. Four of the named Plaintiffs (Bryan Manning, Ryan Williams, Richard Deckerhoff, and Richard Eugene Walls) were interdicted between 2009 and 2012. Compl. ¶¶ 49, 63, 75, 89. These four Plaintiffs have been arrested and prosecuted under the Interdiction Statute in Roanoke or Richmond between ten and thirty times each.[2] Compl. ¶¶ 51, 65, 77, 91. Mr. Deckerhoff has also been arrested and prosecuted in at least two other Commonwealth jurisdictions: Petersburg and Colonial Heights. Compl. ¶ 77.

The named Defendants, Donald Caldwell and Michael Herring, are Commonwealth's Attorneys for the cities of Roanoke and Richmond, respectively. Compl. ¶¶ 101, 102. The Complaint was brought against the named Defendants as representatives of the defendant class: all Commonwealth's Attorneys who may use the Interdiction Statute to prosecute and incarcerate

---

[2]    The fifth named plaintiff, Cary Hendrick, was recently interdicted in Roanoke City circuit court in 2016. As of the filing of the Complaint, Mr. Hendrick had been temporarily incarcerated on unrelated charges and has yet to be prosecuted for violating the interdiction order.

Plaintiffs for possession or consumption of alcohol (collectively, "Defendants"). Compl. ¶¶ 1, 103, 110.

Prior to any criminal prosecution for alcohol possession, Defendants interdicted the named Plaintiffs in a civil proceeding. Compl. ¶¶ 19, 40, 49, 63, 75, 89. Four of the five named Plaintiffs were interdicted in absentia and were not afforded access to a court-appointed attorney. Compl. ¶¶ 20, 49, 63, 75, 89. The other named Plaintiff, Mr. Hendrick, was present at his interdiction hearing. Compl. ¶ 40. He requested a court-appointed attorney, but his request was denied. *Id.*

The police have relied on constructive possession of alcohol to arrest all but one of the named Plaintiffs for violating the interdiction order.[3] Compl. ¶ 8. On one occasion, Mr. Manning was arrested for smelling of alcohol. Compl. ¶ 52. On another occasion, Mr. Manning was arrested for alcohol possession in a Walmart store where alcohol was sold, despite not having alcohol on his person. *Id.* The police arrested Mr. Williams for constructive possession of a beer can found in the trash bin of a park bathroom where he was attempting to sleep. Compl. ¶ 74. Mr. Walls was arrested for alcohol possession when the police found *empty* beer cans near him. Compl. ¶ 92. Mr. Deckerhoff was arrested for alcohol possession when the police found a beer can nearby on the ground. Compl. ¶ 78.

Plaintiffs remain under constant threat of arrest, jail time and/or fines for possession or consumption of alcohol. Compl. ¶¶ 7-8, 142, 170. The police have repeatedly arrested named Plaintiffs for possession or consumption of alcohol even if they were not intoxicated, disruptive or disorderly. Compl. ¶¶ 27, 125, 129. The named Plaintiffs feel harassed and stigmatized.

---

[3] The other named plaintiff, Cary Hendrick, was only recently interdicted in January 2016 and has yet to be prosecuted under the Interdiction statute. Compl. ¶¶ 40, 45.

Compl. ¶¶ 33, 48, 70.  And due to frequent arrest and incarcerations, named Plaintiffs have repeatedly lost their possessions, lost access to medical treatment (including surgeries and medication), lost potential employment or housing opportunities, and their relationships with family and friends have suffered.  Compl. ¶¶ 60, 61, 62, 70, 71, 86, 87, 88, 99, 100.

The Complaint challenges the constitutionality of the Interdiction Statute's prohibition against the possession, consumption, or purchase of alcohol, as applied to Plaintiffs.  Compl. ¶¶ 8-10, 175-176.  Plaintiffs do not challenge the constitutionality of the Interdiction Statute, as applied, to the extent that Defendants seek: (1) to interdict Plaintiffs as habitual drunkards, (2) to prosecute Plaintiffs under the Interdiction Statute for being drunk in public, or (3) to prosecute another person for selling alcohol to Plaintiffs that have been interdicted.  Compl. ¶¶ 9, 11.  The Complaint contends, however, that the Interdiction Statute's prohibition against possession or consumption of alcohol, as applied to Plaintiffs, is cruel and usual punishment, deprives Plaintiffs of due process under the U.S. and Virginia Constitutions, and violates equal protection of the laws under the U.S. Constitution.  Compl. ¶¶ 10, 119, 127, 130, 135, 140, 145, 150, 159, 163, 171.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  FED. R. CIV. P. 12(b)(6); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  To survive a motion to dismiss, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one through which

"the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and construe the facts of the complaint in the light most favorable to the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969); *see also Tobey v. Jones*, 706 F.3d 379, 383 (4th Cir. 2013); *Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005).

## SUMMARY OF ARGUMENT

Plaintiffs are a class of homeless alcoholics who seek prospective relief only from the unconstitutional application to them of the portions of the Interdiction Statute that criminalize the possession or consumption of alcohol by those previously branded as "habitual drunkards" in a civil court proceeding. Plaintiffs' Complaint alleges that their alcoholism is an uncontrollable addiction and their homelessness both exacerbates their addiction and makes them especially vulnerable to being (1) interdicted—designated "habitual drunkards"—and (2) convicted of possession or consumption of alcohol. Those Complaint allegations must be accepted as true for now. Defendants, who bring the criminal charges under the Interdiction Statute, have moved to dismiss on multiple procedural and substantive grounds. None of Defendants' dismissal grounds has any merit.

Defendants cite four bases for full or partial dismissal on procedural grounds. Virtually all target a complaint that is different than the one Plaintiffs filed. First, the Supreme Court narrowed the *Rooker-Feldman* doctrine, and therefore, the doctrine is no obstacle to the Complaint, which would leave intact all prior state court interdictions and criminal convictions of Plaintiffs. Instead the Complaint focuses exclusively on prospective application and relief from the constitutionally offending prongs of the Interdiction Statute. *See* Section A.1. Second,

res judicata does not preclude consideration of the Complaint's new constitutional challenge to the Interdiction Statute, a different cause of action than those brought in either the civil interdiction proceedings or criminal proceedings which Plaintiffs have, or could have, faced.  *See* Section A.2.  Third, the Complaint is ripe for adjudication now because both those Plaintiffs already interdicted and those Plaintiffs that have been yet to be interdicted face a genuine threat now, as homeless alcoholics, of being incarcerated for possession or consumption of alcohol. *See* Section A.3.  Fourth, a two-year statute of limitations does not bar the applicable named Plaintiffs from bringing this case both because, as complainants seeking prospective relief, their cause of action accrues in the future when these Plaintiffs suffer inevitable harm and the continuing violation doctrine applies.  *See* Section A.4.

Defendants' substantive assertions also should be rejected.  As applied to Plaintiffs, the possession and consumption prongs of the Interdiction Statute criminalize Plaintiffs' status as homeless alcoholics, rather than willful conduct, and therefore is unconstitutional cruel and unusual punishment.  *See* Section B.1.b.  Those prongs of the Interdiction Statute also fail on due process grounds because a necessary element of the crime—being a "habitual drunkard"—is determined without the protections afforded to criminal defendants through the right to counsel and the beyond a reasonable doubt standard.  *See* Section B.2.  The Interdiction Statute is also unconstitutionally vague by failing to afford sufficient notice and by promoting arbitrary enforcement; its possession and consumption bans operate essentially as an old-fashioned and discredited vagrancy statute masquerading as a safety against public drunkenness law, without the public drunkenness component.  *See* Section B.3.  Last, when applied to Plaintiffs, the Interdiction Statute denies equal protection of the law by depriving liberty to homeless alcoholics

in the absence of public drunkenness without serving any compelling or rational state interest. *See* Section B.4.

For all of these reasons, Plaintiffs respectfully urge this Court to deny Defendants' Motion to Dismiss.

## ARGUMENT

**A. The Complaint seeks only prospective relief against the genuine, future threat of prosecution; therefore, Defendants' procedural defenses are inapplicable.**

> **1. The *Rooker-Feldman* doctrine does not bar the Complaint's constitutional challenges to a state statutory scheme in federal district court.**

Defendants argue that the *Rooker-Feldman* doctrine denies this Court jurisdiction to hear this case. Defs.' Mem. at 10-15. In doing so, Defendants misperceive the claims made in the Complaint. Simply put, Plaintiffs do not seek to appeal, alter, or invalidate any state court judgment. The *Rooker-Feldman* doctrine, therefore, does not deny this Court jurisdiction in this action.[4]

Before the Supreme Court clarified the doctrine's narrow contours, the *Rooker-Feldman* doctrine had been interpreted simply as barring state-court losers from effectively seeking what would be appellate review of the state judgment in federal district court. *See Davani v. Va. DOT*, 434 F.3d 712, 717-718 (4th Cir. 2006). But the Supreme Court has since reemphasized "the narrow ground" occupied by the *Rooker-Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that *Rooker-Feldman* did not apply because the

---

[4] The *Rooker-Feldman* doctrine had been applied by the Supreme Court only twice prior to 2005. First in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), then 60 years later in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Both cases fit this pattern: The losing party in state court filed suit asking a federal district court to overturn the state-court judgment that had inflicted an injury on the loser. Alleging federal-question jurisdiction, the plaintiffs in *Rooker* and *Feldman* asked the District Court to overturn the state-court judgment. The Court held, in both cases, that the federal district courts lacked subject-matter jurisdiction over such claims, which was reserved for the Supreme Court. *See Skinner v. Switzer*, 562 U.S. 521, 531-32 (2011).

counterclaims Exxon had filed in federal court had not asked the "federal court to undo the [state court] judgment in its favor").

Defendants rest their *Rooker-Feldman* attack on the premise that the Complaint seeks "to invalidate the [Plaintiffs'] existing orders of interdiction" or "annul the results of a state trial." Defs.' Mem. at 14. The Complaint does neither. The Complaint leaves in place any interdiction order that has been imposed on any Plaintiff. Instead, the Complaint simply challenges the constitutionality of the possession and consumption criminal prongs of the Interdiction Statute as applied to Plaintiffs in the future. Compl. ¶¶ 8-10, 175-176. Accordingly, if the Complaint is successful, Defendants would remain free to prohibit the sale of alcohol to any interdicted plaintiff or prosecute her for being drunk in public and subject her to the enhanced incarceration penalties available under the Interdiction Statute. Compl. ¶¶ 9, 11.

The Supreme Court has made clear that *Rooker-Feldman* is a narrow doctrine. *Rooker-Feldman* is confined to cases in which "the following conditions are met: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by state-court judgments; (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff invit[es] district court review and rejection of those judgments." *Willner v. Frey*, 243 Fed. App'x. 744, 746 (4th Cir. 2007) (quoting *Exxon Mobil*, 544 U.S. at 284) (internal quotations omitted). Defendants are unable to demonstrate that any of the four conditions are met because Plaintiffs are only challenging future prosecutions (and not the prior civil interdiction proceeding or criminal convictions).

The *Exxon Mobil* Court explicitly sought to narrow the *Rooker-Feldman* scope, explaining that the doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in

deference to state-court actions." *Id.* at 284. The Fourth Circuit followed the *Exxon Mobil* Court's narrowed view in *Davani*, 434 F.3d at 719, holding that *Rooker-Feldman* did not bar federal district court jurisdiction to hear claims related to a Virginia circuit court's dismissal of a state employee's wrongful termination claim. The court reasoned that the federal claim did not allege that the state court decision caused him injury, but instead Davani's claims in federal court alleged that the Virginia DOT discriminated against him in violation of federal and state law. *Id.* The Fourth Circuit reversed the district court's dismissal on *Rooker-Feldman* doctrine grounds and rejected the lower court's reasoning that the federal claims were "inextricably intertwined" with the state court decision, stating that *Exxon Mobil* "undercuts the broad interpretation of the *Rooker-Feldman* doctrine" that the court had applied in other cases. *Id.* at 717-718 (holding that where a state-court loser is not seeking redress in federal district court for an injury caused by state-court decision itself, *Rooker-Feldman* does not apply).

The Fourth Circuit similarly has held in *Washington v. Wilmore*, 407 F.3d 274, 280 (4th Cir. 2005), that the *Rooker-Feldman* doctrine did not bar federal district court jurisdiction where "[the plaintiff's] claim of injury rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights [by the defendant]." The Complaint follows this judicial roadmap; here Plaintiffs challenge the Interdiction Statute for violating Plaintiffs' constitutional rights and do not challenge any past state court judgment. *Id.* In nearly identical circumstances, the Fourth Circuit concluded *Rooker-Feldman* did not apply: "plaintiff's federal suit was not 'inextricably intertwined' with the state-court decision because it sought redress for the defendant's violation of his rights, not the state-court decision." *Davani*, 434 F.3d at 719 (summarizing *Washington*, 407 F.3d at 280).

Far from the procedural gymnastics that Defendants allege, Defs.' Mem. at 14, the Complaint constitutes an as applied, targeted constitutional challenge to a state statute, not any prior conviction or judgment. The Supreme Court has made clear that such a challenge is not dismissible under *Rooker-Feldman*. *Skinner v. Switzer,* 562 U.S. 521, 532-533 (2011). Plaintiffs do not attempt to attack "the adverse [state court] decisions themselves." *Id.* at 532 (permitting a person convicted of murder in state trial to raise federal claim challenging the constitutionality of state DNA testing statute).[5] Rather, Plaintiffs "target[] as unconstitutional the [statute] [the state court] authoritatively construed." *Id.* As noted in *Skinner,* "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Id.*. The Court explained, "[i]f a federal plaintiff 'present[s] [an] independent claim,' it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." *Id*. at 532 (quoting *Exxon Mobil,* 544 U.S. at 292-93). Plaintiffs are following *Skinner* precisely by challenging only the constitutionality of the possession and consumption prongs of the Interdiction Statute, not their prior convictions or civil interdiction proceedings.

