**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**


CARY HENDRICK, *et al.*,

      Plaintiffs,

v.                           CASE NO.  7:16-CV-0095

DONALD CALDWELL, *et al.*,

      Defendants.



**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Linda L. Bryant (VSB #35010)
Deputy Attorney General

Margaret Hoehl O'Shea (VSB #66611)
Assistant Attorney General

Nancy Hull Davidson (VSB #85536)
Assistant Attorney General


OFFICE OF THE ATTORNEY GENERAL
Criminal Justice & Public Safety Division
900 East Main Street
Richmond, Virginia 23219
(804) 225-2206 - Telephone
(804) 786-4239 - Facsimile
moshea@oag.state.va.us

*Counsel for Defendants*

June 3, 2016

# INTRODUCTION

In an attempted end-run around the Virginia judiciary, Plaintiffs ask this Court to insert itself into the state criminal justice system and affirmatively declare that Plaintiffs have, in essence, a constitutionally-protected right to consume and possess alcohol. Any such order would, of necessity, also invalidate the state court orders of interdiction, which expressly forbid that very same conduct.

Plaintiffs cannot evade the procedural bars raised in Defendants' motion to dismiss simply by couching their requested relief in prospective terms. Moreover, their substantive allegations fail to establish a plausible violation of the federal constitution. Finally, because the *Ex Parte Young* exception to Eleventh Amendment immunity does not encompass claims for injunctive relief that are predicated on alleged violations of state law, this Court lacks jurisdiction to adjudicate any pendent claims based on the Virginia constitution.[1]

## I. Because Plaintiffs seek to avoid the mandate of a presumptively valid and un-appealed state court judgment, their suit is barred under the *Rooker-Feldman* doctrine.

Plaintiffs contend that, because they seek only to preclude their future prosecutions, they are not attacking their existing orders of interdiction, and, therefore, the *Rooker-Feldman* doctrine does not apply. The prospective nature of the relief sought, however, does not alter the underlying character of the suit itself. Plaintiffs have alleged that they are each subject to a court order of interdiction that forbids them from possessing or consuming alcohol.[2] Because these

---

[1] Cognizant of the length of the briefings already before the Court, Defendants are selectively rebutting certain arguments raised in the Plaintiffs' response. By omitting any previously-argued issues, Defendants do not intend to abandon their position on those matters.

[2] Compl. ¶¶ 41, 50, 64, 76, 90. Defendants are also submitting, as Exhibits 1 through 3 to this reply, copies of the interdiction orders for Defendants Manning, Hendrick, and Williams. Although Defendants recognize that courts typically do not look outside the four corners of the complaint when resolving a motion to dismiss, courts are allowed to consider and take judicial

interdiction orders specifically prohibit Plaintiffs from purchasing, possessing, or consuming alcohol, the relief requested in this case would void that judicial mandate. Holding that plaintiffs need not comply with their orders of interdiction would, *ipso facto*, amount to a declaration that the existing prohibitory order is no longer in full force and effect.

As the Fourth Circuit has emphasized, if, "'in order to grant the federal plaintiff the relief sought, the federal court . . . **must take action that would render the [state court] judgment ineffectual**,' *Rooker-Feldman* is implicated."[3] Thus, "[t]he key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state court loser who files suit in federal court seeks redress for an injury caused by the state court decision itself.'"[4]

Excusing Plaintiffs from complying with a presumptively valid state court order is an action "that would render the judgment ineffectual." Plaintiffs' request to enjoin future prosecutions stemming from their orders of interdiction "seeks redress for an injury caused by the state court decision itself." But for the interdiction orders, Plaintiffs could not be prosecuted for the possession or consumption of alcohol under the interdiction statutes. It follows that the

---

notice of public records, as well as any other documents that are "integral to and explicitly relied on in the complaint." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). The circuit court orders are both public records of which the Court may take judicial notice, and documents that the plaintiffs relied upon in framing their complaint. Accordingly, they may be considered at the motion to dismiss phase without converting the proceeding into a motion for summary judgment.

[3] *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (quoting *Ernst v. City of Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)) (alteration in original) (emphasis added).

[4] *Willner v. Frey*, 243 F. App'x 744, 747 (4th Cir. 2007) (quoting *Davani v. VDOT*, 434 F.3d 712, 718 (4th Cir. 2005)); *see also Dulaurence v. Telegen*, 94 F. Supp. 3d 73, 80 (D. Mass. 2015) ("The *Rooker-Feldman* doctrine is properly applied where, regardless of how the claim is phased, the only real injury to Plaintiffs is ultimately still caused by a state-court judgment." (internal quotations omitted)).

state court rulings, themselves, are the source of Plaintiffs' alleged injury. And because it is the existing state court orders that are the source of the alleged injury,[5] the *Rooker-Feldman* doctrine precludes Plaintiffs from using this forum to constructively invalidate those orders.

