**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1660**

SUTASINEE THANA; MICHAEL JAMES LOHMAN; THAI SEAFOOD & GRILL, INC., trading as Thai Palace & Thai Palace & Lounge,

    Plaintiffs - Appellants,

  v.

BOARD OF LICENSE COMMISSIONERS FOR CHARLES COUNTY, MARYLAND; PAMELA SMITH, Chair; GUY BLACK, Member; TOMASINA COATES, Member; STEVEN LOWE, Member; WILLIAM YOUNG, Member,

    Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge. (8:14-cv-03481-PWG)

Argued: May 11, 2016          Decided: June 28, 2016

Before TRAXLER, Chief Judge, and NIEMEYER and KEENAN, Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judge Keenan joined.

**ARGUED:** Charles Grant Byrd, Jr., ALSTON & BYRD, Baltimore, Maryland, for Appellants. Kevin Bock Karpinski, KARPINSKI, COLARESI & KARP, Baltimore, Maryland, for Appellees. **ON BRIEF:** Michael B. Rynd, KARPINSKI, COLARESI & KARP, Baltimore, Maryland, for Appellees.

NIEMEYER, Circuit Judge:

In this appeal, we decide whether the district court properly applied the Rooker-Feldman doctrine to dismiss this federal action challenging the actions of a state administrative agency that were reviewed in state court.

The Board of License Commissioners of Charles County, Maryland ("the Board"), revoked the alcoholic beverage license of a restaurant and lounge known as Thai Palace, as well as two consent orders that imposed conditions on the license, because Thai Palace violated certain conditions imposed by the consent orders. The Circuit Court for Charles County affirmed in part and remanded in part, and the Maryland Court of Special Appeals affirmed the circuit court. The Maryland Court of Appeals declined to grant certiorari.

Shortly after the Circuit Court for Charles County had ruled and before Thai Palace filed its notice of appeal to the Court of Special Appeals, Thai Palace commenced this federal action under 42 U.S.C. § 1983 and the First Amendment, challenging the actions of the Board. The district court dismissed the action for lack of subject matter jurisdiction, based on the Rooker-Feldman doctrine. See Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983). The district court concluded that because Thai Palace "seeks to attribute error to the core of the Board's

2

order and the circuit court ruling affirming it," its federal action "falls neatly within the bounds of the [Rooker-Feldman] doctrine."

We reverse and remand, concluding that Thai Palace has, with this action, commenced an independent, concurrent action challenging actions by a state administrative agency. Because Thai Palace did not request the district court to conduct appellate review of the state court judgment itself, the Rooker-Feldman doctrine does not apply. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). To the extent that the district court concluded that Thai Palace is seeking to litigate the same claims or issues decided in the state proceedings, it can, on remand, apply state law principles of preclusion to bar this action if that proves to be appropriate.

I

Thai Palace -- formally, Thai Seafood & Grill, Inc., and trading as Thai Palace and Thai Palace & Lounge -- is a restaurant and lounge in Waldorf, Maryland. Sutasinee Thana, her husband, and Michael Lohman are the owners of Thai Palace, and Thana and Lohman hold the alcoholic beverage license on behalf of Thai Palace. In 2009, Thai Palace[1] filed an application with the Board for an alcoholic beverage license,

---

[1] We refer collectively to the corporation, Thana, and Lohman as "Thai Palace."

3

effectively seeking reinstatement of an earlier license that had been revoked in 2007 for hosting entertainment that featured nudity. Following a hearing, the Board and Thai Palace entered into a consent order dated November 12, 2009, by which the Board issued the alcoholic beverage license on the condition that Thai Palace "be operated as a family restaurant" between the hours of 11:00 a.m. and 10:00 p.m. and "that there shall be no entertainment other than dinner music from either a radio and/or t.v. . . . without prior written approval of the Board."