In applying *Skinner*, a court in this district recently held that *Rooker-Feldman* is an "extremely narrow" doctrine that "emphatically" did not bar the plaintiff's claims challenging the constitutionality of a statute that informed a series of adverse zoning decisions by the Warren County Circuit Court, because the plaintiff had a "separate and distinct claim that the zoning ordinance provisions are 'unconstitutional as written.'" *Souter v. County of Warren,* 2014 WL

---

[5]  Skinner was a death-row inmate who filed a federal complaint under 42 U.S.C. § 1983 ("Section 1983") challenging Texas's post-conviction DNA testing statute "as construed by the Texas courts," which had blocked Skinner's request to test DNA from his crime. *Id.* at 530. The Supreme Court rejected Texas's arguments that *Rooker-Feldman* barred Skinner's claim because he sought to re-litigate claims previously rejected by the state court, as well as its argument that Skinner sought DNA testing in order to invalidate his conviction.

1268817 at *2 (W.D. Va. Mar 26, 2014) (citation omitted). Relying upon *Skinner*, the court reasoned that "a state court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action," and held that Souter's zoning ordinance challenge clearly fell in the latter category. *Id.* (quoting *Skinner*, 562 U.S. at 532-33); *see also Skinner*, 562 U.S. at 533 n.11 ("*Rooker–Feldman* is not simply preclusion by another name") (citations omitted).

The Complaint similarly challenges only the future application of specific prongs of the Interdiction Statute. Plaintiffs explicitly ask only for prospective relief in the form of an injunction against Defendants' unconstitutional enforcement of the Interdiction Statute. Compl. at 29-30; *see also,* Compl. ¶¶ 13, 109, 116, 133, 138, 148, 153, 162, 166, 174-75. In no way does this prayer for relief ask this Court to upset a lower court judgment. Rather, it asks this Court to enjoin Defendants' future unconstitutional enforcement of part of the Interdiction Statute.

## 2. Res Judicata does not apply to claims arising out of operative facts not at issue in the prior adjudication, and the Complaint challenges only *future* prosecutions.

Plaintiffs seek declaratory and injunctive relief on grounds that, as applied to the Plaintiff class, the Interdiction Statute would violate Plaintiffs' constitutional rights to due process, equal protection, and to be free from cruel and unusual punishment. Compl. ¶ 10. Defendants, however, argue that Plaintiffs' constitutional claims are barred by the res judicata doctrine because Plaintiffs had "a full and fair opportunity to raise their constitutional arguments during the interdiction proceedings in state court." Defs.' Mem. at 15. Defendants' argument should be rejected because (1) Defendants fail to establish one of the required elements of the res judicata doctrine; (2) Defendants assert that Plaintiffs should have exhausted state court remedies to support their res judicata argument, which is not required in Section 1983 actions; and

(3) Defendants rely solely on precedent involving plaintiffs who sought retrospective relief, which is distinguishable from Plaintiffs' case.

### a. Defendants fail to establish that Plaintiffs' claims are the same "cause of action" as the prior interdiction or criminal proceedings; therefore, Defendants have not established that Plaintiffs' claims are barred by res judicata.

A res judicata affirmative defense has three elements: the prior proceeding (1) involved the same parties; (2) had a final judgment; and (3) involved the same "cause of action" as in the present litigation. *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir. 1990) (citing *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)); *see also Brown v. Felsen,* 442 U.S. 127, 131 (1979) ("Under res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" (citing *Montana v. United States*, 440 U.S. 147, 153 (1979))). Defendants have not established the third element, which is critical to the res judicata affirmative defense. *Montana*, 440 U.S. at 154 (explaining "the [res judicata] doctrine presupposes identity between causes of action"); 18 James Wm. Moore et al., Moore's Federal Practice § 131.52 (3d ed. 2016) ("Since claim preclusion is an affirmative defense, the burden is on the party asserting it to prove all of the elements necessary for its application.").

If both proceedings arise from the same "cause of action," either party would be prevented from litigating claims or defenses that were either raised or the parties had the opportunity to raise in the prior proceeding. *Brown*, 442 U.S. at 131 ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). Res judicata does not apply, however, where a different "cause of action" is brought by a party in a subsequent proceeding. *Id.* at 133-134 (finding a party's petition for bankruptcy, including claims to discharge debts, was a different "cause of action" than the prior litigation which held

the party liable for the debt); *Haring v. Prosise*, 462 U.S. 306, 315 n.9 (1983) (explaining res judicata did not apply "to a later action between the same parties on a different claim or demand").

To qualify as the same "cause of action," courts in this Circuit have held that the prior proceeding must "arise out of the same transaction or series of transactions or the same core of operative facts" as the subsequent proceeding. *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (reasoning that two claims arose out of the same transaction or core of operative facts because the basis of both suits was "an alleged pattern of FAA conduct that supposedly took place between January 1984 . . . and April 5, 1994 . . . .") (internal quotations and citations omitted); *see also Keith*, 900 F.2d at 740 (reasoning that two claims were based on "the same series of connected transactions" because both claims were based on the same operative facts and specific issues surrounding the plaintiff's termination of employment).

Plaintiffs' claims in this case are not the same "cause of action" as their interdiction or criminal proceedings because they do not arise out of the same transaction, or the same operative facts, as in any prior proceeding. Here, Plaintiffs seek to enjoin Defendants in the future from prosecuting Plaintiffs for alcohol possession or consumption, including constructive possession for being in proximity to open containers of alcohol or smelling of alcohol. Compl. ¶ 8. These future claims necessarily will involve new facts. Defendants have conceded that res judicata would not bar an interdicted Plaintiff from defending a possession of alcohol charge on constitutional grounds in a case brought, for example, in 2017. *See* Defs.' Mem. at 16-17 ("Also of note, Plaintiffs have been free to raise the constitutionality of their interdicted status in any of their subsequent prosecutions—criminal proceedings for which they are afforded the right to counsel and, if indigent, court-appointed counsel."). The facts and circumstances in 2017 surely

would have not have been litigated before. Similarly, the members of the Plaintiff class that have already been interdicted are not barred from raising constitutional challenges now to prevent future application of the possession and consumption prongs of the Interdiction Statute to them.

Plaintiffs are not challenging any aspect of their previous interdiction or criminal proceedings. Compl. at 29-30. As the Complaint makes clear, Plaintiffs are seeking to strike down only the future application of the possession and consumption prongs of the Interdiction Statute to the Plaintiff class based on future acts and circumstances. *Id.* Those Plaintiffs who have been interdicted would remain interdicted if Plaintiffs' challenge is successful. The Complaint further states that Plaintiffs' constitutional challenge would not affect any Defendant's right to enforce the Interdiction Statute against any interdicted member of the Plaintiff class "to the extent that the Interdiction Statute prohibits interdicted persons from being drunk in public or prohibits a person from selling alcohol to an interdicted person." Compl. ¶ 11. Plaintiffs' claims for prospective relief do not arise from the "very fact of the state court proceedings themselves" and, therefore, are not barred. *Colvin v. Deaton*, 577 F. Supp. 925, 928 (W.D. Va. 1984).

Although the res judicata doctrine could bar Section 1983 claims in certain circumstances, *Allen v. McCurry*, 449 U.S. 90, 97 (1980), Plaintiffs' claims are not barred. Defendants allege that res judicata bars the Complaint because Plaintiffs had an opportunity "to challenge their interdiction in state court." Defs.' Mem. at 15. However, whether res judicata applies is determined by whether the claims arise out of the same cause of action, not whether a party had an opportunity to litigate an issue in a prior proceeding. Even if Defendants' assertion was correct, the Complaint does not seek to challenge or overturn any interdiction, or conviction,

of any Plaintiff. Compl. ¶ 11 and at 29-30. Under Defendants' argument, Plaintiffs' *future* constitutional claims would be permanently barred simply because of their previous state court convictions. However, the Supreme Court has permitted a plaintiff to raise constitutional issues despite the fact that the plaintiff pleaded guilty and was convicted in a prior related proceeding. Rejecting the idea that a prior criminal conviction in itself serves as a binding determination of the constitutional issues, the Court explained:

> Under petitioners' rule, whether or not a state judgment would be accorded preclusive effect by state courts, a federal court would be barred from entertaining a § 1983 claim. . . . Defendants who have pleaded guilty and who wish to bring a § 1983 claim would be forced to bring that claim in state court, if at all. Not only have petitioners failed to advance any compelling justification for a rule confining the litigation of constitutional claims to a state forum, but such a rule would be wholly contrary to one of the central concerns which motivated the enactment of § 1983, namely, the 'grave congressional concern that the state courts had been deficient in protecting federal rights.'

*Haring*, 462 U.S. at 322-23; *see also Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) ("'In Virginia, the settled rule is that a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered,' . . . unless the civil plaintiff seeks to recover damages from his/her own wrong" (citing *Selected Risks Ins. Co. v. Dean*, 355 S.E.2d 579, 579 (Va. 1987) (quotations omitted in original))). Plaintiffs' prior convictions should be even less relevant in this case, where Plaintiffs do not challenge the facts or judgment of any prior proceeding.

Claims of Plaintiff class members who have not yet been interdicted similarly cannot be barred by res judicata. Defendants' silence on this point appears to concede that Plaintiffs' claimed threatened injury—i.e., being repeatedly arrested, prosecuted, and incarcerated—occurs only after they have been interdicted and made subject to the possession and consumption prongs of the Interdiction Statute. Compl. ¶¶ 8, 142, 170. Therefore, these Plaintiffs also have not had a "full and fair opportunity" to litigate any issues in a previous court proceeding

involving the Interdiction Statute because those court proceedings have never occurred for those Plaintiffs.

### b. Defendants' argument misunderstands the applicability of the res judicata doctrine by contending that Plaintiffs were required to exhaust state remedies.

Defendants assert that Plaintiffs should have exhausted various state remedies after being interdicted and prosecuted such as "appeal[ing] [Plaintiffs'] judgment," "petitioning for withdrawal or modification of [Plaintiffs'] existing orders of interdiction on constitutional grounds," and "rais[ing] the constitutionality of [Plaintiffs'] interdicted status in any of their subsequent prosecutions." Defs.' Mem. at 16. However, under *Steffel v. Thompson*, 415 U.S. 452 (1974), Plaintiffs are not required to exhaust all state remedies prior to initiating a Section 1983 claim in federal court. In *Steffel,* the Court reasoned:

> Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head. When federal claims are premised on 42 U.S.C. § 1983 . . . we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights.

415 U.S. at 473-73; *see also Ellis v. Dyson*, 421 U.S. 426, 432-33 (1975) ("[The Supreme Court has] have long held that an action under § 1983 is free of that requirement."). Therefore, Plaintiffs' failure to seek any of the remedies proposed by Defendants does not preclude Plaintiffs from seeking relief under Section 1983.

### c. Defendants' reliance on *Colvin v. Deaton* and *Allen v. McCurry* is misplaced.

Defendants rely on cases that are inapplicable to Plaintiffs' case because both cases involved a plaintiff who filed a federal lawsuit to specifically challenge a prior criminal proceeding. Defendants rely heavily on *Colvin v. Deaton*, where plaintiffs sought "declaratory, injunctive, and monetary relief" after being interdicted. 577 F. Supp. at 927-28; *see* Defs.' Mem. at 15-19. Similarly, Defendants cite to *Allen v. McCurry*, Defs.' Mem. at 15, where a plaintiff

filed a Section 1983 action for damages incurred during the plaintiff's prior arrest after he was convicted and his habeas corpus petition was denied by the state court. 449 U.S. at 92-93.[6] Here, Plaintiffs exclusively seek prospective relief from future prosecutions for mere possession or consumption of alcohol and do not challenge their interdiction status. Therefore, Plaintiffs' claims do not arise "from the very fact of the" interdiction proceeding, or the criminal proceedings, because no aspect of the Complaint challenges or seeks to overturn either set of proceedings. *Colvin*, 577 F. Supp. at 928; Defs.' Mem. at 18.

### 3. Ripeness: Plaintiffs' claims are ripe because the Complaint sufficiently pleads a genuine threat of future injury.

Plaintiffs seek prospective relief from future prosecution under the Interdiction Statute because Plaintiffs remain under constant threat of arrest, jail time, and/or fines for possession or consumption of alcohol. Compl. ¶¶ 7-8, 27, 125, 129, 142, 170. Defendants nevertheless allege that this Court does not have jurisdiction over Plaintiffs' claims for declaratory relief because future prosecution under the Interdiction Statute "is necessarily a fact-dependent inquiry that will be 'contingent on future events.'" Defs.' Mem. at 20. Defendants' argument fails because (1) Plaintiffs have sufficiently pleaded a genuine threat of future injury; and (2) Defendants rely solely on precedent that is inapplicable to the facts of this case.

### a. Plaintiffs' claim is ripe under applicable Fourth Circuit precedent.

Plaintiffs may seek declaratory relief when there is no pending state prosecution so long as Plaintiffs demonstrate "a genuine threat of enforcement of a disputed state criminal statute . . . ." *Steffel*, 415 U.S. at 475; *see also Ellis*, 421 U.S. at 432-433 ("Exhaustion of state judicial or administrative remedies in *Steffel* was ruled not to be necessary, for we have long held

---

[6] The Court in *Allen v. McCurry* held that res judicata could bar a § 1983 action, however, the court did not analyze how a res judicata defense would apply to the facts of its case. 449 U.S. at 105 n.25.

that an action under § 1983 is free of that requirement . . . . We did require, however, that it be clearly demonstrated that there was a continuing, actual controversy, as is mandated both by the Declaratory Judgment Act, 28 U.S.C. § 2201, and by Art. III of the Constitution itself."). Similarly, the Fourth Circuit has held that a plaintiff "must show a threat of prosecution that is both real and immediate . . . before a federal court may examine the validity of a criminal statute." *Duling*, 782 F.2d at 1206. The Fourth Circuit has found a past claim to be ripe where a plaintiff challenged a statute and used past instances where the statute had been used to restrict his conduct to support his contention that the statute will likely be applied to him again in the future. *Vester v. Rogers*, 795 F.2d 1179, 1181 n.2 (4th Cir. 1986). Furthermore, other district courts in this Circuit have reasoned that "at least one occasion" of past enforcement of a statute was sufficient to show a "credible threat of prosecution" under the challenged statute. *Lytle v. Brewer*, 73 F. Supp. 2d 615, 626-27 (E.D. Va. 1999).