The continuing validity of the state court orders of interdiction distinguishes this case from the circumstances presented in *Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005), a case relied upon by Plaintiffs. In *Washington*, the plaintiff—Earl Washington—had been erroneously convicted of rape and murder. He subsequently obtained a full and absolute pardon. After his criminal conviction had been erased, he filed suit, alleging that his constitutional rights were violated by various state actors during his criminal trial. *Washington* is inapposite for the singular reason that the plaintiff's pardon "remove[d] any bar to this proceeding that the *Rooker-Feldman* doctrine would otherwise impose."[6] That is, because any federal court judgment would not "undo" or "nullify" the state court conviction—which had already been invalidated—that case fell outside the boundaries of the *Rooker-Feldman* doctrine.

The decision in *Skinner v. Switzer*, 562 U.S. 521 (2011), also does not remove this case from the confines of *Rooker-Feldman*. In *Skinner*, the plaintiff attempted to obtain post-conviction DNA testing. After those efforts failed, he brought a facial, due process challenge to the applicable state statute in federal court. The Supreme Court reasoned that the *Rooker-Feldman* doctrine did not apply under those circumstances because the plaintiff did not seek to invalidate his conviction—he sought, rather, to invalidate the state's post-conviction DNA-testing statute.[7]

---

[5] For this reason, the present case is distinguishable from the circumstances presented in *Davani v. VDOT*, 434 F.3d 712 (4th Cir. 2006).

[6] *Washington v. Wilmore*, 407 F.3d 274, 280 n.6 (4th Cir. 2005).

[7] *Skinner v. Switzer*, 562 U.S. 521, 525 (2011).

Post-*Skinner*, several federal courts have held that, although the *Rooker-Feldman* doctrine does not necessarily bar a litigant from bringing a general, facial constitutional challenge to a state statute, *Skinner* does not apply where the allegation is that the statute is unconstitutional as applied to the litigant. For example, in *Durham v. Haslam*, 528 F. App'x 559 (6th Cir. 2013), the Sixth Circuit held that the plaintiff was barred under *Rooker-Feldman* from bringing suit under 42 U.S.C. § 1983, reasoning that "[w]here the plaintiff alleges that a state court interpreted and applied a state statute to her case in an unconstitutional manner, her complaint is an as-applied challenge and is prohibited under the *Rooker-Feldman* doctrine."[8] The Sixth Circuit distinguished *Skinner*, reasoning that the statute challenged in *Skinner* "had no substantive bearing on his criminal conviction, and finding the statute unconstitutional therefore would have no effect on any judgment of the courts in which he was convicted and his conviction was affirmed."[9]

Similarly, in *Alvarez v. Attorney General*, 679 F.3d (11th Cir. 2012), the Eleventh Circuit also distinguished *Skinner*, concluding that the plaintiff's as-applied challenge to the state statute was barred under *Rooker-Feldman*. The Eleventh Circuit reasoned that, because the pending challenge sought to "'effectively nullify' the state court's judgment," and was not a "broad challenge to the constitutionality" of the state statutory scheme, the case did not fall within the rationale of *Skinner*.[10]

---

[8] *Durham v. Haslam*, 528 F. App'x 559, 564 (6th Cir. 2013).

[9] *Id.* at 565.

[10] *Alvarez v. Attorney General*, 679 F.3d 1257, 1263-64 (11th Cir. 2012); *accord Benchoff v. Fogel*, 576 F. App'x 117 (3d Cir. 2014). In *Souter v. Warren Cnty.*, No. 5:13cv00061, 2014 U.S. Dist. LEXIS 41451 (W.D. Va. Mar. 26, 2014), a case cited by Plaintiffs, this Court implicitly recognized this distinction. Specifically, in *Souter*, the Court concluded that the plaintiff's challenge to "a series of adverse zoning enforcement decisions" was barred under *Rooker-Feldman*, but the plaintiff's facial challenge to the ordinance "as written" was not barred. *Id.* at *3-4. The court subsequently noted that, to the extent the plaintiff was challenging her lack of

Here, Plaintiffs have not brought a broad facial challenge to the constitutionality of Virginia's statutory interdiction scheme. Rather, they seek an as-applied ruling that would effectively vacate, at least in part, their existing court orders of interdiction.[11] And as the Eastern District recently observed, a federal constitutional claim is barred under *Rooker-Feldman* if "granting [the plaintiff] relief for the alleged violation would necessarily countermand the ruling of the state court."[12]

For these reasons, the *Rooker-Feldman* doctrine prohibits Plaintiffs from evading the state court appellate system through this challenge to Virginia's interdiction statutes: "A person who loses in state court may not dodge the rule requiring him to work his way through state appellate courts and then to the Supreme Court of the United States by seeking review of the state court decision in a lower federal court."[13] Because Plaintiffs' suit falls within both the scope and purpose of the *Rooker-Feldman* doctrine, this Court should dismiss their claims for lack of subject matter jurisdiction.

## II. Virginia's interdiction statutes do not punish mere status, and "involuntary" conduct is not constitutionally-exempt from criminal prosecution.

Plaintiffs contend that the interdiction statutes violate the Eighth Amendment because they expose homeless individuals to the risk of being prosecuted simply for "being in proximity to alcohol." Plaintiffs conclude that any resulting conviction is unconstitutional because the

---

court-appointed counsel at a related civil contempt proceeding, this argument was barred under *Rooker-Feldman*. *Souter v. Warren Cnty.*, No. 5:13cv00061, 2014 U.S. Dist. LEXIS 71674, at *3-4 n.2 (W.D. Va. May 27, 2014).