Some two years later, Thai Palace requested that the Board rescind the November 2009 Consent Order to allow it to once again provide live entertainment. At the hearing on this request, the Board declined to rescind the November 2009 Consent Order but did agree to modify it. Accordingly, the Board and Thai Palace entered into a second consent order, dated January 12, 2012, which allowed Thai Palace to extend its hours of operation and also permitted it to offer "instrumental and acoustical music; Karaoke; [and] DJ music and dancing." But this second consent order also provided that Thai Palace "shall not allow an outside promoter to maintain control of any entertainment and shall not offer any 'teenager only' events or 'go-go' entertainment."[2] Finally, the January 2012 Consent Order

---

[2] According to the complaint, "go-go" music "is a subgenre associated with funk music that originated in Washington, D.C.

4

provided that it would remain in effect for a period of three years, after which it would expire and be "null and void and of no further effect."

Notwithstanding the terms of the January 2012 Consent Order, Thai Palace contracted with various "go-go" bands to perform at Thai Palace. After receiving information about these concerts from the police, the Board issued an order on June 20, 2013, requiring Thai Palace to show cause why the January 2012 Consent Order "should not be revoked." Following an evidentiary hearing, the Board issued a decision revoking the November 2009 Consent Order, the January 2012 Consent Order, and Thai Palace's alcoholic beverage license.

Pursuant to Maryland statutory provisions for review of administrative orders, Thai Palace filed a petition for review of the Board's decision in the Circuit Court for Charles County. See Md. Code Ann., Art. 2B, § 16-101. The circuit court affirmed the Board with respect to its revocation of the January 2012 Consent Order; concluded that the Board had made no findings that the November 2009 Consent Order had been violated; and remanded for further findings in connection with whether Thai Palace's alcoholic beverage license should be revoked. Thai Palace appealed the circuit court's decision to the

---

in the mid-1960's to late 1970's" and that "remains primarily popular in the area as a uniquely regional music style."

5

Maryland Court of Special Appeals, which affirmed by decision dated January 29, 2016. Thana v. Bd. of License Comm'rs for Charles Cnty., 130 A.3d 1103 (Md. Ct. Spec. App. 2016). Thereafter, Thai Palace filed a petition for a writ of certiorari in the Maryland Court of Appeals, which denied the petition on May 23, 2016.

Before filing its appeal to the Maryland Court of Special Appeals, Thai Palace commenced this action under 42 U.S.C. § 1983, alleging that, by conditioning its alcoholic beverage license on its agreement not to host "go-go" entertainment and by enforcing that condition, the Board had violated its First Amendment rights. Thai Palace sought declaratory and injunctive relief, $500,000 in compensatory damages, and attorneys fees and costs. The Board filed a motion to dismiss the complaint for lack of subject matter jurisdiction, which the district court granted by order dated May 14, 2015. The court concluded that it lacked subject matter jurisdiction under the Rooker-Feldman doctrine, explaining that Thai Palace "plainly seeks to attribute error to the core of the Board's order and the circuit court ruling affirming it (and thereby, to overturn them)."

From the district court's order dismissing the complaint, Thai Palace filed this appeal.

6

Thai Palace contends, contrary to the district court's holding, that it does not, by this action, "seek review . . . of the decision of the Circuit Court for Charles County" and that the district court therefore erred in applying the Rooker-Feldman doctrine to dismiss the action. It argues that its federal suit under 42 U.S.C. § 1983 seeks compensatory damages, as well as equitable relief, for the Board's conditioning of its alcoholic beverage license on its agreement not to promote or offer "go-go" entertainment and for the Board's enforcement of that condition, in violation of the First Amendment. Thai Palace observes that, because "[c]ompensatory damages cannot be awarded in [its administrative appeal,] . . . the [Rooker-Feldman] doctrine is not applicable." It maintains that rather than dismissing the case for lack of jurisdiction, the district court should have stayed the case pending the outcome of the state court proceedings and then applied principles of preclusion to address the Board's arguments.