The Complaint sufficiently states a genuine threat of future injury by the possession and consumption prongs of the Interdiction Statute for three reasons: (1) Defendants are actively enforcing those statutory provisions against, among others, the named Plaintiffs; (2) it is virtually inevitable that the named Plaintiffs will face circumstances similar to those that led to their previous arrests and prosecutions in the future; and (3) the remainder of the Plaintiff class faces a similar risk of prosecution due to their status as homeless alcoholics.

Four out of five of the named Plaintiffs have been prosecuted and incarcerated under the Interdiction Statute as many as thirty times after they were interdicted. Compl. ¶¶ 51, 65, 77, 91. Contrary to Defendants' assertions, this criminal history inherently demonstrates a concrete threat of enforcement under the Interdiction Statute—not "contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Simmons*, 604 F. App'x.

280, 280 (4th Cir. 2015). One of the named Plaintiffs, Richard Walls, has been arrested, and prosecuted, as recently as February 8, 2016—a fact that Defendants approvingly cite in their motion—and again on March 11, 2016.[7] Defs.' Mem. at 17. Further, Defendants have not asserted that they have discontinued, or intend to discontinue, their practice of prosecuting and incarcerating individuals for possession, consumption, or attempted possession or consumption under the Interdiction Statute.

Plaintiffs' condition as homeless individuals suffering from alcohol use disorder virtually guarantees that they will face circumstances identical to the underlying facts of previous arrests, prosecutions, and incarceration under the Interdiction Statute. Plaintiffs' addiction to alcohol causes them to pathologically pursue alcohol. Compl. ¶¶ 25, 27, 108, 125, 170. Without alcohol, Plaintiffs suffer physical and painful consequences, which make them more likely to pursue alcohol. Compl. ¶ 34 n.1. In addition, Plaintiffs' status as homeless individuals causes any pursuit, or use, of alcohol to be conducted in public, where Plaintiffs can be easily detected. Compl. ¶¶ 5, 123-24, 142, 155, 170. Plaintiffs' status, therefore, coupled with Defendants' continual enforcement of the Interdiction Statute, ensures that Plaintiffs will again face circumstances that could lead to arrest, just as similar circumstances led to their prior arrests under the Interdiction Statute in the past.

Plaintiffs who are homeless and suffer from alcoholism but have not yet been interdicted also face a genuine risk of injury by the Interdiction Statute. Plaintiffs are highly vulnerable to being interdicted under the Interdiction Statute because being homeless makes their drinking activity easily detectable. Compl. ¶ 124. Once found to be a "habitual drunkard," Plaintiffs are

---

[7] Plaintiffs Manning and Deckerhoff were convicted for violating the possession prong of the Interdiction Statute in November 2015. Plaintiff Williams was convicted for possession as recently as May 2, 2016. These statements are based on the online records system for the Virginia General District Courts, which are available at http://www.courts.state.va.us/courts/gd/home.html.

virtually guaranteed to endure frequent arrests, prosecutions, and incarceration because of their addiction coupled with their homelessness. Compl. ¶ 125. The members of the Plaintiff class who have been interdicted, prosecuted, and incarcerated embody this reality.

> **b. Defendants' argument is inapplicable to Plaintiffs because Defendants rely solely on precedent where a challenged statute was never enforced or a plaintiff's claim of future injury was factually unsubstantiated.**

Defendants have cited to, and relied on, precedent that is distinguishable from the Complaint. Defendants first rely on decisions concerning statutes that had never been enforced, or were enforced under remote and particular circumstances. *See U.S. v. Simmons*, 604 F. App'x. at 280 (challenging a civil commitment statute that could be enforced after forty years and only if the government elected to enforce the statute). For instance, in *Doe v. Duling*, plaintiffs challenged a Virginia cohabitation statute. 782 F.2d at 1204. The record, however, demonstrated that individuals were rarely arrested under the statute, and the few instances of arrest were under circumstances distinguishable from the plaintiffs' case. *Id.* at 1204-1205 ("Plaintiffs, however, failed to show even a remote chance that they are threatened with prosecution under these provisions."). In contrast to the plaintiffs in *Doe*, some members of the Plaintiff class have an actual criminal history resulting from Defendants' enforcement of the Interdiction Statute, which demonstrates that Defendants actively enforce the Interdiction Statute. Compl. ¶¶ 51, 65, 77, 91. Richard Walls was prosecuted on February 8 and March 11, 2016, which further confirms this fact.

Defendants also rely on cases where a plaintiff's claims were based on subjective, and largely unsubstantiated, claims of future injury. *See Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (anticipated denial of a housing accommodations request); *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (anticipated prohibition against plaintiff entering a school because of sexual offender

registration).  For example, in *Stephens v. HSBC Mortg. Servs., Inc.*, a plaintiff sought declaratory relief against foreclosure proceedings on her home.  565 F. App'x. 238, 239 (4th Cir. 2014).  The record, however, demonstrated that the mortgagee had not initiated any foreclosure actions against the plaintiff, and there was no indication that mortgagee planned to initiate any proceedings.  *Id.* at 240.  The Fourth Circuit, therefore, dismissed the plaintiff's case on grounds that her fear of injury was subjective.  *Id.* (reasoning "because Stephens's ability to exercise her right was subject to multiple unpredictable future contingencies, a declaration would not be useful and the lack of a declaration would not impose any significant hardship on the parties").  In contrast to the plaintiff in *Stephens*, Plaintiffs' criminal history in this case should dispel any claim that their fear of prosecution is factually unsubstantiated or unpredictable.  *See* Compl. ¶¶ 51, 65, 77, 91.

### 4. The Statute of Limitations is not a bar to Plaintiffs' claims because it does not begin to run until Plaintiffs' injuries accrue, and Plaintiffs challenge only future prosecutions under the Interdiction Statute.

Defendants claim that the relevant statute of limitations period accrued when each interdiction order was entered against Plaintiffs.  Defs.' Mem. at 24.  Defendants do not challenge any of the claims raised by named Plaintiff Cary Hendrick on statute of limitations grounds.  Defendants do, however, assert that the claims for declaratory relief raised by named Plaintiffs Bryan Manning, Richard Deckerhoff, Richard Walls, and Ryan Williams are time-barred by the relevant statute of limitations because they were filed more than two years after an initial interdiction order was imposed on each of them.  Defs.' Mem. at 22-24.  Defendants' statute of limitations argument, which is limited only to these four named Plaintiffs, fails because Plaintiffs' claims will accrue in the future when they are convicted for possession or consumption of alcohol as interdicted persons, rather than when they were initially interdicted.

An assertion of a statute of limitations is an affirmative defense; Defendants therefore must bear the burden of proof that the limitation is violated. *See* FED. R. CIV. P. 8(c); *See also, e.g.*, *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations . . . constitutes an affirmative defense . . . ."). Defendants have not met their burden to establish the elements of this defense for two reasons: (1) Plaintiffs' claims are for prospective relief only and, therefore, should not be considered to fall within the relevant statute of limitations; and (2) even if Plaintiffs' claims were subject to a statute of limitations, Plaintiffs' claims would fall under an exception to the statute of limitations.

**a. A statute of limitations is not applicable because Plaintiffs seek prospective relief from future prosecution and, therefore, the limitation period cannot have already expired.**

Although the Supreme Court has held that federal courts may apply state statute of limitations rules for personal injury actions to Section 1983 claims, *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), Plaintiffs' claims are not barred by the relevant statute of limitations. In the Fourth Circuit a cause of action accrues for purposes of determining time limitations when "the plaintiff is on inquiry notice," or at the point where "the plaintiff know[s] that he has been hurt and who inflicted the injury." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995).

Defendants' argument largely focuses on Plaintiffs' ability to challenge the civil interdiction orders, which is a claim for relief that Plaintiffs have not sought. Plaintiffs in this case exclusively challenge, and seek to prevent, the future application of the possession and consumption prongs of the Interdiction Statute to the Plaintiff class. Compl. ¶¶ 8-10, 175-76. Plaintiffs do not challenge, or seek to amend, the orders of interdiction. Plaintiffs contend that Defendants are the individuals "who inflic[t] the injury," Compl. ¶ 103; however, Plaintiffs' Complaint is clear that the "injury" at issue is virtually certain to occur in the future, but has not

yet occurred. Compl. ¶¶ 7-8, 142, 170. Surely the application of a two-year statute of limitations to injuries that have not yet occurred would be inconsistent with the spirit of Section 1983, as well as the general purpose of declaratory relief, as articulated by the Supreme Court and Virginia courts. *Steffel*, 415 U.S. at 478 (Rehnquist, J. concurring) ("[M]y reading of the legislative history of the Declaratory Judgment Act of 1934 suggests that its primary purpose was to enable persons to obtain a definition of their rights before an actual injury had occurred"); *Marina One, Inc. v. Jones*, 22 F. Supp. 3d 604, 609 (E.D. Va. 2014) ("As the Plaintiffs point out, a purpose of the Declaratory Judgment Act is to give parties an ability to settle actual controversies without waiting for injury to accrue.").

If this Court were to take Defendants' argument to its logical conclusion, the statute of limitations, running two years from the civil proceeding, would bar all Plaintiffs from raising any constitutional claims in *any* criminal prosecutions of Plaintiffs under the Interdiction Statute. Plaintiffs Manning and Deckerhoff were last convicted, specifically for violating the possession prong of the Interdiction Statute, in November of 2015. Plaintiffs Walls and Williams were last convicted for possession as recently as March 11 and May 2, 2016, respectively.[8] Under Defendants' theory, each Plaintiff would be barred from challenging their convictions because their previous civil interdiction proceedings took place more than two years prior to their conviction. This is a reality that even Defendants argue against in their Motion to Dismiss. Defs.' Mem. at 16-17 ("Also of note, Plaintiffs have been free to raise the constitutionality of their interdicted status in any of their subsequent prosecutions. . . .").

---

[8] These statements are based on the online records system for the Virginia General District Courts, which are available at http://www.courts.state.va.us/courts/gd/home.html.

Finally, Defendants' argument relies on cases in which the plaintiffs only made claims for compensatory damages stemming from a previous event or previous proceedings.[9]  But, as noted, Plaintiffs seek only to prevent the future application of the possession and consumption prongs of the Interdiction Statute.  Compl. ¶¶ 8-10, 175-76.

> **b.  Even if the statute of limitations was applicable, Plaintiffs' claims are not barred because of the Fourth Circuit's continuing violation exception.**

Under Virginia law, personal injury actions fall under a two-year statute of limitations. Va. Code § 8.01-243(A).  But the Fourth Circuit has traditionally granted an exception (the "continuing violation doctrine") on the basis that "'[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.'"  *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989) (citing *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954); *Eldridge v. Bouchard*, 645 F. Supp. 749 (W.D. Va. 1986), *aff'd*, 823 F.2d 546 (4th Cir. 1987); *Long v. Florida*, 805 F.2d 1542 (11th Cir. 1986)).

Under the continuing violation doctrine, claims falling outside the relevant statute of limitations timeframe are still timely if they are related to a preceding constitutional violation, and claim, that occurred within the statute of limitations, thereby demonstrating a violation "occurred in a series of separate but related acts."  *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980); *see also Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) ("Incidents outside of the statutory window are time-barred unless they can be related to a timely incident as

---

[9]  *Owens v. Okure*, 488 U.S. 235, 237 (1989) (seeking damages under § 1983 from two State University of New York police officers stemming from an alleged unlawful arrest that occurred a year before the suit); *Wilson*, 471 U.S. at 263 (seeking compensatory damages stemming from injuries suffered during an arrest approximately two years before the suit was filed); *Nasim*, 64 F.3d at 952 (seeking relief based on allegations that prison officials previously deliberately exposed the plaintiff to asbestos while he was incarcerated); *Banks v. Fowlkes*, 2014 U.S. Dist. LEXIS 163621, at *1 (E.D. Va. Nov. 20, 2014) (seeking relief for injuries suffered during the plaintiff's former incarceration); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 675 (W.D. Va. 2001) (seeking relief under § 1983 for incidents that occurred more than one year before filing a civil action lawsuit while the plaintiff was imprisoned).

a 'series of separate but related acts' amounting to a continuing violation.").  The Fourth Circuit has clarified that "if the plaintiff can show that the illegal act did not occur just once, but rather 'in a series of separate acts[,] and the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'"  *A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (internal citations and quotations omitted); *see also Rehab. Ass'n of Va., Inc. v. Kozlowski*, 838 F. Supp. 243, 249 (E.D. Va. 1993) (holding that Virginia's two-year statute of limitations did not apply where plaintiff health care provider challenged ongoing Medicaid reimbursement procedures four years after the procedures were adopted).

The four named Plaintiffs that Defendants argue are barred by the statute of limitations each fit comfortably under the Fourth Circuit's continuing violation doctrine because the Complaint alleges that the Interdiction Statute violated these Plaintiffs' constitutional rights, enforceable under Section 1983, on a continual basis after their respective civil interdiction proceedings.  As the Complaint states, Mr. Manning has been prosecuted over thirty times since 2010, Mr. Williams has been prosecuted at least twenty-five times since 2012, Mr. Deckerhoff has been prosecuted at least eleven times since 2009, and Mr. Walls has been prosecuted at least twelve times since 2012.  Compl. ¶¶ 51, 65, 77, 91.