[11] *See, e.g.*, Compl. ¶ 10 ("As applied, the Interdiction Statute violates Plaintiffs' right to due process, equal protection and the right to be free from cruel and unusual punishment under the United States and Virginia Constitutions.").

[12] *Moore v. Va. Dep't of Soc. Servs.*, No. 3:15cv515, 2016 U.S. Dist. LEXIS 23522, at *12 (E.D. Va. Feb. 25, 2016).

[13] *Id.* at *7.

conviction would be predicated solely on the "status" of the accused, without requiring proof that

he engaged in any "act." Fundamental principles of criminal law defeat this line of reasoning.

Axiomatically, an individual is not subject to criminal prosecution unless he commits the

requisite *actus reus*—a prohibited act.[14] When an individual is determined to be in the

constructive possession of a prohibited substance, proof of an "act"—the exercise of control and

dominion over the item—is still required.[15] Virginia law is clear that "mere proximity to the

contraband is insufficient to establish [constructive] possession,"[16] although it is a factor that

may be considered in determining whether the accused "was aware of both the presence and

character of the substance and that it was subject to his dominion and control."[17] The fact that

constructive possession can be established through circumstantial rather than direct evidence

does not mean that it does not require proof that the accused committed a prohibited "act."[18]

---

[14] *See, e.g.*, *Thompson v. Commonwealth*, No. 2131-12-2, 2013 Va. App. LEXIS 350, at *4 (Ct. App. Nov. 26, 2013) ("[I]t is a basic tenet of criminal law that the *mens rea*, or intent, and the *actus reus*, or criminal act, must concur.").

[15] *See, e.g.*, BLACK'S LAW DICTIONARY 1183 (7th ed. 1999) (defining "constructive possession" as "[c]ontrol or dominion over a property without actual possession or custody of it").

[16] *Kelly v. Commonwealth*, 41 Va. App. 250, 261, 584 S.E.2d 444, 449 (2003) (*en banc*).

[17] *Haskins v. Commonwealth*, 44 Va. App. 1, 6, 602 S.E.2d 402, 404 (2004).

[18] Virginia criminal law on the subject of constructive possession is well-established. Generally, constructive possession of a prohibited substance can be shown by "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the accused was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Haskins*, 44 Va. App. at 6, 602 S.E.2d at 404. And "in drug cases no less than any other, it 'is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.'" *Id.* (quoting *Etherton v. Doe*, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004)). Also, although, standing alone, "mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered" in determining whether the accused constructively possessed drugs. *Kelly*, 41 Va. App. at 261, 584 S.E.2d at 449. Likewise, a factfinder may also take into account the open visibility of the substance, as well as the defendant's occupancy of the premises. *See, e.g.*, *Eckhart v. Commonwealth*, 222 Va. 447, 451, 281 S.E.2d 853, 855 (1981) (finding the "trial court could reasonably conclude that she was aware of the contents of the room" based on her "occupancy of the premises as a cotenant" and

Similarly, any prosecution predicated on attempted possession or consumption also requires proof of an affirmative act. If an individual is charged with having attempted to possess a prohibited substance, any prosecution for that attempt requires proof that the accused took an actual step towards commission of the completed crime.[19] For this reason, prosecutions that rely on attempted possession or consumption of a prohibited substance affirmatively require, as a matter of Virginia law, proof of an "act."

Plaintiffs argue, however, that they are at heightened risk of prosecution for the constructive possession of alcohol because "they find themselves in proximity to others (who are not interdicted) that possess or consume alcohol in public without fear of criminal prosecution." This is a misleading statement, as Virginia law expressly prohibits *anyone*—interdicted or not—from consuming alcohol in public.[20] Regardless, as discussed above, any prosecution for constructive possession would require proof of more than mere proximity—rather, the prosecution would need to establish that the plaintiff was aware of the presence of the alcoholic beverage and that it was subject to his dominion and control.[21]

---

where she was "sitting outside the open door to a room" where drugs and paraphernalia "were visible").

[19] *See, e.g.*, *Hix v. Commonwealth*, 270 Va. 335, 347, 619 S.E.2d 80, 87 (2005) ("[A]n attempt to commit a crime is composed of two elements: (1) the intent to commit it; and (2) a direct, ineffectual act done toward its commission." (internal quotations omitted)); *see also Collins v. Radford*, 134 Va. 518, 533, 113 S.E. 735, 740 (1922) (discussing elements of attempted possession of alcohol, in violation of the Prohibition Act, and affirming conviction where the accused went to a haystack in search of whiskey, reached into the haystack, and admitted that he "came to the haystack for the whiskey").

[20] *See* Va. Code § 4.1-308(A) ("If any person takes a drink of alcoholic beverages or offers a drink thereof to another, whether accepted or not, at or in any public place, he shall be guilty of a class 4 misdemeanor.").