The Board, in contrast, contends that the district court correctly dismissed this action under the Rooker-Feldman doctrine, arguing that "[t]here could have been no favorable resolution to [Thai Palace's] claim in the district court without a corresponding determination that the State court's judgment, and the Board's decision affirmed by that State

7

court's judgment, were decided in error." The Board notes further that "[t]here could be no award of compensatory damages without the same federal review and rejection of the State court judgment which is precluded by the Rooker-Feldman doctrine." In short, the Board argues that Thai Palace "asked the district court to sit in direct review of the State court's judgment and by extension, the underlying decision of the Board, an administrative agency." Alternatively, the Board argues that "there is no longer a justiciable controversy before the Court, as [the January 2012 Consent Order] became null and void by its own terms as of January 12, 2015."

The principal issue thus presented is whether the district court properly applied the Rooker-Feldman doctrine to dismiss this action for lack of subject matter jurisdiction.

The Rooker-Feldman doctrine followed from Congress' careful assignment of federal subject matter jurisdiction, allocating original jurisdiction to the district courts in, for example, 28 U.S.C. § 1330(a) (actions against foreign states), § 1331 (federal question jurisdiction), and § 1332(a) (diversity jurisdiction), while allocating appellate jurisdiction over final state court judgments to the Supreme Court in § 1257(a). The doctrine thus holds that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006) (per

8

curiam). Thus, the Rooker-Feldman doctrine is narrow and focused, "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Id. at 464 (quoting Exxon, 544 U.S. at 284).

Of course, Congress could allocate jurisdiction to district courts to "oversee" state court judgments, as it has done in authorizing federal habeas review, see Exxon, 544 U.S. at 292 n.8, but it has not done so generally to confer on district courts appellate jurisdiction over state court judgments. The doctrine goes no further than necessary to effectuate Congress' allocation of subject matter jurisdiction between the district courts and the Supreme Court, as the Exxon Court emphasized in noting that the doctrine should be applied no broader than the holdings in the two cases from which the doctrine takes its name. Id. at 284.

In Rooker, a party that lost before the Indiana Supreme Court and that failed to obtain review by the U.S. Supreme Court filed an action in federal district court, challenging the constitutionality of the state court judgment and seeking to have it declared "null and void." 263 U.S. at 414-15. Affirming the district court's dismissal of the federal suit for lack of subject matter jurisdiction, the Supreme Court ruled

9

that the federal suit amounted to an appeal of the state court judgment and that Congress had vested jurisdiction to entertain such an appeal only in the Supreme Court. Id. at 415-16.

In Feldman, the plaintiffs sued the District of Columbia's highest court in federal district court after the District of Columbia court denied their requests for a waiver of a bar membership rule. 460 U.S. at 468. Again, the Supreme Court affirmed dismissal of the case, holding that while the plaintiffs could challenge the constitutionality of the bar admission rule itself in a federal district court, they could not challenge the District of Columbia court's judgment denying their waiver petitions in a federal district court. Id. at 482-83.

In the years following these two decisions, which together defined the Rooker-Feldman doctrine, courts, including this court, broadly interpreted the doctrine as barring the loser in a state court adjudication "from bringing suit in federal court alleging the same claim or a claim that could have been brought in the state proceedings," thereby sliding the analysis into an application of claim preclusion principles. Davani v. Va. Dep't of Transp., 434 F.3d 712, 713 (4th Cir. 2006) (emphasis added). In Exxon, however, the Supreme Court corrected this misunderstanding, warning that such an expansive construction of the doctrine threatens both to "overrid[e] Congress' conferral

10

of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and [to] supersed[e] the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." 544 U.S. at 283 (emphasis added). Seeking to bring the doctrine back to its narrow focus, the Exxon Court clarified that, rather than serving as preclusion by another name, "[t]he Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284 (emphasis added). The Court even indicated that it sought to restrict the doctrine to cases whose procedural postures mirrored those in the Rooker and Feldman cases themselves:

> Rooker and Feldman exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.] In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.

Id. at 291 (citations omitted).