Each prosecution against any one of the four named Plaintiffs was part of a fixed and continuing practice.  Compl. ¶¶ 8, 174.  Each subsequent prosecution of each of the named Plaintiffs for possession or consumption of alcohol under the Interdiction Statute was part of a series of separate acts and violations.  Consequently, under *Jenkins* and *Abbott Labs.*, the statute of limitations period began anew each time those prosecutions occurred.  Therefore, Plaintiffs' claims fall within the two-year limitations period, most recently running from May 2, 2016,

which is the most recent prosecution of one of the named Plaintiffs under the Interdiction Statute.

Thus, Defendants have not established that these four Plaintiffs' claims are barred by the statute

of limitations.

**B. Accepting the pleaded facts as true, the Complaint sufficiently states claims that the Interdiction Statute inflicts cruel and unusual punishment, denies due process, and unconstitutionally discriminates against Plaintiffs.**

    **1. The statutory scheme inflicts cruel and unusual punishment because it criminalizes Plaintiffs' disease—chronic alcoholism.**

        **a. The Complaint does not seek retrospective relief.**

Defendants argue that to "the extent that Plaintiffs are seeking to invalidate their past

criminal convictions, they have failed to state a plausible claim." Defs.' Mem. at 25. Plaintiffs

do not seek to invalidate their past criminal convictions, and Defendants' analysis of *Heck v.*

*Humphrey*, 512 U.S. 477 (1994) is inapplicable to the Complaint. Compl. at 24-30 ("Plaintiffs

respectfully request this Court: . . . (g) Declare that Defendants' present, and threatened future,

actions violate Plaintiffs' rights to be free from cruel and usual punishment").

        **b. The Interdiction Statute is cruel and unusual because it punishes status, and it punishes involuntary acts proximate to a status or condition.**

Under *Robinson v. California*, 370 U.S. 660 (1962), it is cruel and unusual punishment,

in violation of the Eighth and Fourteenth Amendments, for the state to criminalize a person's

"condition or status." 370 U.S. at 661 and 665-67 (holding a state criminal statute

unconstitutionally inflicted cruel and unusual punishment for prohibiting any person from being

"addicted to the use of narcotics") (internal quotations omitted). Defendants argue that the

Interdiction Statute is not cruel and unusual, because it punishes conduct rather than a status or

condition. Defs.' Mem. at 26-27 (citing *Powell v. Texas*, 392 U.S. 514 (1968)). Defendants'

contention fails for three reasons: (1) as applied to homeless alcoholics, the Interdiction Statute

punishes mere status; (2) the Interdiction Statute criminalizes involuntary acts proximate to a

status or condition in violation of the Eighth Amendment; and (3) Defendants' only support for their argument are cases whose holdings are predicated on an inadequate trial record, which cannot justify Defendants' Motion to Dismiss.

      **(i)**     **As applied, the Interdiction Statute punishes status irrespective of any conduct because Plaintiffs spend their lives in public places in the presence of others that possess alcohol, and Defendants routinely prosecute Plaintiffs for constructive possession of alcohol containers found nearby.**

First, the Interdiction Statute, as applied to Plaintiffs, does in fact punish status—the status of a chronic alcoholic that is interdicted and homeless—even in the absence of additional conduct. Under a pure *Robinson* analysis, criminalizing homeless alcoholics' constructive possession of alcohol punishes status without any subsequent "act." Defendants argue that the statute in *Robinson* (penalizing any person that is "addicted to the use of narcotics") is distinguishable from the Interdiction Statute (penalizing any person that has "shown himself to be a habitual drunkard" for possession of alcohol) because the former does not require any further act whereas the latter does—the act of possession or consumption of alcohol. Defs.' Mem. at 26-27. But Defendants' argument ignores the facts pleaded in the Complaint: Defendants and the police have targeted the named Plaintiffs for merely being in proximity to alcohol, including arresting named Plaintiffs for being near empty beer cans or wandering the aisles of a store where alcohol is sold. *See* Compl. ¶¶ 8, 52, 74, 78, 92. Accordingly, Plaintiffs have been arrested, prosecuted and incarcerated under the Interdiction Statute without engaging in the "act" of possessing alcohol.

As homeless persons, Plaintiffs regularly spend time in public places with other indigent persons, many of whom may not be interdicted and regularly use alcohol. Compl. ¶¶ 34-36. As a result, Plaintiffs are destined to be in public places where empty beer cans are likely to be left on the ground or in a nearby trash bin, putting Plaintiffs at constant risk of arrest for constructive

"possession" of alcohol.  Defendants' propensity to prosecute homeless alcoholics for constructive possession of alcohol under the Interdiction Statute criminalizes Plaintiffs' status as interdicted, homeless alcoholics and is cruel and unusual punishment under the Eighth Amendment and *Robinson*.  *See* 370 U.S. at 667.

> **(ii)**   **Under *Robinson* and *Powell*, it is cruel and unusual punishment to criminalize involuntary acts proximately caused by a status or condition.**

Second, two years before the Supreme Court decided *Powell v. Texas*, 392 U.S. at 514, the Fourth Circuit Court of Appeals held in *Driver v. Hinnant*, 356 F.2d 761, 765 (4th Cir. 1966), that "[a] State cannot stamp an unpretending chronic alcoholic as a criminal if his [conduct] is involuntary as the result of disease."  Even following the Supreme Court's decision in *Powell*, this remains a correct statement of law in this Circuit.[10]  It is well-settled that when the Supreme Court decides a case and no opinion in support of the judgment commands the assent of a majority of Justices, then the judgment is limited to the exact facts at issue.  *See Marks v. United States*, 430 U.S. 188, 193 (1977).  In relying on *Powell*, Defendants ignore this basic principle. *See id.* ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'") (citations omitted).

The *Powell* court was divided 4-1-4, with five justices (the plurality opinion and Justice White concurring only in the result) in agreement on the narrowest of grounds: the appellant

---

[10]   The district court in *Fischer v. Coleman*, 486 F. Supp. 311 (W.D. Va. 1979) *aff'd*, 639 F.2d 191 (4th Cir. 1981), incorrectly concludes that *Powell* overruled *Driver*.  To the contrary, the Supreme Court's holding in *Marks v. United States*, 430 U.S. 188, 193 (1977), limits the holding in *Powell* to its precise facts: in *Powell*, the petitioner was not homeless, and the record was inadequate for the Court to find that Powell was a chronic alcoholic or his drinking was involuntary.  *Powell*, 392 U.S. at 521-524.  In contrast, the Fourth Circuit found based on the record that Driver was indigent, a chronic alcoholic, and that medical evidence shows that chronic alcoholics drink involuntarily.  *Driver*, 356 F.2d at 763-64.

before the court had failed to state an Eighth Amendment claim *based on the available record*. *See Powell*, 392 U.S. at 534 (plurality); *id*. at 550-51 (White, J., concurring).  Ironically, the only legal principle that garnered the support of five justices (Justice White's concurring opinion and four justices in dissent) supports Plaintiffs' claim: the state cannot criminalize involuntary conduct that is symptomatic of a disease.[11]

The facts in *Powell* are distinguishable from both *Driver* and this case, and therefore, the Court's judgment did not overturn *Driver* and is not a binding precedent here.  For example, unlike in *Driver*, the petitioner in *Powell* was not homeless, and the record was insufficient for the court to find that the petitioner had the disease of alcoholism to the degree that caused a "loss of control" such that his drinking was involuntary.  *Powell*, 392 U.S. at 523-24.  But in *Driver*, the Fourth Circuit found based on the record that Driver was indigent, a chronic alcoholic, and that medical evidence showed that chronic alcoholics drink involuntarily.  *Driver*, 356 F.2d at 763-64.  *Powell* is also distinguishable from this case: Powell challenged a law prohibiting public intoxication, not alcohol possession or consumption.  Further, the petitioner in *Powell* was not subject to a court order in a prior civil proceeding that served as a predicate for his conviction.  Here, the Complaint pleads that chronic alcoholics suffer from a disease that causes an involuntary compulsion to drink (which this Court must accept as true on a motion to dismiss).  *See* Compl. ¶ 25.

Nevertheless, *Powell* remains instructive.  The Ninth Circuit Court of Appeals extensively analyzed the *Robinson* and *Powell* decisions for an Eighth Amendment claim

---

[11]  *See Powell*, 392 U.S. at 548-49 ("If it cannot be a crime to have an irresistible compulsion to use narcotics [under] *Robinson* . . . , I do not see how it can constitutionally be a crime to yield to such a compulsion. . . . Similarly, the chronic alcoholic with an irresistible urge to consume alcohol should not be punishable for drinking . . . .") (White, J., concurring only in result) (citations omitted); *id*. at 569 ("a person may not be punished if the condition essential to constitute the defined crime is part of the pattern of his disease and is occasioned by a compulsion symptomatic of the disease") (Fortas, Douglas, Brennan & Stewart, JJ., dissenting).

challenging a city ordinance that targeted the homeless by prohibiting the "act" of lying or sleeping in public. *See Jones v. City of Los Angeles*, 444 F.3d 1118, 1131-37 (9th Cir. 2006) *vacated on other grounds*, 505 F.3d 1006 (9th Cir. 2007). The *Jones* court concluded that the plurality opinion in *Powell*, which distinguished conduct or acts from status, was "limited to its precise facts" because the plurality and Justice White's concurring opinion only agreed on the result (Powell's Eighth Amendment claim was denied—but for different reasons). *Id*. at 1135 (citing *Marks*, 433 U.S. at 193).

The *Jones* court also observed that the only legal principle in *Powell* that enjoyed the support of five justices was that "the state cannot criminalize certain involuntary conduct" (Justice White's opinion concurring in result only and the dissent).[12] *Jones*, 444 F.3d at 1136. Thus, reading *Robinson* and *Powell* together, the Ninth Circuit held that it was cruel and unusual punishment to criminalize involuntary acts that are proximate to a status or condition. *Id.* This conclusion also holds true for Plaintiffs whose status as homeless, chronic alcoholics proximately causes them to compulsively and involuntarily possess or consume alcohol. *See* Compl. ¶¶ 25, 27, 108, 125, 170. And recently, the Ninth Circuit Court of Appeals rejected the government's argument that another "habitual drunkard" statute targeted specific conduct (*i.e.*, excessive drinking) but did not target the status of alcoholism. *Ledezma-Cosino v. Lynch*, — F.3d —, 2016 WL 1161260 at *3 (9th Cir. Mar. 24, 2016) ("a statute targeting people who habitually and excessively drink alcohol is, in effect, targeting individuals with chronic alcoholism").

---

[12] *See also* Kent Greenawalt, *Uncontrollable' Actions and the Eighth Amendment: Implication of Powell v. Texas*, 69 COLUM. L.REV. 927, 931 (1969) ("[T]he dissent comes closer to speaking for a majority of the Court than does the plurality opinion.").

(iii) **Defendants' cases carry no weight in a motion to dismiss because each held that the Interdiction Statute did not inflict cruel and unusual punishment only after finding that the trial record was inadequate to establish an Eighth Amendment violation.**

Third, Defendants argue that this Court should grant their Motion to Dismiss because "every single federal and state case to address this issue" has held that the Interdiction Statute does not violate the Eighth Amendment. Defs.' Mem. at 27 & n.103. But the cases to which Defendants cite are inapplicable for a motion to dismiss because those cases refused to invoke Eighth Amendment protections only after finding the trial record was inadequate to conclude that the aggrieved party was an alcoholic, or that chronic alcoholism led to involuntary drinking or intoxication.[13] The Complaint adequately pleads that Plaintiffs are chronic alcoholics and their drinking is involuntary, which this Court must accept as true on a motion to dismiss. *See* Compl. ¶¶1, 5, 22-25, 27, 108, 125, 170. And the cases on which Defendants rely acknowledge that an Eighth Amendment violation could exist if the record was supported by facts like those alleged in the Complaint.[14]

---

[13]    *See, e.g.*, *Powell*, 392 U.S. at 521, 535 ("[T]he record in this case is utterly inadequate . . . . We are unable to conclude, on the state of this record or on the of medical knowledge, that chronic alcoholics . . . suffer from an irresistible compulsion to drink . . . ."); *Fischer v. Coleman [Barrick]*, 486 F. Supp. at 316, *aff'd*, 639 F.2d 191 (4th Cir. 1981) ("The record in this case is devoid of any evidence that plaintiff's purchase of alcohol is compulsive and uncontrollable."); *Jackson v. Commonwealth*, 604 S.E.2d 122, 125 (Va. Ct. App. 2004) ("[The Plaintiff] argues that reliance on *Powell* and *Fisher* is misguided because those cases were founded on outdated medical knowledge about the 'disease' of alcoholism . . . . We do not have before us a record adequate to permit the determinations [the plaintiff] challenges us to make.")

[14]    *See, e.g.*, *Rakes v. Coleman*, 359 F. Supp. 370, 379 (E.D. Va. 1973) ("[T]he *Powell* decision stemmed in part from what the Supreme Court stated was its refusal to fashion a constitutional rule on the basis of what it found to be an inadequate record. It is argued that this impliedly leaves open to other litigants the pursuit of this claim upon [a] fallen record. While the Court agrees, it also concludes that the record here is similarly inadequate.").