[21] Plaintiffs' allegations that they have been prosecuted for mere proximity to alcohol underscore the need to pursue their alleged claims through the criminal appellate system. Convictions predicated on insufficient evidence can and should be pursued on appeal.

A statute directly authorizing imprisonment for the mere fact of homelessness or addiction would punish status. But that is not what Virginia's interdiction statutes do, nor is it how they are written. The statutes punish possession, consumption, attempted possession, and attempted consumption of alcohol by individuals who have been court-ordered to avoid that particular behavior. Each of these bases for prosecution require the interdicted individual to have done some additional act—drinking alcohol, trying to drink alcohol, possessing alcohol, or attempting to possess alcohol. For this reason, the interdiction statute prohibits and punishes specific acts—not mere status. Indeed, the Virginia Court of Appeals—a state appellate court construing this very statute—has expressly held that the interdiction statute "imposes no criminal sanction for the status of being an alcoholic," but rather, "forbids specific behavior: possession of alcohol and public drunkenness by interdicted persons."[22] This construction of the interdiction statute is entitled to deference by the federal courts.[23]

Plaintiffs further contend, however, that this Court is bound by *Driver v. Hinnant*, 356 F.2d 761 (4th Cir. 1966), a habeas proceeding in which the Fourth Circuit reversed a chronic alcoholic's conviction for public drunkenness on the grounds that the alcoholic's conduct was involuntary. As this Court has since recognized, however, the *Powell* court "specifically rejected

_____

[22] *Jackson v. Commonwealth*, 44 Va. App. 218, 222-23, 604 S.E.2d 122, 125 (Ct. App. 2004); *accord Fisher v. Barrick*, 639 F.2d 191, 192 (4th Cir. 1981) (affirming district court decision that "the provisions of Va. Code § 4-62(2), making it a crime for one interdicted as a habitual drunkard to purchase or possess alcoholic beverages do not threaten cruel and unusual punishment"); *Commonwealth v. Reyes*, No. CM06000177, 72 Va. Cir. 105, 106 (Alexandria Cir. Ct. Sept. 19, 2006) (denying motion to dismiss charge for being drunk in public after having been interdicted, reasoning that "the Defendant is being prosecuted and facing punishment, 'not for being a chronic alcoholic, but for being drunk in public on a particular occasion,' and, therefore, he is not facing criminal sanction for his mere status"); *see also Rakes v. Coleman*, 359 F. Supp. 370, 379-80 (E.D. Va. 1973) (relying on *Powell* to dismiss plaintiff class action alleging that continued enforcement of the public drunkenness statute against chronic alcoholics violated the Eighth Amendment).

[23] *See Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam) ("As a general rule, this Court defers to a state court's interpretation of a state statute.").

. . . the notion that since the status of alcoholism could not be criminally punished under *Robinson*, conduct symptomatic of alcoholism (e.g., public drunkenness) was constitutionally protected as well."[24]  For this reason, *Powell* "overruled and made inapplicable the holding[] in the case[] of *Driver v. Hinnant* . . . ."[25]

Plaintiffs' primary argument on this point—that the "majority" of the justices in the *Powell* plurality opinion concluded that uncontrollable drinking is an involuntary act which, under the Eighth Amendment, could not be criminalized—has not found acceptance in the federal courts, save one Ninth Circuit opinion (cited by Plaintiffs) that was later vacated and then rejected in its own jurisdiction.[26]  Rather, as one court has observed, a criminal defendant's claim that he is exempt from prosecution because of involuntary behavior "is better couched in terms of a defense to criminal conviction than as a constitutional argument."[27]  An inquiry into the involuntariness of a defendant's behavior "has never been constitutionally mandated and, rather, has been historically left to the criminal law itself."[28]  Indeed, holding that the Eighth Amendment forbids any prosecution for "involuntary" acts "would set precedent for an onslaught of challenges to criminal convictions by those who seek to rely on the involuntariness of their actions.  It would potentially provide constitutional recourse to anyone convicted on the

---

[24] *Fisher v. Coleman*, 486 F. Supp. 311, 316 (W.D. Va. 1979).

[25] *Id.*

[26] *See Lehr v. City of San Francisco*, 624 F. Supp. 2d 1218 (E.D. Cal. 2009) (effectively dismantling the rationale of *Jones v. City of Los Angeles*, 444  F.3d 1118 (9th Cir. 2006), and declining to adopt the reasoning advanced in that case).

[27] *Id.* at 1233 n.6.

[28] *Id.*

basis of conduct derivative of a condition he is allegedly 'powerless to change.'"[29] Such a

holding "would be dangerous bordering on irresponsible." [30]

For these reasons, Plaintiffs cannot predicate an Eighth Amendment challenge on the fact

that they might be prosecuted for "involuntary" conduct. Rather, to fall within the scope of

*Robinson*, they must allege sufficient facts to show that they are being punished for their "status"

alone. This, they cannot do. Accordingly, Plaintiffs' Eighth Amendment claim should be

dismissed for failure to state a plausible claim to relief.