To emphasize the narrow role that the Rooker-Feldman doctrine is to play, the Supreme Court has noted repeatedly

11

that, since the decisions in Rooker and Feldman, it has never applied the doctrine to deprive a district court of subject matter jurisdiction. See, e.g., Skinner v. Switzer, 562 U.S. 521, 531 (2011); Lance, 546 U.S. at 464; Exxon, 544 U.S. at 287. Similarly, since Exxon, we have never, in a published opinion, held that a district court lacked subject matter jurisdiction under the Rooker-Feldman doctrine.

To be sure, the distinction between preclusion principles and the Rooker-Feldman doctrine can sometimes be subtle, but it is nonetheless important to maintain. Preclusion principles are designed to address the tension between two concurrent, independent suits that results when the two suits address the same subject matter, claims, and legal principles. Whereas the Rooker-Feldman doctrine, by contrast, assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court specifically to review that state court judgment. Thus, if a plaintiff in federal court does not seek review of the state court judgment itself but instead "presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." Skinner, 562 U.S. at 532 (emphasis added) (internal quotation marks and alterations omitted) (quoting Exxon, 544

12

U.S. at 292-93). Rather, the Court has recognized that Congress' policy allows for concurrent litigation in federal and state courts, noting that any tensions between the two proceedings should be managed through the doctrines of preclusion, comity, and abstention. Exxon, 544 U.S. at 292-93.

Consistent with this narrow articulation of the Rooker-Feldman doctrine, the Supreme Court has also recognized that state administrative and executive actions are not covered by the doctrine. See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002) ("[T]he [Rooker-Feldman] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency"); see also Lance, 546 U.S. at 464; Exxon, 544 U.S. at 287. State administrative decisions, even those that are subject to judicial review by state courts, are beyond doubt subject to challenge in an independent federal action commenced under jurisdiction explicitly conferred by Congress.

In the circumstances of this case, we conclude that this federal action is a concurrent, independent action supported by original jurisdiction conferred by Congress on federal district courts, even though the complaint in the action includes claims and legal arguments similar to or the same as those made in the state proceedings, and that therefore it is not barred by the

13

Rooker-Feldman doctrine. There are several reasons supporting this conclusion.

First, if we apply strictly the Supreme Court's instruction that the Rooker-Feldman doctrine is to be "confined to cases of the kind from which the doctrine acquired its name," Exxon, 544 U.S. at 284, we would conclude that the doctrine does not apply here because the district court here was not called upon to exercise appellate jurisdiction over a final judgment from "the highest court of a State in which a decision could be had," 28 U.S.C. § 1257(a) (emphasis added), as was the case in both Rooker and Feldman. In those cases, instead of seeking review in the Supreme Court of a judgment entered by the State's highest court, the losing party pursued review of the judgment in a federal district court, frustrating the Supreme Court's exclusive jurisdiction over such a judgment. See 28 U.S.C. § 1257(a) (providing that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court" in cases raising federal questions); see also Exxon, 544 U.S. at 291 (noting that, in both Rooker and Feldman, the plaintiff "filed suit in federal court after the state proceedings ended" (emphasis added)). Obviously, the case before us does not fit that profile.

14

Second, and more fundamental to the controlling indicia articulated by the Supreme Court in Exxon, Thai Palace's action was, and is, challenging the action of a state administrative agency, <u>rather than alleging injury caused by a state court judgment</u>. Nowhere in its complaint did Thai Palace seek review of the judgment of the Circuit Court for Charles Country. Instead, as the district court acknowledged, its claims are premised on injuries allegedly caused by the Board. Because Thai Palace's federal action does not seek redress for an injury allegedly caused by a judgment of a state court, the Rooker-Feldman doctrine does not apply. See Exxon, 544 U.S. at 284 (holding that the Rooker-Feldman doctrine applies only to cases brought to "complain[] of injuries caused by state-court judgments").

Third, and more generally, because Thai Palace challenges state administrative actions, the Rooker-Feldman doctrine does not apply as a categorical matter. See Exxon, 544 U.S. at 287 ("Rooker-Feldman does not apply to a suit seeking review of state agency action"); Verizon Md., 535 U.S. at 614 n.3 (same).