**(iv)** **Defendants' analogy to narcotics possession is inapt because the Interdiction Statute establishes a new crime (alcohol possession), which is only applicable to those with a particular status. The anti-drug laws are applicable to everyone regardless of status.**

Finally, Defendants' comparison of the Interdiction Statute to laws prohibiting narcotics possession is inapposite. In general, the default policy under the anti-drug laws makes it illegal for *anyone* to possess banned narcotics.[15] Conversely, the Commonwealth's default alcohol policy permits any person over the age of 21 to *legally* possess or consume alcohol. *See generally*, Va. Code § 4.1-304(A).[16] And unlike the anti-drug laws, the Interdiction Statute both uses a civil interdiction proceeding (without a right to counsel or other criminal due process) to brand chronic alcoholics as "habitual drunkards" and makes the interdiction order in the civil proceeding an element of the crime of possession or consumption of alcohol. In other words, only after being interdicted are chronic alcoholics subject to the crime of possession or consumption of alcohol, which is legal conduct for any other person of age that has not been interdicted. *See* Compl. ¶ 4.

Furthermore, alcohol may be possessed or consumed—in public or private—by everyone of age without fear of incarceration except for those who have been interdicted. And homelessness causes Plaintiffs to live in public spaces, which are frequently cohabitated by other homeless persons who may *legally* possess alcohol. Thus, the risk of prosecution for constructive possession increases greatly for interdicted homeless persons because they find themselves in proximity to others (who are not interdicted) that possess or consume alcohol in public without fear of criminal prosecution. *See* Compl. ¶ 125. This contrasts with the narcotics

---

[15] *See, e.g.*, Va. Code § 18.2-250 ("[i]t is unlawful for *any person* knowingly or intentionally to possess a controlled substance") (emphasis added).

[16] The Virginia Alcoholic Beverage Control Act also prohibits "intoxicated persons" from possessing or consuming alcohol. *See* Va. Code § 4.1-304(A).

laws, where homeless drug users are incentivized to keep their narcotics hidden because they can be prosecuted for possessing narcotics whether or not they are drug addicts. Defendants have repeatedly prosecuted the named Plaintiffs for constructive possession of alcohol based on mere proximity to empty beer cans on the ground or alcohol containers found in nearby trash cans. Compl. ¶¶ 8, 52, 74, 78, 92. Thus, the Interdiction Statute, as applied to homeless alcoholics, is distinguishable from laws prohibiting the possession of narcotics.

   c.   **Defendants' jail-term proportionality analysis does not apply because the Supreme Court has held that it is cruel and unusual to jail a person as a criminal for having a disease, even for a single day.**

Defendants' argue that the Interdiction Statute does not offend the Eighth Amendment because the length of the jail term is (up to one year) not grossly disproportionate to the crime. Defs.' Mem. at 29-30. But Defendants misunderstand Plaintiffs' Eighth Amendment claim. It is not the length of any future jail sentence Plaintiffs might receive for possession or use of alcohol that would be cruel and unusual punishment. Rather, it is the fact that their future punishment is based on conduct that would not be criminal at all but for their status as homeless, chronic alcoholics. Thus, Defendants reliance upon *United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014) and other case law analyzing the Eighth Amendment's proportionality principle is irrelevant. The United States Supreme Court in *Robinson* made clear that even one day in prison would be unconstitutional cruel and unusual punishment for conduct that should not be criminal. *Robinson*, 370 U.S. at 667 ("Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold.").

   2.   **Due Process: The interdiction scheme impermissibly deprives Plaintiffs of the constitutionally mandated due process protections that all elements of a crime be proven beyond a reasonable doubt and the right to counsel.**

Interdicted individuals who possess or consume alcohol face up to one year in prison, Va. Code §§ 4.1-305, 4.1-322, and it is this imprisonment that unconstitutionally deprives Plaintiffs

and others similarly situated of liberty without due process of law. Under the Interdiction Statute, Plaintiffs and other homeless alcoholics have been, and remain at risk of being, imprisoned for the criminal offenses of possession or consumption of alcohol by an interdicted person.[17] The fact that they are interdicted persons is an element of this crime that the Commonwealth must prove, yet the facts upon which that interdiction is based are never tested beyond a reasonable doubt standard, nor do the Plaintiffs have the benefit of counsel when this element is proven.

Remaining free from imprisonment is plainly a liberty interest protected by the due process clause. *See Lassiter v. Dep't. of Soc. Servs.*, 452 U.S. 18, 25-26 (1981) (noting an indigent person's right to counsel in proceedings where her liberty is at stake, regardless of whether the proceedings are styled civil or criminal); *In re Gault*, 387 U.S. 1, 41 (1967) (recognizing the right to counsel when a child's liberty interest is imperiled in a juvenile delinquency proceeding). Contrary to Defendants' assertions, Plaintiffs do not challenge their civil interdiction nor allege that they possess a protected liberty interest in the possession of alcohol,[18] or in avoiding the label of habitual drunkard. Plaintiffs do, however, challenge their imprisonment based on a defective and inadequate process. Their prosecution under the criminal Interdiction Statute, based on facts proven in an uncounseled civil proceeding, unconstitutionally deprives them of their protected liberty interest.

---

[17] As noted previously, Plaintiffs seek relief only from future prosecutions under the Interdiction Statute and do not seek to invalidate or overturn the civil interdiction proceeding or prior criminal convictions. Compl. at 30.

[18] Plaintiffs do note, however, that the case Defendants cite for the proposition that there is no liberty interest in the possession of alcohol does not support Defendants' position. In *Collins v. Hall*, 991 F. Supp. 1065 (N.D. Ind. 1997), rather than finding that there was no liberty interest in the possession of alcohol, the court instead stated, "[a] liberty interest could be implicated in the context of the habitual drunkard statute if the governmental defamation results in the person named on the list suffering an independent tangible consequence, such as being refused the right to purchase alcohol." *Id*. at 1071. Instead, the reason the court determined that no deprivation of Ms. Collins' rights occurred was merely because the letter labeling her a habitual drunkard was only in effect for three days and she was never actually denied the ability to purchase alcohol. *Id.*

### a. Defendants can convict interdicted persons without having to prove all elements of a crime beyond a reasonable doubt.

The criminal process the Commonwealth provides for persons accused of violating the Interdiction Statute is fundamentally flawed because when it occurs a critical element of the crime has already been proven in a proceeding without the protection of a "beyond a reasonable doubt" standard. The Supreme Court has long recognized that "proof of a criminal charge beyond a reasonable doubt is constitutionally required." *In re Winship*, 397 U.S. 358, 362 (1970). In *Winship*, the Supreme Court ruled: "we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary to constitute the crime with which he is charged*." 397 U.S. at 364 (emphasis added). In recognizing the fundamental role of the reasonable doubt standard, the Court noted, "[A] person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned . . . on the strength of the same evidence as would suffice in a civil case." *Id.* at 363 (citations and internal quotations omitted). As the Court later noted in *Jackson v. Virginia*, 443 U.S. 307, 316 (1979), "[i]n short, *Winship* presupposes as an essential [part] of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."

The interdiction scheme at issue here impermissibly allows the Commonwealth to prove an element of its criminal case through a civil proceeding. The elements of the offenses at issue here are largely the same under the applicable parts of Va. Code §§ 4.1-304 and -305, and -322. Under sections 4.1-304 and -305, in relevant part, the Commonwealth must prove (1) the possession or consumption, or attempted possession or consumption, (2) of an alcoholic

beverage, (3) by an interdicted person. Under Va. Code § 4.1-322, the Commonwealth must

prove (1) the possession (2) of an alcoholic beverage (3) by a person interdicted pursuant to Va.

Code § 4.1-333. It is a Class 1 misdemeanor to violate either statute. Both statutes rely on the

Commonwealth proving a defendant's interdiction; however, convicting Plaintiffs under these

statutes would violate the rule set forth in *Winship* because the facts necessary to prove

interdiction have only been proven in a civil proceeding. *See* Compl. ¶¶ 19, 141, 144. Plaintiffs

should therefore be entitled to have the facts underlying their interdictions proven beyond a

reasonable doubt.

    **b. Due Process mandates that plaintiffs have the right to an attorney at all stages where a liberty interest is at stake, but the statutory scheme does not permit appointed counsel at the interdiction phase.**

In addition, indigent defendants are entitled to counsel in proceedings where they may

lose their liberty if they lose the litigation. *See Gideon v. Wainwright*, 372 U.S. 335, 345 (1963)

(noting in the context of a criminal trial, "[e]ven the intelligent and educated layman . . . .

requires the guiding hand of counsel in every step in the proceedings against him."). Under

*Lassiter*, an indigent litigant is presumed to have the right to appointed counsel when "if he

loses, he may be deprived of his physical liberty." 452 U.S. at 26-27. Plaintiffs are indeed

deprived of their physical liberty when they lose their criminal cases.[19] While the Plaintiffs are

appointed counsel at their criminal trials, by the time of criminal trial the Commonwealth has

already established one third of its case through the nominally-civil interdiction proceeding. The

---

[19] Although Defendants refer to *Matthews v. Eldridge*, 424 U.S. 319 (1976), in their briefing as supplying the standard for determining the process due, Defs.' Mem. at 33, the Supreme Court has recognized that it is inapplicable to a criminal proceeding. *See Medina v. California*, 505 U.S. 437, 443 (1965). Rather, in a criminal trial, the Court has recognized that certain constitutionally-guaranteed procedural protections must be supplied, including the right to proof of every fact necessary for conviction beyond a reasonable doubt, *In re Winship*, 397 U.S. at 364, and to counsel. U.S. Const. amend VI; *Gideon*, 372 U.S. at 345. *See generally* Nicki Kuckes, *Civil Due Process, Criminal Due Process*, 25:1 YALE L.J. 18-20 (2006) (describing the broad array of constitutionally guaranteed due process protections afforded by a criminal trial).

Commonwealth has chosen to bifurcate the determination that an individual is a habitual drunkard from the determination that he has possessed or consumed alcohol. But it is an artificial distinction to call the former proceeding civil and the latter criminal.

To be convicted for possession or consumption of alcohol under Va. Code § 4.1-322, an individual must have been found to be a "habitual drunkard," and potential interdictees do not have the benefit of counsel when that element of their criminal case is proven. Although the civil interdiction and criminal prosecution for possession or consumption of alcohol are nominally separate proceedings, as applied to homeless alcoholics, they function as a single pipeline to jail. In effect, Plaintiffs are only afforded counsel for two-thirds of their cases, and the provision of two-thirds of an attorney in a criminal case violates the rule of *Gideon v. Wainwright* and its progeny. [20]

### c. Defendants' arguments in favor of their flawed proceedings are inapplicable or incorrect.

As noted above, Defendants' arguments are wide of the mark, as they incorrectly treat the Complaint as challenging Plaintiffs' civil interdictions or past criminal convictions. *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140 (4th Cir. 2014), cited by Defendants, is

---

[20] Even in a civil proceeding where there is no immediate loss of physical liberty at stake, an indigent person is entitled to appointed counsel where the balance of (1) the nature of the private interests at stake, (2) the risk of an erroneous deprivation of that interest without additional procedural safeguards, and (3) government's interest in not providing the additional procedural safeguards weigh in favor of appointed counsel. *Lassiter*, 452 U.S. at 27 (citing *Matthews*, 424 U.S. at 335); *Turner v. Rogers*, 564 U.S. 431, 444-45 (2011). This Court does need not reach the *Matthews v. Eldridge* test because Plaintiffs' prosecutions are criminal proceedings. But even if this Court chooses to apply the test, the factors weigh strongly in favor of Plaintiffs' need for counsel. Securing freedom from bodily restraint "lies at the core of the liberty protected by the Due Process Clause," *Turner*, 564 U.S. at 445 (citations omitted), and by their interdictions Plaintiffs are placed directly in jeopardy of incarceration. Compl. ¶¶ 24-26, 43, 58, 67, 83, 94. The Supreme Court has recognized that the greater the state's role in prosecuting a case, even a nominally civil one, the greater the due process protections an individual should receive. *See, e.g., Turner*, 564 U.S. at 449 ("the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, *wherein the prosecution is presented by experienced and learned counsel*") (citation omitted). Finally, the state's interest in avoiding additional procedural safeguards is minimal, where Commonwealth's attorneys are already engaged in the civil prosecution of interdictions and the state is already paying public defenders to defend the criminal portions of interdiction cases.

inapposite. Defs.' Mem. at 34-35. *Snider* deals with a civil proceeding where persons whose cars were photographed by speed cameras could challenge the up-to-$40 penalty imposed. The class of plaintiffs in that case ran no risk of jail time, and thus were not entitled to the criminal due process protections required where a defendant's physical liberty is at risk. *Id.* at 149. Similarly, in *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008), a person whose guns were confiscated refused to follow the state procedure for getting them back and instead alleged a Due Process Clause violation, which the court rejected. In contrast, here there is no allegation that Plaintiffs failed to participate in their criminal trials or to take advantage of the process available to them; indeed, it is clear that since their interdictions the Plaintiffs have passed through numerous criminal prosecutions, Compl. ¶¶ 51, 65, 77, 91, and have, on at least one occasion, been denied a request for the appointment of counsel in a civil interdiction. Compl. ¶ 40.[21]

Likewise, *Ferguson v. Gathright*, 485 F.2d 504, 505 (4th Cir. 1973), is factually distinguishable from this case. In *Ferguson*, a man challenged his license revocation and subsequent prosecution for driving without a license. *Id.* The court rejected the plaintiff's argument that the license revocation was part and parcel of the prosecution for driving without a license. The Fourth Circuit observed that the plaintiff made a unilateral, voluntary decision to

---

[21] To the extent the Defendants argue that adequate post-deprivation remedies exist for the due process violation, such as "an opportunity to appeal, and an unlimited opportunity to petition for reconsideration of an order of interdiction," (Defs.' Mem. at 34), they misunderstand the applicable law. Plaintiffs were imprisoned by the application of a state law, rather than because of a "random and unauthorized failure" to follow state procedures, *see Fields v. Durham*, 909 F.2d 94, 96 (4th Cir. 1990), and thus they must receive an adequate pre-deprivation hearing. *Id.* at 97. In other words, where the deprivation of liberty is foreseeable by the state, the state must take measures before the deprivation to ensure that the individual receives the process he is due. *Id.* In addition, while the deprivation of liberty Plaintiffs challenge occurs at their criminal proceedings, rather than at the civil interdiction hearing, it is far from clear as a factual matter whether individuals interdicted as "habitual drunkards" have "an unlimited opportunity to petition for reconsideration." While the court entering an order of interdiction "may alter, amend or cancel such order *as it deems proper*," Va. Code § 4.1-333(B) (emphasis added), the statute provides no mechanism for the defendant to request review. The statute is similarly silent on how a court should determine whether a defendant is no longer a "habitual drunkard."

drive after his license was suspended, and the criminal prosecution was not an automatic result of license revocation but occurred "*only if* he subsequently determine[d] to take the law into his own hands and operate a motor vehicle on a public highway without a valid permit." *Id.* at 506 (emphasis in original). The voluntariness of the decision to drive after the license revocation featured prominently in the court's decision: the court cited with approval a D.C. Court of Appeals decision where the court referred to the defendant's "unilateral decision that he was entitled to operate a motor vehicle without a permit." *Id.* at 507 (citing *Franklin v. District of Columbia*, 248 A.2d 677, 679 (D.C. App. 1968)).