**III.     The interdiction statute does not violate Plaintiffs' right to procedural due process.**

Plaintiffs contend that, because the interdiction orders are entered in a civil context, any

resulting criminal conviction for violating those orders "impermissibly allows the

Commonwealth to prove an element of its criminal case through a civil proceeding." Because

proof that the criminal defendant is a "habitual drunkard" is not an element of the crime charged

under the interdiction statute, however, the Commonwealth does not "prove an element of its

criminal case through a civil proceeding."

To sustain a conviction for violating the interdiction statute, the prosecution must

establish: (1) that the defendant has been interdicted, and (2) that the defendant consumed,

purchased, possessed, attempted to consume, attempted to purchase, or attempted to possess, any

alcoholic beverage.[31] Contrary to Plaintiffs' implication, then, the Commonwealth need not

---

[29] *Id.* at 1234.

[30] *Id.*

[31] Va. Code §§ 4.1-305(A) & 4.1-333. In this respect, a prosecution for possession or use of alcohol by an interdicted individual is analogous to a conviction for driving after having been adjudicated a habitual offender under Virginia Code 46.2-357. That offense, for example, does not require proof that the accused is, in fact, someone who frequently drives in violation of the Commonwealth's traffic laws—rather, it requires proof that the accused had been declared a habitual offender, and then drove a motor vehicle on a public highway. *See generally Reed v. Commonwealth*, 15 Va. App. 467, 424 S.E.2d 718 (Ct. App. 1992).

prove that the criminal defendant habitually consumes alcohol in order to establish the elements of the misdemeanor offense—rather, the Commonwealth must show that the criminal defendant has been interdicted by a court, and has then engaged in the prohibited conduct. Nothing in the interdiction statute lessens the burden of proof in the criminal proceeding itself.

Moreover, to the extent that Plaintiffs might be contending that the "reasonable doubt" standard should be applied in the civil interdiction proceeding, the Supreme Court has declined to extend this standard of proof beyond a criminal prosecution, even in the context of the civil commitment of a mentally-ill individual. Specifically, the Court has noted that the reasonable doubt standard "historically has been reserved for criminal cases . . . as a critical part of the moral force of the criminal law, and we should hesitate to apply it too broadly or casually in noncriminal cases."[32] Because an individual who is a party to an interdiction proceeding is not directly subject to a fine or imprisonment, that proceeding is civil, rather than criminal, in nature, and the reasonable doubt standard simply inapplicable.

The procedures established by the Virginia interdiction statutes satisfy the basic requirements of procedural due process. Because the initial interdiction proceeding is civil in nature, the interdicted individual does not have a constitutional right to counsel, nor is the movant required to prove his case beyond a reasonable doubt.[33] And, in any subsequent criminal proceeding, the criminal defendant is afforded the full panoply of Constitutional and due process rights, including a right to counsel, a right to notice and an opportunity to be head, a right to present evidence on his own behalf, and a right to cross-examine any adverse witnesses.

---

[32] *Addington v. Texas*, 441 U.S. 418, 428 (1979).

[33] *See, e.g.*, *Ferguson v. Gathright*, 485 F.2d 504, 506 (4th Cir. 1973).

For these reasons, Plaintiffs have failed to allege a plausible violation of their right to procedural due process.[34]

## IV. The interdiction statute sufficiently defines the prohibited conduct.

Plaintiffs contend that the interdiction statute is void-for-vagueness because it "fails to give adequate notice that Plaintiffs will be prosecuted for being in proximity to alcohol." As discussed above, any argument that mere proximity is, in and of itself, sufficient to sustain a conviction under the interdiction statute misconstrues both the language of the statute and fundamental tenets of Virginia criminal law. Moreover, the interdiction statute specifically states that "possession" or "attempted possession" of alcohol by an interdicted person is forbidden.[35] The word "possession" can hardly be termed vague, and the concept of "possession" has been interpreted to also encompass constructive possession for well over a century.[36]

Accordingly, the interdiction statute sufficiently defines the conduct that is criminally prohibited, and it is not void-for-vagueness.

---

[34] Interestingly, Plaintiffs repeatedly maintain that they are not seeking to invalidate the initial civil interdiction orders themselves. And yet, the majority of their due process claim seems devoted to attacking the procedures through which those orders were entered.

[35] Va. Code §§ 4.1-305 & -322.

[36] *See, e.g.*, WILLIAM BLACKSTONE, 4 COMMENTARIES, at 490 (referencing the concept of constructive possession); *see also Gamble v. Commonwealth*, 161 Va. 1024, 1027, 170 S.E. 561, 562 (1933) (discussing constructive possession in the context of possessing intoxicating spirits, in violation of the Prohibition Act, and reversing conviction where it was predicated solely on the accused's presence in the room where the whiskey was later found); *Burner v. Commonwealth*, 140 Va. 508, 510, 125 S.E. 324, 324 (1924) (affirming conviction for violation of the Prohibition Act where the accused "was found, intoxicated, lying on the floor of the stable, with a Mason two-quart glass jar, containing about one pint of whiskey, fifteen inches from his feet"); *Quivers v. Commonwealth*, 135 Va. 671, 676, 115 S.E. 564, 565 (1923) (affirming conviction for possession of intoxicating liquor where a bottle of liquor was found in a sack between the two occupants of a vehicle, reasoning that the bottle "was found in what clearly appeared to be an exclusive joint possession of both occupants, and neither of them offered any disclaimer or explanation").