Fourth, the differences between the two proceedings demonstrate that this federal action must be seen as an independent, concurrent action that does not undermine the Supreme Court's jurisdiction over any state court judgment. See Skinner, 562 U.S. at 532. The state proceeding in this case was

15

an agency-initiated proceeding, in which limited and deferential judicial review was afforded. The agency's authority extended only to issuing, modifying, and revoking Thai Palace's alcoholic beverage license, and judicial review was limited to determining whether the Board's decision was "supported by substantial evidence" and whether the Board "committed [an] error of law." Paek v. Prince George's Cnty. Bd. of License Comm'rs, 851 A.2d 540, 544 (Md. 2004). Moreover, in reviewing the Board's decision, Maryland courts could only modify, affirm, reverse, or remand the proceedings to the Board, possessing no authority to award damages. See Md. Code Ann., Art. 2(B), § 16-101(e)(4). Any final judgment by the State's highest court could then be reviewed by the Supreme Court under 28 U.S.C. § 1257(a). This action, on the other hand, was commenced under 42 U.S.C. § 1983 to challenge the constitutionality of the Board's actions under the First Amendment, and the district court possessed original subject matter jurisdiction over such an action under 28 U.S.C. § 1331 (federal question jurisdiction). In addition to declaratory and injunctive relief, Thai Palace also sought damages. In these circumstances, the Supreme Court, as well as our court, has never held that a federal district court is barred by the Rooker-Feldman doctrine from exercising its subject matter jurisdiction over such a concurrent proceeding, even though the district court would have to give effect to 28

16

U.S.C. § 1738, which requires federal courts to "give the same preclusive effect to a state-court judgment as another court of that State would give."  Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986).

And fifth, while pursuing this independent, concurrent action, Thai Palace in fact never sought to bypass the Supreme Court's appellate jurisdiction under 28 U.S.C. § 1257(a) over any relevant state court judgment.  To the contrary, it challenged the judgment of the Circuit Court of Charles County by appealing it to the Maryland Court of Special Appeals and ultimately the Maryland Court of Appeals, thereby remaining on track for potential review by the U.S. Supreme Court.  Thus, Thai Palace did not frustrate the Supreme Court's jurisdiction, and the purpose behind the Rooker-Feldman doctrine was not implicated.

Rather than limit itself to the narrow question of whether it was called upon to exercise appellate jurisdiction over a state court judgment, the district court effectively applied preclusion principles to conclude that the Rooker-Feldman doctrine divested it of subject matter jurisdiction.  For example, the court noted that, in this action, Thai Palace was presenting "the substance of the very constitutional challenge" that the Circuit Court for Charles County addressed; that it "could not possibly rule in [Thai Palace's] favor on these

17

claims without finding error by the state court"; and that Thai Palace's "success on the merits would necessitate a finding that the state court wrongly decided the issues before it." (Internal quotation marks and citations omitted). Yet these observations about the similarity of the claims are beside the point. While the court's concerns may have been accurate and valid, they do not relate to whether Rooker-Feldman applies. See Exxon, 544 U.S. at 293 ("Nor does [the Rooker-Feldman doctrine] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court"). Rather, the district court's concern that it could not rule in Thai Palace's favor without attributing error to the state court amounted to the application of traditional preclusion principles.

At bottom, we conclude that this federal action, commenced by Thai Palace under 42 U.S.C. § 1983 and alleging injury inflicted by actions of a state administrative agency, qualifies as an independent, concurrent action that does not undermine the Supreme Court's appellate jurisdiction over state court judgments, and accordingly the Rooker-Feldman doctrine does not apply. Of course, this is not to say that this action can continue if it is barred under state preclusion principles. Nonetheless, in this posture at this time, we must reverse the

district court's Rooker-Feldman ruling and remand for further proceedings.[3]

REVERSED AND REMANDED

---

[3] We note that this case is not moot, as the Board claims, given that Thai Palace seeks compensatory damages for past harm.