In contrast, here the Complaint clearly alleges that drinking alcohol is not a voluntary action for the Plaintiffs and others similarly situated.[22] Further, the Complaint alleges that the Plaintiffs have no choice but to be outdoors and in public when they drink. (Compl. ¶¶ 5, 123-24, 142, 155 and 170.) The plaintiff in *Ferguson* chose to drive freely, uncompelled by any pathology to engage in the prohibited behavior, and was not prohibited from using other transportation options such as walking or public transit. Here the Plaintiffs do not choose to defy the law, and have little or no choice but to submit to their involuntary compulsion to consume alcohol while in public. Thus Defendants' reliance on *Ferguson* is misplaced. In addition, *Ferguson* deals with a revocation of a privilege conferred by the state rather than criminalization of conduct (possession of alcohol) that is otherwise legal for anyone of age that is not interdicted, not to mention symptomatic of Plaintiffs' disease. Unlike the various licensing cases cited by the

---

[22]  *See, e.g.* Compl. ¶¶ 25-27 ("Plaintiffs suffer from alcohol addiction, which is a chronic disease of the brain. As a result, Plaintiffs pathologically pursue alcohol use. Like other diseases, addiction often involves cycles of relapse and remission. As addicts, Plaintiffs have a profound drive or craving to use alcohol, which is a compulsive or non-volitional aspect of addiction. . . . Plaintiffs' compulsion to consume alcohol over time is largely uncontrollable and inevitable.")

court in *Ferguson*, the criminal violation that occurs when an interdicted, homeless alcoholic drinks alcohol follows closely and foreseeably from his interdiction.

Defendants' contention that Plaintiffs' alleged prior criminal convictions provide sufficient due process is also unavailing. Defs.' Mem. at 33. Defendants first reference the Commonwealth's ability to prosecute individuals interdicted based on a DUI conviction, but as noted above, this lawsuit does not address the interdiction of individuals convicted of a DUI. Any process that may be supplied by a DUI proceeding has no bearing on this lawsuit. Second, there is no allegation before this Court that the Plaintiffs had any convictions prior to their interdictions, and at this stage of the proceedings, the allegations in the pleadings are presumed to be true. *Jenkins*, 395 U.S. at 421-422. Third, even if there were allegations of prior convictions before the Court, such proceedings could not supply due process in a subsequent proceeding. The Supreme Court has recognized that "the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense." *Oyler v. Boles*, 368 U.S. 448, 452 (1962) (citing *Chandler v. Fretag*, 348 U.S. 3, 8 (1954)). A defendant must receive reasonable notice and an opportunity to be heard on the recidivist charge, including the right to assistance of counsel. *Oyler*, 368 U.S. at 452. For these reasons, prosecuting Plaintiffs and others similarly situated for the possession and consumption of alcohol violates the requirements of procedural due process.

**3. Vagueness: The Interdiction Statute is, and Plaintiffs have standing to challenge the statute as, unconstitutionally vague because it does not give adequate notice that interdicted persons can be incarcerated for constructive possession of alcohol, and the statute encourages arbitrary and discriminatory enforcement.**

The Supreme Court has defined two prongs under the void-for-vagueness doctrine. First, under the vagueness doctrine the Constitution requires that "a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is

43

prohibited . . . ." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  Second, the criminal defense

must be defined "in a manner that does not encourage arbitrary and discriminatory enforcement."

*Id.*  The Supreme Court recognized that "the more important aspect of the vagueness doctrine 'is

not actual notice, but the other principal element of the doctrine—the requirement that a

legislature establish minimal guidelines to govern law enforcement.'"  *Id.* at 358 (citations

omitted).  The Court warned that "[w]here the legislature fails to provide such minimal

guidelines, a criminal statute may permit a standardless sweep that allows policemen,

prosecutors, and juries to pursue their personal predilections."  *Id.* (citations and internal

quotations omitted).

   The Interdiction Statute fails to satisfy either prong of the vagueness doctrine and is,

therefore, unconstitutional and void.  Defendants' attack on the void-for-vagueness claim of the

Complaint falls short because Defendants cannot, and do not, refute that the statute (1) fails to

give notice that it is illegal for interdicted persons to be near alcohol even if they do not have

actual possession, and (2) lacks sufficient guidance and therefore encourages arbitrary and

discriminatory enforcement.  In addition, Defendants' argument that the named Plaintiffs lack

standing to bring a vagueness claim is not based on applicable facts from the Complaint, which

cannot support a motion to dismiss.

   a.  **This Court's constitutional vagueness analyses does not turn on the definition of the term "habitual drunkard."**

First, Defendants' attack on the vagueness claim assumes that the Court's analysis stops

if it is satisfied that the term "habitual drunkard" is sufficiently clear.  But the Court must

analyze the Interdiction Statute as a whole, which fails to give adequate notice that Plaintiffs will

be prosecuted for being in proximity to alcohol.  Defendants defend the Interdiction Statute only

from attack under the first prong of the vagueness doctrine—that a penal statute must define a

criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. Defs.' Mem. at 38-39 (citing *Fisher*, 486 F. Supp. at 314). Defendants' arguments focus solely on the civil proceeding's application of the statutory term "habitual drunkard," a label that is adjudicated in a civil proceeding. But the void-for-vagueness doctrine applies to *penal* statutes, and therefore, the Court must analyze the Interdiction Statute in its entirety and not merely within the context of the civil interdiction hearing. *Kolender*, 461 U.S. 357 (explaining that "[a]s generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited . . . ."). Defendants' arguments fail to consider the Interdiction Statute's vagueness relative to the criminally prohibited conduct: possession or consumption (or attempted possession or consumption) of alcohol. The police and Defendants' repeated reliance on constructive possession for violations of the Interdiction Statute fails to give adequate notice to ordinary citizens of the prohibited conduct.

The Interdiction Statute is void on vagueness grounds even under the standard advocated by Defendants: the statute must be sufficiently clear for ordinary people to understand what is illegal. Defs.' Mem. at 38 (citing *Fisher*, 486 F. Supp. at 314). Under that standard, a person of ordinary intelligence would not be on notice that an interdicted person could be arrested for walking the aisles in a Walmart store where alcohol was sold despite not having alcohol on his person. *See* Compl. ¶ 52; *see also City of Chi. v. Morales*, 527 U.S. 41, 60 (1999) (reasoning that a Chicago anti-loitering statute did not give adequate notice of the prohibited conduct and reached "a substantial amount of innocent conduct"). A person of ordinary intelligence would not be on notice that an interdicted person could be arrested for being in a public bathroom in which the police found a beer can in the trash. Compl. ¶ 74; *see also Papachristou v. City of*

*Jacksonville*, 405 U.S. 156, 163 (1972) (concluding one of the reasons a Jacksonville vagrancy ordinance was unconstitutional was because it "[made] criminal activities which by modern standards [were] normally innocent"). Thus, Defendants' application of the Interdiction Statute to Plaintiffs is unconstitutional because it fails to give adequate notice of the prohibited conduct.

> **b. Defendants cannot, and do not, refute that the lack of legislative guidance encourages arbitrary and discriminatory enforcement of the Interdiction Statute to Plaintiffs—both at the civil hearing and for criminal prosecution of constructive possession.**

Second, Defendants' arguments fail to address whether the legislature has given the required minimal guidance to law enforcement for determining whether one has "shown himself to be a habitual drunkard" or, once interdicted, to be in possession of alcohol in violation of an interdiction order. *See Kolender*, 461 U.S. at 358; *see also Papachristou*, 405 U.S. at 165 ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who would be rightfully detained . . . .").

Defendants argue that the conduct targeted by the Interdiction Statute is limited to persons "who have a demonstrated history of public drunkenness." Defs.' Mem. at 37. But Defendants provide no basis for this assertion: Defendants make no textual arguments that the term "habitual drunkard" is limited to *public* drunkenness, and Defendants cite no legislative or other recognized guidance for what constitutes to "have shown himself to be a habitual drunkard." To the contrary, the dictionary definition of habitual drunkard makes no reference to public drunkenness. *See Black's Law Dictionary* at 607 & 827 (10th ed., Thomson Reuters 2014) (defining "habitual drunkard" as "someone who consumes intoxicating substances excessively; esp., one who is often intoxicated" or an "alcoholic"); *Fisher*, 486 F. Supp. at 315 ("Viewed together, the common meaning of the terms habitual drunkard clearly encompasses

one who, like the plaintiff, is admittedly in the continual habit of being intoxicated from alcohol.").

Defendants' argument exposes the vagueness of the statute, which by its terms encourages the police and prosecutors to pursue arbitrary and discriminatory enforcement. Defendants concede that they use the statute to target public drunkenness, Defs.' Mem. at 37, but there is no textual basis in the statute that directs prosecutors to interdict only those that are habitually drunk in public to the exclusion of persons that are habitually drunk in private. Therefore, Defendants' own, unsupported interpretation that the habitual drunkard definition is limited to instances of public drunkenness is the very kind of standardless criminal statute that the *Kolender* Court warned against because it permits prosecutors to pursue their own personal predilections, which is an arbitrary and discriminatory enforcement of the statute against Plaintiffs. *Kolender*, 461 U.S. at 358-60; *see also Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) ("A vague law impermissibly delegates basic policy matters . . . with the attendant dangers of arbitrary and discriminatory application."). Plaintiffs are homeless alcoholics, and therefore will necessarily be in public when they inevitably become intoxicated.[23] Compl. ¶¶ 5, 123-124, 142, 155, 170. Even adopting Defendants' position, the Interdiction Statute provides no guidance on the number of times a person must be found to be drunk in public before they may be interdicted as a habitual drunkard, and Defendants have complete discretion to determine whether the statutory "showing" of habitual drunkenness has been made. Compl. ¶¶ 101-102, 126, 157; *see Coates v. Cincinnati*, 402 U.S. 611, 613 (1971) (finding an

---

[23] *Compare Powell*, 392 U.S. at 549 (White, J. concurring only in the result) (observing that unlike *Powell*, homeless alcoholics could make a showing "that resisting drunkenness is impossible and that avoiding public places when intoxicated is also impossible.").

ordinance regulating "annoying" behavior to be vague because it did not articulate any standard to measure conduct).

Furthermore, Defendants do not address enforcement of the possession and consumption prongs of the Interdiction Statute to Plaintiffs, who, as homeless alcoholics, are especially vulnerable to arbitrary and discriminatory enforcement, especially so when prosecuted for constructive possession of alcohol. Compl. ¶¶ 8, 29, 78, 124. The Complaint pleads facts illustrating that Defendants have used the Interdiction Statute to discriminatorily target those homeless individuals that suffer from chronic alcoholism. Compl. ¶¶ 8, 155-157, 169-170. Once interdicted as habitual drunkards, the police have repeatedly arrested the named Plaintiffs for constructive possession for being in mere proximity to empty beer cans, alcohol containers left in trash cans, or being in a Walmart where alcohol is sold. Compl. ¶¶ 8, 52, 74, 78, 92. As applied to Plaintiffs, the Interdiction Statute is a modern equivalent of a vagrancy statute and is used to remove undesirable people from public places. *See, e.g.*, *Papachristou*, 405 U.S. at 167-68 (reasoning vagrancy laws create proceedings of "procedural laxity which permits 'conviction' for almost any kind of conduct" where jails ultimately serve as "an easy and convenient dumping-ground for problems that appear to have no other immediate solution"). And just as with the vagrancy laws the Supreme Court struck down, the Interdiction Statute is also unconstitutionally vague. *See id.* at 170.

    **c. Defendants' standing arguments are not based on applicable facts from the Complaint and therefore cannot support the Motion to Dismiss.**

Third, Defendants' argument—that the named Plaintiffs lack standing to challenge the Interdiction Statute on vagueness grounds—fails because it ignores the arbitrary and discriminatory enforcement of the criminal prohibition for constructive possession as applied to homeless alcoholics. Furthermore, Defendants' argument impermissibly relies on facts that have

not been established or are not in the Complaint (*e.g.*, Defendants' argument assumes that Plaintiffs had numerous convictions for public drunkenness *prior* to the civil interdiction hearing). Defs.' Mem. at 37. And those facts that Defendants do cite from the Complaint are irrelevant to this analysis because those convictions occurred *after* the named Plaintiffs were interdicted as habitual drunkards. Defs.' Mem. at 38.