**V.     The interdiction statute does not encourage arbitrary and discriminatory enforcement.**

Plaintiffs argue that, by focusing on the fact that the interdiction statute is intended, *inter alia*, to deter individuals who have a demonstrated history of public drunkenness, Defendants have somehow conceded the vagueness of the statute.  Defendants' arguments are tailored to the Plaintiffs' allegations, which focus on their own conduct:  drinking in public after having been interdicted.  Defendants in no way concede that the only application of the statute is in the context of combating public drunkenness.

Regardless, the interdiction statute does not vest law enforcement officers with unbridled discretion in terms of its application.  Plaintiffs argue that "Defendants have complete discretion to determine whether the statutory 'showing' of habitual drunkenness has been made."  Under the statute, this discretion is not vested in Defendants—a court determines whether sufficient evidence has been presented to label an individual a habitual drunkard, and only upon notice and an opportunity to be heard.  Moreover, as Defendants previously argued, the phrase "habitual drunkard" is well-defined,[37] and not the standard-less type of phrase that would allow a court to interdict an individual for "almost any kind of conduct."

The interdiction statute does not provide law enforcement officers with the ability to arrest almost anyone, anywhere, at any time—its criminal provisions, instead, extend only to (1) individuals who have been interdicted, and (2) who have engaged in a prohibited act.  In this respect, it is markedly different than the vagrancy statutes that have been invalidated on vagueness grounds.  The interdiction statute, therefore, supplies the required "minimal guidelines to govern law enforcement."[38]  As the Fourth Circuit as noted, "the vagueness doctrine cannot

---

[37] *See Fisher v. Coleman*, 486 F. Supp. 311, 315 (W.D. Va. 1979).

[38] *Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998).

'convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific enough to provide fair warning that certain kinds of conduct are prohibited.'"[39]

For these reasons, the interdiction statute relies upon terms that are sufficiently precise, and it does not vest law enforcement with the unbridled power to enforce its provisions against almost any person at almost any time. Accordingly, it is not void-for-vagueness.

## VI. By their own allegations, Plaintiffs fall within the scope of the interdiction statutes, and, therefore, they cannot challenge it as void-for-vagueness.

Plaintiffs argue that they possess standing to challenge the interdiction statute as void-for-vagueness, reasoning that there are no allegations that they had multiple convictions for public drunkenness prior to their civil interdiction hearing. Plaintiffs misunderstand the arguments Defendants have presented.

"One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."[40] "The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative manner, but rather in the sense that no standard of conduct is specified at all.'"[41]

As pertinent here, the conduct targeted by the Virginia interdiction statute is possession or consumption of alcoholic beverages by individuals who have been ordered not to engage in that specific activity. Plaintiffs—by their own allegations—"have been unable to maintain sobriety," and have a compulsion "to consume alcohol over time" that "is largely uncontrollable

---

[39] *Id.* (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).

[40] *Parker v. Levy*, 417 U.S. 733, 756 (1974).

[41] *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.7 (1982) (quoting *Smith v. Goguen*, 415 U.S. 566, 578 (1974) (internal quotations omitted)).

and inevitable."[42]  Moreover, Plaintiff Manning "has been arrested and prosecuted over thirty times under the Interdiction Statute,"[43]  Plaintiff Williams "has been arrested and prosecuted at least twenty-five times under the interdiction statute,"[44]  Plaintiff Deckerhoff "has been arrested and prosecuted at least eleven times under the Interdiction Statute,"[45]  and Plaintiff Walls "has been arrested and prosecuted at least twelve times under the Interdiction Statute."[46]

From these factual allegations, it is clear that Plaintiffs' continued use of alcohol, after having been interdicted, falls within the plain language and scope of the interdiction statute. Accordingly, they lack standing to challenge the statute on vagueness grounds.

V.     **The interdiction statute is not subject to strict scrutiny, and it does not violate the Equal Protection clause.**

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."[47]  "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."[48]

"Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors."[49]  The thrust of the inquiry is whether the plaintiff can "identify persons materially identical to him or her who ha[ve] received different

---

[42] Compl. ¶¶ 23, 27.

[43] Compl. ¶ 51.

[44] Compl. ¶ 65.

[45] Compl. ¶ 77.

[46] Compl. ¶ 91.

[47] *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

[48] *Id.*; *see also Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818-19 (4th Cir. 1995).

[49] *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

treatment."[50]  To pass the similarly-situated threshold, "the 'evidence must show a high degree of similarity'"[51]—that is, "'apples should be compared to apples.'"[52]

Plaintiffs cannot cross this threshold.  First, they argue that they are similarly-situated to "persons that are not alcoholics."  This is not an apple-to-apple comparison.  Indeed, the entire thrust of Plaintiffs' complaint is that they *should* be treated differently *because* they are alcoholics—that their alcoholic tendencies make them different than non-alcoholics.  Second, Plaintiffs argue that they are similarly-situated to "persons that are not homeless."  This, too, is not an apple-to-apple comparison.  Individuals who are not homeless are not in a situation that is "materially identical" to that of the Plaintiffs.