Defendants argue that Plaintiffs' lack standing because the "alcoholic tendencies … coupled with their lengthy history of alcohol-related convictions" demonstrate that they clearly fall within the meaning of the term "habitual drunkard" and therefore do not have standing to challenge the statute on vagueness grounds. Defs.' Mem. at 38. Defendants also heavily rely on *Fisher v. Coleman*. Defs.' Mem. at 38-40. *See Fisher*, 486 F. Supp. at 314-16 (dismissing a void-for-vagueness claim on a motion for summary judgment for lack of standing because the Commonwealth's Attorney presented evidence of 59 prior convictions for public drunkenness at the civil interdiction hearing declaring Fisher a habitual drunkard). Defendants' standing argument does not address, and could be read to concede, that those Plaintiffs who have not been interdicted have standing to challenge the vagueness of the Interdiction Statute because those Plaintiffs have no lengthy history of alcohol-related convictions. Defs.' Mem. at 38-39. This argument also fails for the named Plaintiffs because Defendants rely on the named Plaintiffs' convictions under the Interdiction Statute (including for mere possession) that occurred *after* they were interdicted, which is irrelevant to the determination of whether they had shown themselves to be a "habitual drunkard" *before* they were interdicted. At best, any consideration of the reasoning in *Fisher* is inappropriate on a motion to dismiss in the absence of a record and should be deferred until a later stage of litigation.

**4. Equal Protection: The Interdiction Statute is subject to strict judicial scrutiny and violates the Equal Protection Clause because it discriminates against homeless alcoholics and infringes on a fundamental right—personal liberty.**

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Supreme Court has construed this as "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Interdiction Statute uses a "habitual drunkard" classification to unconstitutionally target Plaintiffs for criminal sanctions related to alcohol possession or consumption. Compl. ¶¶ 1, 169. In contrast, it is legal for persons similarly situated to Plaintiffs, but who are not classified as "habitual drunkards," to possess or consume alcohol. Compl. ¶¶ 4, 168. Under the Equal Protection Clause, a state law that discriminates against particular groups is subject to strict judicial scrutiny in either of two circumstances: (1) the law discriminates based on a suspect classification (*e.g.*, race, national origin), or (2) a state law classification infringes upon a constitutionally protected, fundamental right. *City of Cleburne*, 473 U.S. at 440. The Interdiction Statute uses the "habitual drunkard" classification to discriminate against Plaintiffs' and infringe on their fundamental rights—freedom of liberty or freedom from incarceration. Compl. ¶¶ 168-171. Therefore, the Interdiction Statute, as applied to Plaintiffs, is subject to strict judicial scrutiny. Under strict scrutiny, the government has the burden of showing that the law is narrowly tailored to promote a compelling state interest. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 16-17 (1973). Defendants have not met this heavy burden, and the Motion to Dismiss Plaintiffs' equal protection claim should be denied.

Defendants' motion ignores Plaintiffs' claim that the Interdiction Statute infringes upon a fundamental right. Defendants only argue that Plaintiffs are not a member of a suspect class, strict scrutiny therefore does not apply, and the Interdiction Statute survives a rational basis

review.  Defs.' Mem. 42-43.  Defendants' misplaced non-response is flawed.  The Interdiction

Statute is subject to strict judicial scrutiny because it does not apply equally to similarly situated

individuals *and* infringes upon personal liberty, one of Plaintiffs' fundamental rights.  And even

under a rational basis review, the challenged provisions of the Interdiction Statute violate the

Equal Protection Clause because criminalizing homeless alcoholics' actual or constructive

possession of alcohol, whether or not he or she is intoxicated, is not rationally related to a

legitimate state interest.

> **a.  The Interdiction Statute uses the "habitual drunkard" classification to target Plaintiffs who are therefore subject to unequal treatment under the law compared to similarly situated persons.**

The Interdiction Statute uses the "habitual drunkard" classification to target persons with

alcohol use disorder—chronic alcoholics.  Compl. ¶¶ 23-25.  Each member of the plaintiff class

falls within the classification, or is at significant risk of being interdicted and classified as a

"habitual drunkard."  Compl. ¶ 124.  Accordingly, Plaintiffs are not treated equally under the law

compared to two similarly situated groups of people: (1) persons that are not alcoholics, and (2)

persons that are not homeless (whether or not they are alcoholics).[24]  Compl. ¶¶ 5-8, 26.

Plaintiffs are similarly situated to the non-alcoholics but for the Interdiction Statute's

classification.  Persons that are not alcoholics are not targeted by the statute to be interdicted as

habitual drunkards or to be incarcerated for alcohol possession or consumption.  Compl. ¶¶ 124-

126.

Persons who are not homeless (whether or not they are alcoholics and are habitually

drunk) are similarly situated to Plaintiffs but are not targeted in the same way by the Interdiction

---

[24] "Similarly situated" means to be "similar in all aspects *relevant* to attaining the legitimate objectives of legislation." *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007) (emphasis added).

Statute because Defendants use the law to target persons classified as habitual drunkards that are in public view. Compl. ¶¶ 1, 7-8, 125; *see also Powell*, 392 U.S. at 527 ("a very large percentage of the alcoholics in this country are 'invisible'—*they possess the means to keep their drinking problems secret*") (emphasis added). Defendants concede that, in their view, the Interdiction Statute targets those with a "demonstrated history of *public* drunkenness." Defs.' Mem. at 37 (emphasis added). And any "individuals who are drunk *in public* . . . . may be declared a 'habitual drunkard' if they repeat the offense, as Plaintiffs have." Defs.' Mem. at 41-42 (emphasis added). On its face, however, the Interdiction Statute does not distinguish between public or private behavior for habitual drunkenness or alcohol possession.[25] *See* Compl. ¶¶ 15-17. Yet Plaintiffs are at substantially greater risk for being interdicted and subsequently arrested by the police for alcohol possession or consumption because Plaintiffs frequently have no choice but to remain in public places. Compl. ¶¶ 5, 7, 124, 155, 170. Defendants have repeatedly prosecuted interdicted, homeless alcoholics for possession of alcohol, including constructive possession, because Plaintiffs do not have private residences where they might otherwise succumb to these impulses. Compl. ¶¶ 8, 27, 29.

Defendants argue that Plaintiffs are not similarly situated to either category because the Interdiction Statute classifies persons on the basis of conduct, not status. Defs.' Mem. at 41. The Ninth Circuit Court of Appeals recently rejected this same argument analyzing another statute that used a "habitual drunkard" classification. *Ledezma-Cosino v. Lynch*, 2016 WL 1161260 at *3. The Ninth Circuit rejected the government's argument that the habitual drunkard classification did not target a status (alcoholism) but rather targeted conduct (habitual and

---

[25] *See also* Plaintiffs' discussion of vagueness, *supra* section B.3 ("the lack of legislative guidance encourages arbitrary and discriminatory enforcement of the Interdiction Statute to Plaintiffs" and "the dictionary definition of habitual drunkard makes no reference to public drunkenness").

excessive drinking). *Id.* (holding "a statute targeting people who habitually and excessively drink alcohol is, in effect, targeting individuals with chronic alcoholism"); *cf. Christian Legal Soc'y Chapter of the Univ. of Cal., Hasting Coll. of the Law v. Martinez*, 561 U.S. 661, 689 (2010) (declining to distinguish between status and conduct in cases in which the conduct was intertwined with the status).

>    **b. The Interdiction Statute is subject to strict judicial scrutiny and violates the Equal Protection Clause because the law discriminates against Plaintiffs *and* infringes on their fundamental right to be free from incarceration.**

It is legal for persons of age to possess or consume alcohol in the Commonwealth unless the person has been interdicted as a "habitual drunkard." Compl. ¶¶ 4, 168. For interdicted persons, it is a crime to possess or consume alcohol, and violators are subject to incarceration for up to one year. Compl. ¶¶ 3, 16-18, and 129. The "habitual drunkard" classification is the basis for infringing upon Plaintiffs' fundamental right: personal liberty (*i.e.*, to be free from incarceration). Remaining free from imprisonment is a fundamental right under the Fourteenth Amendment's Equal Protection Clause. *See People v. Olivas*, 551 P.2d 375, 380-385 (Cal. 1976) (holding that deprivation of personal liberty is a fundamental interest under a Fourteenth Amendment equal protection analysis) (citing *Breed v. Jones*, 421 U.S. 519, 530 (1975) (holding that "incarceration against one's will" is a "deprivation of liberty" and is subject to constitutional protections)); *see also Foucha v. Louisiana*, 504 U.S. 71, 86 (1992) (analyzing a state law under the Fourteenth Amendment's Equal Protection Clause and holding that "[f]reedom from physical restraint [is] a fundamental right, [and] the State must have a particularly convincing reason" to discriminate against similarly situated individuals).[26]

---

[26] The Supreme Court has recognized several other fundamental rights subject to strict scrutiny under the Equal Protection Clause. *See, e.g., Shapiro v. Thompson*, 394 U.S. 618, 630-31 (1969) (freedom of interstate travel); *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (freedom of marriage); *Dunn v. Blumstein*, 405 U.S. 330, 342-43

*(cont'd)*

Under the Equal Protection clause of the Fourteenth Amendment, "legislative judgments that interfere with fundamental constitutional rights" and discriminate between similarly situated individuals are reviewed under strict scrutiny. *San Antonio Indep. Sch. Dist.,* 411 U.S. at 16; *see also City of Cleburne*, 473 U.S. at 440 (strict judicial scrutiny "is due when state laws impinge on personal rights protected by the Constitution"). To survive a strict scrutiny review, the law must promote a compelling state interest. *Shapiro v. Thompson*, 394 U.S. 618, 638 (1969). In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. *Dunn v. Blumstein*, 405 U.S. 330, 343 (1972). Statutes affecting constitutional rights must be narrowly tailored to serve their legitimate objectives. *Id.* Even where a "governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 U.S. 479, 488 (1960).

Under a strict scrutiny review, state law is not entitled to a presumption of validity, "the State rather than the complainants must carry a heavy burden of justification, [] the State must demonstrate that its [statute] has been structured with precision, and is tailored narrowly to serve legitimate objectives and that it has selected the less drastic means for effectuating its objectives . . . ." *San Antonio Ind. Sch. Dist.*, 411 U.S. at 16-17 (citations and internal quotations omitted). Therefore, Defendants, not Plaintiffs, carry the "heavy burden" to establish that the unequal treatment of Plaintiffs under the Interdiction Statute serves a compelling state interest and the statute employs the least burdensome means to achieve that interest.

Defendants construe the purpose of the Interdiction Statute as imposing heightened

_____
*(cont'd from previous page)*
(1972) (voting rights); *Police Dep't. of City of Chi. v. Mosley*, 408 U.S. 92 (1972) (freedom of speech), and *Williams v. Rhodes*, 393 U.S. 23, 34 (1968) (freedom of association).

criminal sentences on persons with a "history of public drunkenness" or that are "recidivist drunkards" for the "governmental purpose of promoting public safety." Defs.' Mem. at 37 and 43. But Defendants concede by their silence that there is no governmental interest related to criminalizing mere possession or consumption of alcohol, whether or not the person is intoxicated. Defendants cite to a passage in *Powell* to bolster their argument that Interdiction Statute's prohibitions are reasonably related to promoting public safety. Defs.' Mem. at 43-44 (citing *Powell*, 392 U.S. at 539 (Black, J., concurring with the plurality)). Yet, the statute at issue in *Powell* only addressed public *intoxication*; it did not consider criminalizing a chronic alcoholic's mere possession or consumption of alcohol where he or she was not intoxicated.[27] Therefore, there is no rationale relationship between public safety concerns related to public intoxication and mere alcohol possession. The Interdiction Statute already imposes heightened criminal sanctions for interdicted persons that are drunk in public, which Plaintiffs do not challenge. Compl. ¶ 11.

Furthermore, Defendants have not established that the Interdiction Statute promotes public safety by targeting Plaintiffs' possession of alcohol, even where they are not found to be "intoxicated, disruptive or disorderly." Compl. ¶ 28. Plaintiffs have been incarcerated for constructive possession, and one named plaintiff was arrested for smelling like alcohol despite not having consumed alcohol since the previous evening. Compl. ¶¶ 8, 28-29, 52. The Interdiction Statute does not promote a compelling state interest but is a means to unconstitutionally target homeless alcoholics for compulsive and involuntary acts that are

---

[27] The paragraph in *Powell* that precedes the one citied by Defendants shows that Justice Black was concerned only with intoxication, not possession or consumption: "Jailing of chronic alcoholics . . . remove[s] [them] from the streets, where in their intoxicated state they may be in physical danger, and . . . at least regain their ability to keep from being run over by automobiles in the street." *Powell*, 392 U.S. at 538-39 (Black, J. concurring with plurality).

symptoms of their disease.

Finally, the Interdiction Statute, as challenged by Plaintiffs, does not survive a strict scrutiny analysis because it is not narrowly tailored to limit the infringement of Plaintiffs' liberty interests.  Even if this Court entertained the notion that the Commonwealth had a compelling state interest in prohibiting homeless alcoholics who are not disruptive, disorderly or intoxicated from possessing alcohol in public spaces, the Interdiction Statute is still unconstitutional because the statute could achieve the same result without criminalizing the conduct and incarcerating Plaintiffs.  For example, a more narrowly tailored law could allow for civil forfeiture of alcohol found to be in the possession of interdicted, homeless alcoholics without the penalty of incarceration. Or, as the Interdiction Statute already prohibits, Defendants could pursue sanctions solely against any person that sells alcohol to an interdicted person rather than incarcerating Plaintiffs.  Va. Code § 4.1-304(A); Compl. ¶ 11.

Simply put, Defendants have the burden of showing that criminalizing alcohol possession or consumption under Interdiction Statute, as applied to Plaintiffs, is intended to promote a *compelling* state interest *and* is narrowly tailored to achieve that result.  Defendants have not cleared this constitutionally mandated hurdle, and their Motion to Dismiss the Complaint's equal protection claim must be denied.