To sustain an equal protection claim, Plaintiffs would need to allege facts from which it could plausibly be inferred that Plaintiffs are treated differently than a group of individuals identically-situated to Plaintiffs in all material respects—a group of individuals who engages in precisely the same behavior as Plaintiffs, but yet may categorically avoid prosecution under the interdiction statute.  Neither non-alcoholics nor non-homeless individuals satisfy this test. Accordingly, Plaintiffs have failed to state a viable equal protection claim.

The lack of a similarly-situated class aside, Plaintiffs erroneously argue that the interdiction statute should be subject to strict scrutiny because it "infringes upon a constitutionally protected, fundamental right."  Specifically, Plaintiffs argue that, because the statute subjects them to incarceration, their protected liberty interests are implicated, thereby requiring the statute's "classifications" to survive strict scrutiny.

---

[50] *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016) (Agee, J., concurring).

[51] *Id.* (quoting *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

[52] *Id.* (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001).

Taken to its logical conclusion, Plaintiffs' argument would mean that every penal statute that allows a group of individuals to be criminally prosecuted would automatically be subjected to strict scrutiny. Yet, this is not the law. "[N]o fundamental right or interest is involved simply because a criminal statute carries the possibility of incarceration, fine or forfeiture."[53] As then-Circuit Judge Scalia once explained, "the focus, for purposes of determining whether a 'fundamental interest' is involved, is not upon the punishment or other imposition to which the complaining party has been subjected, but rather upon the *activity* of the complaining party which has been made the *reason* for the punishment or imposition."[54] Rational-basis review is not thereby supplanted by the strict-scrutiny test even "when the consequence of violating the [challenged] regulation is a deprivation of physical freedom through a jail term . . . ."[55]

Because the ability to consume and possess-alcohol is not a fundamental right or interest (and, indeed, was once constitutionally-prohibited), it follows that the interdiction statute is subject to rational-basis review. This standard is particularly appropriate in light of the fact that the states are vested with broad control to regulate the use and consumption of alcoholic beverages.[56]

As Defendants have argued, the interdiction statute, which is a valid exercise of the police powers of the state, easily survives rational-basis review. Plaintiffs contend, however, that there is "no basis to support a rational or reasonable relationship between the public safety

---

[53] *United States v. Talebnejad*, 342 F. Supp. 2d 346, 352 (D. Md. 2004), r*ev'd in part on other grounds*, 460 F.3d 563 (4th Cir. 2006).

[54] *United States v. Cohen*, 733 F.2d 128, 133 (D.C. Cir. 1984) (emphases in original).

[55] *Id.*

[56] *See, e.g.*, *C'est Bon, Inc. v. N.C. Bd. of Alcohol Control*, 331 F. Supp. 82, 84 (W.D.N.C. 1971) ("Since the repeal of the Eighteenth Amendment in 1933 the control of the consumption and use of alcoholic beverages in this country has been committed to the states."); *see also Brooks v. Vassar*, 462 F.3d 341 (4th Cir. 2006) ("[A] State's regulation of the . . . use of alcoholic beverages in the State is protected by the Twenty-First Amendment . . . .").

interest in prohibiting public drunkenness and criminalizing actual or constructive possession of alcohol where the plaintiff is not disruptive, disorderly or intoxicated." Yet, "it cannot be denied that the destructive use of alcoholic beverages is one of our principal social and public health problems."[57] Protecting the health and safety of all its citizens—including those who are inclined to self-destructively drink to excess—is a legitimate government purpose. Incarcerating individuals who violate a court order is another. Each of these purposes is rationally related to Virginia's statutory interdiction scheme.

Because Plaintiffs have not alleged that they are treated unequally to a group of individuals who engage in identical, yet unprosecuted, behavior, they have not stated an equal protection claim. Moreover, even if some disparate treatment were inferred, the interdiction statute survives rational-basis review. Accordingly, Plaintiffs' equal protection challenge fails to state a plausible claim to relief.

## VII. Defendants are entitled to Eleventh Amendment immunity on the state constitutional claims.

Aside from the question of whether the cited provisions of the Virginia constitution are self-executing, Defendants are entitled to Eleventh Amendment immunity on these state-law claims. Plaintiffs neglect to grasp the distinction between a state actor asserting sovereign immunity in a state-court proceeding, and the constitutionally-guaranteed immunity of state actors, sued in their official capacities, in the federal court system.

The "ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court."[58] Defendants are state actors being sued, in their official capacities, in federal court. Accordingly, the pendent state-law claims against them

---

[57] *Powell*, 392 U.S. at 526-27.

[58] *Bd. of Trustees of Univ. Ala. v. Garrett*, 31 U.S. 356, 363 (2001).

cannot proceed unless Plaintiffs can demonstrate: (1) an explicit waiver of the Commonwealth's Eleventh Amendment immunity, which would allow those claims to be heard in federal court, or (2) that this case falls within an exception to the Eleventh Amendment.