### c. Even under a rational basis review, the Interdiction Statute violates the Equal Protection Clause of the Fourteenth Amendment.

The Interdiction Statute's criminalization of homeless alcoholics' actual or constructive possession of alcohol, including where they are not intoxicated, is not reasonably related to a legitimate government interest.  Defendants' reliance on the plurality opinion in *Powell*, 392 U.S. at 527-38, is inapposite.  Defs.' Mem. at 43.  Contrary to Defendants' analysis, the *Powell* decision did not engage in a rational basis review of the statute at issue under the Equal

56

Protection Clause of the Fourteenth Amendment.  *See* Defs.' Mem. at 43.[28]  *Powell* analyzed a

claim under the Eighth Amendment in which a person (who was not homeless) challenged a law

prohibiting public intoxication.  *See supra* Section B.1.b.  Conversely, Plaintiffs have only

challenged the Interdiction Statute's criminalization of homeless alcoholics' possession or

consumption and have not challenged the statute's prong criminalizing public drunkenness.

Compl. ¶¶ 9, 11.

All of the reasons Defendants advance to justify a reasonable relationship to a legitimate

government interest, including reliance on dicta in the *Powell* plurality opinion, assume a law

that prohibits and punishes public drunkenness.  Yet Defendants concede by their silence that

they have no basis to support a rational or reasonable relationship between the public safety

interest in prohibiting public drunkenness and criminalizing actual or constructive possession of

alcohol where the plaintiff is not disruptive, disorderly or intoxicated.

In *Ledezma-Cosino*, the Ninth Circuit held that a federal statute that imposed "disparate

treatment of individuals with alcoholism" (who were classified as "habitual drunkards") was not

"rationally related to a legitimate state interest."  2016 WL 1161260 at *4.  The Ninth Circuit

observed that alcoholism is has long been recognized as a medical condition.  *Id*. (citing *Griffis*

*v. Weinberger*, 509 F.2d 837, 838 (9th Cir. 1975) ("The proposition that chronic acute

alcoholism is itself a disease, 'a medically determinable physical or mental impairment,' is

hardly debatable today.")).  And like any other medical condition, alcoholism should not be

---

[28] Defendants incorrectly assert that the *Powell* plurality "declined to strike down, under rational basis review, 'the criminal process as a means of dealing with the public aspects of problem drinking.'" Defs.' Mem. at 43 (citing *Powell*, 392 U.S. at 530).  The *Powell* court did not analyze whether the statute at issue was "rationally related to a legitimate governmental purpose" under the Equal Protection Clause of the Fourteenth Amendment.  A plurality of the Court merely observed in dicta that in 1968 the alternative to the criminal process was indefinite "[t]herapeutic civil commitment," and therefore, "[f]aced with this unpleasant reality, we are unable to assert that the use of the criminal process as a means of dealing with the public aspects of problem drinking can never be defended as rational."  *Id.*

punished or held morally offensive. *Ledezma-Cosino*, 2016 WL 1161260 at \*4 (citing *Powell*, 392 U.S. at 549–51 (White, J., concurring) (describing chronic alcoholism as a "disease" and stating that "the chronic alcoholic with an irresistible urge to consume alcohol should not be punishable for drinking or for being drunk")). "Although people with alcoholism continue to face stigma, private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." *Ledezma-Cosino*, 2016 WL 1161260 at \*4 (citing *City of Cleburne*, 473 U.S. at 448) (citations and internal quotations omitted).

Defendants have not provided a rational basis to incarcerate homeless alcoholics for actual or constructive possession of alcohol for one reason: there is none. Plaintiffs have stated a claim for a violation of the Equal Protection Clause, and the challenged provisions of the Interdiction Statute are subject to a strict judicial scrutiny and should be struck down as unconstitutional. The Interdiction Statute also fails to survive a rational basis review to the extent it criminalizes homeless alcoholics' actual constructive possession of alcohol. Thus, Defendants' Motion to Dismiss the Complaint's equal protection claim should be denied.

## C. Under the Supreme Court of Virginia's jurisprudence, the Virginia Constitution's provisions providing due process and prohibiting cruel and unusual punishment are self-executing, and therefore, Defendants cannot claim sovereign immunity.

### a. The Virginia Constitution's due process and cruel and unusual punishment provisions are self-executing and support Plaintiffs' state law claims.

Defendants assert that the provisions of the Virginia state constitution on which Plaintiffs' claims rely are not self-executing and, therefore, fail to state claims under Virginia law. Defendants incorrectly claim that the Virginia constitutional provisions underpinning Plaintiffs' claims are mere principles lacking rules by which they could be given the force of law. In fact, both Plaintiffs' cruel and unusual punishment claim (V.A. Const. art. I, § 9) and the procedural due process claim (V.A. Const. art. I, § 11) are constitutional provisions

contained in Virginia's Bill of Rights, they are both prohibitory or negative in character, and neither requires additional legislation to make them operative. Thus, they meet the test established by the Virginia Supreme Court for self-executing constitutional provisions. *Robb v. Shockoe Slip Found.,* 324 S.E.2d 674, 676 (Va. 1985).

In *Robb*, the Supreme Court stated that while a constitutional provision is self-executing when it "expressly so declares," other constitutional provisions are self-executing too even absent express declarations:

> Even without benefit of such a declaration, constitutional provisions in bills of rights . . . are usually considered self-executing. The same is true of provisions which specifically prohibit particular conduct. "Provisions of a Constitution of a negative character are generally, if not universally, construed as self-executing."

*Id.* at 676 (quoting *Robertson v. City of Staunton*, 51 S.E. 178, 179 (Va. 1905).

Defendants can point to no Virginia Supreme Court decision holding that a constitutional provision within its Bill of Rights was not self-executing. Instead, since *Robb*, the Virginia Supreme Court has consistently declared as self-executing a number of constitutional provisions contained within the Bill of Rights that used negative language and that did not require additional legislation to carry their clear mandate. *Digiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365 (Va. 2011) (Article I, § 14 self-executing); *Gray v. Va. Sec'y. of Transp.*, 662 S.E.2d 66 (Va. 2008) (Article I, § 5 self-executing). As the Court in *Digiacinto* stated:

> Article I, § 14 is within the Bill of Rights of the Constitution of Virginia. Further, the second portion of Article I, § 14 is stated in the negative, prohibiting any government "separate from, or independent of, the government of Virginia." This prohibition does not require further legislation to make it operative. Therefore, under the test articulated in Gray, we hold that Article I, § 14 is self-executing . . . .

*Digiacinto*, 704 S.E.2d at 371. *Robb*, *Digiacinto*, and *Gray* leave no doubt that the cruel and unusual punishment and due process of law constitutional provisions relied upon by Plaintiffs in this case are self-executing because they are contained within the Virginia Bill of Rights, they are phrased in the negative and use mandatory language, and neither requires additional legislation to implement, and this Court should reject Defendants' arguments to the contrary.[29]

Defendants' remaining arguments can be disposed of easily. Their assertion that Virginia's cruel and unusual punishment provision uses "ought not" and thus does not "carry the same prohibitive or compulsory weight" as the phrase "shall not" is wrong. Defs.' Mem. at 48. In *Digiacinto*, the Supreme Court found Article I, § 14 to be self-executing even though Article I, § 14 uses the identical "ought" language.[30] Moreover, the caption for Article I, § 9, titled: "Prohibition of . . . cruel and unusual punishment," makes clear that this is a compulsory prohibition on cruel and unusual punishment. And, of course, Defendants refrain from even attempting a similar parry at the due process provision because Article I, § 11 relies upon the exact mandatory language Defendants claim is required: "That no person *shall* be deprived of his life, liberty, or property without due process of law . . . ." (emphasis added).

---

[29]  Plaintiffs recognize that this Court and other courts within the Western District have found that Virginia's constitutional provision against general warrants contained within Article I, § 10 (search and seizure) is not self-executing, and that the Court noted two Virginia trial court opinions rejecting plaintiffs' claims for deprivation of liberty under Article I, § 11. *Botkin v. Fisher*, 2009 WL 790144, at *6 (W.D. Va. Mar. 25, 2009). However, Plaintiffs respectfully suggest that neither this Court nor the Virginia circuit courts had the benefit of the Virginia Supreme Court's detailed analysis in *Digiacinto* nor the clear pattern of Supreme Court decisions since *Robb* to inform its ruling. *Robb*, *Gray*, and *Digiacinto* have refined and clarified the test of self-executing constitutional provisions, and they make clear that provisions, like those at issue here, that are contained within the Bill of Rights, use negative or prohibitory language, and do not require additional legislation to implement are self-executing.

[30]  Article I, Section 14 states: "That the people have a right to uniform government; and, therefore, that no government separate from, or independent of, the government of Virginia, *ought* to be erected or established within the limits thereof." (emphasis added).

Finally, as discussed above in Section B.1.c., Defendants' proportionality argument is a strawman. Plaintiffs do not assert that incarceration for alcohol possession or consumption is cruel and unusual punishment because the length of the sentence is too severe. Plaintiffs' contend that it is cruel and unusual punishment in the first instance to criminalize the involuntary and compulsive urges to use alcohol, symptoms of Plaintiffs' disease, irrespective of the length of the sentence. Therefore, Defendants' argument that cruel and unusual punishment challenges are limited by a proportionality test to cases involving life without parole and death sentences is irrelevant. *See* Defs.' Mem. at 49-50 & n.195 (citing *Cole v. Commonwealth*, 712 S.E.2d 759 (Va. Ct. App. 2011)). Plaintiffs challenge the constitutionality of making it a crime at all, not the severity of the punishment. The United States Supreme Court in *Robinson* made clear that even one day in prison would be cruel and unusual punishment for conduct that *is not criminal*. *Robinson*, 370 U.S. at 667. The same holds true for Virginia's state constitutional provision.

### b. Sovereign Immunity and the Eleventh Amendment do not shield Defendants from Plaintiffs' claims under the Virginia Constitution.

Defendants argue that Sovereign Immunity protects them from Plaintiffs' Virginia constitutional claims; however, it is well-established that sovereign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia. *Digiacinto*, 704 S.E.2d at 371 (citing *Gray*, 662 S.E.2d at 71-73; *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 317 & n.15, (1997)). Because Article I, § 9 (cruel and unusual punishment) and Article I, § 11 (due process) of the Virginia Constitution are self-executing, as discussed above, a plea of sovereign immunity does not bar a claim by Plaintiffs for declaratory and injunctive relief.

# CONCLUSION

The central issue presented in this case is so basic and fundamental that its importance was recognized nearly two millennia ago by Roman jurists: *Libertas omnibus rebus favorabilior est* or "Liberty is more favored than all things." *Black's Law Dictionary* at 1928. Plaintiffs ask this Court to protect Plaintiffs' fundamental liberty interest to be free from imprisonment for their "crime" of having a disease (chronic alcoholism) and being homeless.

Absent the relief requested in the Complaint from this Court, Plaintiffs will continue to be arrested and jailed for nothing more than succumbing to an involuntary compulsion, which is symptomatic of their disease. The substantial deprivation of fundamental constitutional rights Plaintiffs' continually face should not be underestimated. Even though the crime of mere alcohol possession was not at issue before the Court, the *Powell* plurality's assessment of the plight of homeless alcoholics is as apt today as it was in 1968: "The picture of the penniless drunk propelled aimlessly and endlessly through the law's 'revolving door' of arrest, incarceration, release and re-arrest is not a pretty one." 392 U.S. at 530. And Plaintiffs' harm is more acute than that addressed by the *Powell* Court. Here, Defendants prosecute homeless, chronic alcoholics for mere possession or consumption, including constructive possession, of alcohol even where they are not drunk or disorderly. The statutory scheme criminalizing Plaintiffs' status offends basic constitutional principles of due process, equal protection, and the prohibition of cruel and unusual punishment. Therefore, Plaintiffs respectfully request that this Court DENY Defendants' Motion to Dismiss.

Respectfully submitted,


CARY HENDRICK, BRYAN MANNING,
RYAN WILLIAMS, RICHARD
DECKERHOFF and RICHARD EUGENE
WALLS, individually, and on behalf of all
others similarly situated, Plaintiffs.



By:     /s/ Theodore M. Kneller
        Theodore M. Kneller, *pro hac vice*
        SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM LLP
        1440 New York Ave., NW
        Washington, DC 20005
        Phone: (202) 371-7264
        ted.kneller@skadden.com


        /s/ Mary Frances Charlton
        Mary Frances Charlton, VSB #85387
        LEGAL AID JUSTICE CENTER
        1000 Preston Ave. Ste. A
        Charlottesville, VA 22903
        Phone: (434) 529-1839
        maryc@justice4all.org

        *Attorneys for Plaintiffs.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 20th day of May 2016, I electronically filed the foregoing

Memorandum in Opposition to Defendants' Motion to Dismiss with the Clerk of the Court using

the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Margaret Hoehl O'Shea                      Nancy Hull Davidson
Assistant Attorney General                 Assistant Attorney General
Criminal Justice & Public Safety Division  Criminal Justice & Public Safety Division
Office of the Attorney General             Office of the Attorney General
900 East Main Street                       900 East Main Street
Richmond, Virginia 23219                   Richmond, Virginia 23219
(804) 225-2206                             (804) 692-0551
(804) 786-4239 (Fax)                       (804) 786-4239 (Fax)
Email: moshea@oag.state.va.us

And I hereby certify that I have mailed the document by United States Postal Service to

the following non-filing user: N/A

By:     /s/ Theodore M. Kneller
        Theodore M. Kneller, *pro hac vice*
        *Attorney for Plaintiffs*
        SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM LLP
        1440 New York Ave., NW
        Washington, DC 20005
        Phone: (202) 371-7264
        ted.kneller@skadden.com