Here, the Commonwealth of Virginia has not consented to being sued in federal court for alleged violations of the Virginia constitution. Although the Commonwealth has consented, under certain circumstances, to suit in state court, the United States Supreme Court has unequivocally held that "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."[59] Because the sovereign has not expressly and unequivocally consented to suit in federal court, Defendants are entitled to Eleventh Amendment immunity on the supplemental state-law claims.[60]

Moreover, this case does not fall within any recognized exception to Eleventh Amendment immunity. Specifically, *Ex Parte Young*[61] establishes a limited exception "allow[ing] private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the [federal]

---

[59] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 n.9 (1984).

[60] *See County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985) ("The Eleventh Amendment forecloses . . . the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State."); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment[.]"); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) (holding that the Eleventh Amendment applies to bar suit against a sovereign even where the asserted basis for that jurisdiction is "ancillary and supplemental"); *In re Sec'y of the Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1144-45 (4th Cir. 1993) (holding that the district court lacked jurisdiction to consider a claim against a state official, noting that, even if the claim "might otherwise have fallen within the court's ancillary or pendent jurisdiction, the Eleventh Amendment deprived the district court of jurisdiction to entertain that claim, because it was in effect a claim against the state itself").

[61] *Ex Parte Young*, 209 U.S. 123 (1908).

Constitution or a federal statute."[62] "A State officer acting in violation of federal law [] loses the cloak of State immunity, because in such a situation, the state has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States."[63]

However, "the *Ex Parte Young* exception does not apply to actions against State officials seeking to compel their compliance with *State* law."[64] As the Supreme Court has explained,

> This need to reconcile competing interests is wholly absent, however, when a plaintiff alleges that a state official has violated *state* law. In such a case the entire basis for the doctrine of *Young* and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.[65]

Because the Commonwealth of Virginia has not consented to being sued, in federal court, for alleged violations of the Virginia constitution, and because the *Ex Parte Young* exception does not apply in the context of alleged violations of state law, Defendants are entitled to Eleventh Amendment immunity on each of the asserted state constitutional claims.[66] Accordingly, Claims 2, 4, and 6 should be dismissed for lack of jurisdiction.

---

[62] *Antrican v. Odom*, 290 F.3d 178 (4th Cir. 2002).

[63] *Id.* at 184 (quotations omitted) (alteration in original).

[64] *Id.* at 187 (emphasis in original).

[65] *Pennhurst State Sch. & Hosp.*, 465 U.S at 106.

[66] *See In re Sec'y of the Dep't of Crime Control*, 7 F.3d at 1144-45; *cf. McConnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir. 1978) ("The Virginia Torts Claims Act while generally waiving sovereign immunity for tort claims filed in state courts, does not waive the state's Eleventh Amendment immunity.").

## CONCLUSION

Plaintiffs have set forth what could be described as a persuasive argument that the government should not incarcerate homeless alcoholics. But what they have presented is, at its heart, a policy argument—and this is not a policy-making forum. It is a court of law, and it is legal standards that govern whether this case must rise or fall. And by every legal standard that could conceivably be applied, their suit utterly fails.

Because Plaintiffs' suit is procedurally-barred, and because, substantively, they have failed to state a plausible claim to relief, Defendants respectfully request that this Court GRANT their motion to dismiss.

Respectfully submitted,

DONALD CALDWELL and MICHAEL HERRING, Defendants.

By:     s/ Margaret Hoehl O'Shea
        Margaret Hoehl O'Shea, VSB #66611
        Assistant Attorney General
        Criminal Justice & Public Safety Division
        Office of the Attorney General
        202 North 9th Street
        Richmond, Virginia 23219
        (804) 225-2206
        (804) 786-4239 (Fax)
        Email: moshea@oag.state.va.us

        s/ Nancy Hull Davidon
        Nancy Hull Davidson, VSB #85536
        Assistant Attorney General
        Criminal Justice & Public Safety Division
        Office of the Attorney General
        202 North 9th Street
        Richmond, Virginia 23219
        (804) 692-0551
        (804) 786-4239 (Fax)

        *Counsel for Defendants.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June, 2016, I electronically filed the foregoing

Response to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Mary Frances Charlton
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
maryc@justice4all.org

Mary Bauer
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
mary@justice4all.org

Erin Trodden
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
erin@justice4all.org

Amy Walters
Legal Aid Justice Center
1000 Preston Ave., Ste. A
Charlottesville, Virginia  22903
(434) 529-1839
amyw@justice4all.org

Mark D. Young
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7680
mark.d.young@skadden.com

Donald P. Salzman
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7983
donald.salzman@skadden.com

Theodore M. Kneller
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7264
ted.kneller@skadden.com

Maureen A. Donley
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7570
maureen.donley@skadden.com

And I hereby certify that I have mailed the document by United States Postal Service to the

following non-filing user:  N/A

By:     s/  Margaret Hoehl O'Shea
        Margaret Hoehl O'Shea, AAG, VSB #66611
        *Attorney for Defendants*
        Criminal Justice & Public Safety Division
        Office of the Attorney General
        202 North 9th Street
        Richmond, Virginia 23219
        (804) 225-2206
        (804) 786-4239 (Fax)
        Email:  moshea@oag.state.va.us