CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 08 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CARY HENDRICK, et al.,                )
                                      )
        Plaintiffs,                   )        Civil Action No. 7:16CV00095
                                      )
v.                                    )        **MEMORANDUM OPINION**
                                      )
DONALD CALDWELL, et al.,              )        By: Hon. Glen E. Conrad
                                      )        Chief United States District Judge
        Defendants.                   )

Plaintiffs Cary Hendrick, Bryan Manning, Ryan Williams, Richard Deckerhoff, and Richard Walls bring this action seeking declaratory and injunctive relief against defendants Donald Caldwell and Michael Herring, in their official capacities, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202. This case is presently before the court on defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court will grant defendants' motion.[1]

### Background

The following facts, taken from the plaintiffs' complaint, are accepted as true for purposes of the defendants' motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). The named plaintiffs in this matter are homeless individuals who suffer from alcohol use disorder and have been interdicted pursuant to Virginia Code § 4.1-333(a). Defendants are prosecutors for the Commonwealth of Virginia.

---

[1] On August 26, 2016, a Suggestion of Death was filed in regards to plaintiff Cary Hendrick. Pursuant to Federal Rule of Civil Procedure 25, the decedent's successor or representative has ninety days from service of the notice to file a motion for substitution. No such motion was made. If the motion is not made within ninety days, the action by the decedent must be dismissed. Fed. R. Civ. P. 25(a)(1). Accordingly, all claims asserted by Cary Hendrick will be dismissed. Under this rule, the court will proceed to evaluate the claims of the remaining plaintiffs.

Virginia Code § 4.1-333(a) states:

> When after a hearing upon due notice it appears to the satisfaction of the circuit court of any county or city that any person, residing within such county or city, has been convicted of driving any automobile, truck, motorcycle, engine or train while intoxicated or has shown himself to be an habitual drunkard, the court may enter an order of interdiction prohibiting the sale of alcoholic beverages to such person until further ordered.

The statute does not define "habitual drunkard," and there is no clear standard for removing the label once determined to be such. Compl. ¶ 32-33. A person can be interdicted in absentia, and a defendant does not have the right to counsel or trial by jury at the interdiction hearing as it is a civil proceeding. Id. ¶ 19.

It is a Class 1 misdemeanor for an interdicted individual to "consume, purchase or possess, or attempt to consume, purchase or posses, any alcoholic beverage." Va. Code § 4.1-305. It is this prohibition of consumption, possession, or attempted possession or consumption that plaintiffs challenge (the "consumption prong"). Virginia Code § 4.1-322 also makes it a Class 1 misdemeanor for an interdicted person to be drunk in public, and plaintiffs do not challenge this aspect of the statutory scheme. The punishment for conviction of a Class 1 misdemeanor is "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Va. Code § 18.2-11(a). Between August of 2005 and August of 2015, there were 4,743 convictions under this statutory scheme (the "Interdiction Statute"). Id. ¶ 21.

Pursuant to Federal Rule of Civil Procedure 23(b)(2), plaintiffs seek to certify a class of homeless alcoholics who have been or will be interdicted, and a class of defendant Virginia Commonwealth Attorneys who have the authority to enforce the Interdiction Statute. The complaint alleges that alcoholism is an addiction: a chronic disease of the brain that compels the plaintiffs to pathologically pursue alcohol use. Id. ¶ 25. Their homelessness exacerbates their alcoholism and makes long-term abstention "nearly impossible." Id. ¶ 26.

2

The named plaintiffs were interdicted between 2009 and 2012. These four plaintiffs have been arrested and prosecuted under the Interdiction Statute between ten and thirty times each. All of the named plaintiffs were either interdicted in absentia or requested counsel, but their requests were denied. Id. ¶ 19. The complaint also alleges that the plaintiffs have been arrested for constructive possession of alcohol, including situations in which a plaintiff was merely sitting near open containers or emitting a detectable odor of alcohol. Id. ¶ 29.

Plaintiffs challenge the Interdiction Statute, claiming that it violates their rights guaranteed by the United States Constitution. Specifically, plaintiffs bring five claims against defendants.[2] Count One alleges that the enforcement of the Interdiction Statute results in cruel and unusual punishment in violation of the Eighth Amendment as applied to the States through the Fourteenth Amendment. Count Three alleges deprivation of due process under the Fourteenth Amendment. Count Five claims that the Interdiction Statute is unconstitutionally vague in violation of the Fourteenth Amendment. Count Seven alleges deprivation of equal protection under the Fourteenth Amendment. Count Eight requests injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiffs ask the court to certify the classes of plaintiffs and defendants, declare that the defendants' practice of enforcing the consumption prong of the Interdiction Statute against homeless alcoholics violates their constitutional rights, and enjoin defendants from further enforcing this portion of the Interdiction Statute against plaintiffs and others in the class.

### Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion to

---

[2] Originally, plaintiffs brought eight claims. On August 26, 2016, the parties jointly moved to voluntarily dismiss counts two, four, and six. The court granted the motion.

3

dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiffs' favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

Defendants make five arguments, four of which are procedural and one of which is substantive, in support of their motion to dismiss: (1) that the Rooker-Feldman doctrine precludes this court from exercising jurisdiction over this case; (2) that plaintiffs have had the opportunity to challenge their interdictions in state court, and those judgments have preclusive effect; (3) that plaintiffs' request for future equitable relief is not ripe for adjudication; (4) that plaintiffs' request for declaratory relief is barred by the statute of limitations; and (5) that plaintiffs have failed to state a claim upon which relief can be granted.

### I. Procedural Arguments

#### a. The Rooker-Feldman Doctrine

Defendants contend that plaintiffs' complaint is a de facto appeal from a state court judgment and is thus barred by Rooker-Feldman. See Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983). The Rooker-Feldman doctrine arises

4

from Congress' assignment of original jurisdiction to the district courts and appellate jurisdiction over final state court judgments to the United States Supreme Court. Thana v. Bd. of License Comm'rs for Charles Cty., Md., 827 F.3d 314, 318-19 (4th Cir. 2016). When applicable, the Rooker-Feldman doctrine is a jurisdictional bar that prevents a state court loser from seeking, in substance, appellate review of his adverse state court decision by a federal district court. Am. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003). In determining whether the doctrine applies, the fundamental question is whether the litigant is seeking federal appellate review of the merits of a state court decision. Id. A litigant may not "escape the jurisdictional bar of Rooker-Feldman by merely refashioning its attack on state court judgments as a §1983 claim." Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 202 (4th Cir. 1997). Stated otherwise, if the federal court's action would render the state court judgment ineffectual, Rooker-Feldman is implicated. Id.

The Fourth Circuit recently addressed the Rooker-Feldman doctrine and clarified its narrow scope. See Thana, 827 F.3d at 319 ("[T]he Rooker-Feldman doctrine is narrow and focused . . . ."). Noting that the "distinction between preclusion principles and the Rooker-Feldman doctrine can sometimes be subtle," the Fourth Circuit observed that the Rooker-Feldman doctrine "assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court specifically to review the state court judgment." Id. (emphasis in original). The Fourth Circuit further emphasized that the Supreme Court has indicated that the doctrine should be restricted "to cases whose procedural posture mirrored those in the Rooker and Feldman cases themselves." Thana, 827 F.3d at 320 (citing Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,

5

544 U.S. 280, 284 (2005)). Accordingly, the <u>Rooker-Feldman</u> doctrine bars a district court's jurisdiction in similar situations: when "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." <u>Exxon</u>, 544 U.S. at 291. The Fourth Circuit has never, in a published opinion, applied the <u>Rooker-Feldman</u> doctrine to preclude a district court's jurisdiction. <u>Thana</u>, 827 F.3d at 320.

In the instant case, and in light of the Fourth Circuit's most recent clarification of the narrow scope of the <u>Rooker-Feldman</u> doctrine, the court does not believe the doctrine applies. While the instant action was filed after the state proceedings ended, the plaintiffs are not "complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." <u>Id.</u> They do not seek to overturn their orders of interdiction or their prior convictions as interdicted individuals. Instead, plaintiffs challenge the statutory scheme—that is, how the Interdiction Statute is applied to them in the future. The court finds that this claim, as pled, is sufficiently independent so as not to act as an impediment to the exercise of federal jurisdiction. <u>See</u> <u>Skinner v. Switzer</u>, 562 U.S. 521, 532 (2011) (stating that if the party "presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court"). The court, however, cannot escape the tension between the state proceedings and the instant action. Nevertheless, the Fourth Circuit has determined that <u>Rooker-Feldman</u> is not the appropriate vehicle to manage such tensions. Instead, they are to be examined through the doctrines of preclusion, comity, and abstention. <u>Thana</u>, 827 F.3d at 320 (citing <u>Exxon</u>, 544 U.S. at 292-93).

6

### b. Res Judicata

The court next turns to the question of whether plaintiffs' claims are procedurally barred under preclusion principles. "Federal courts asked in a § 1983 action to give res judicata effect (in any of the doctrine's aspects) to a state court judgment are bound under the Full Faith and Credit Statute, 28 U.S.C. § 1738, to apply the law of the rendering state to determine whether and to what extent the state court judgment should have preclusive effect." Davenport v. North Carolina Dep't of Transp., 3 F.3d 89, 92 (4th Cir. 1993). The effects of res judicata can be divided into two categories: claim preclusion and issue preclusion. Lee v. Spoden, 290 Va. 235, 245 (2015). In Virginia, under the doctrine of claim preclusion,

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from the same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claim in the prior proceeding depended, or the particular remedies sought.

Virginia Supreme Court Rule 1:6(a). Whether a subsequent claim involves "the same conduct, transaction or occurrence" depends on whether the claim is based on a different cause of action. Lee, 290 Va. at 248. "[A] cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action." Roller v. Basic Constr. Co., 238 Va. 321, 327 (1989). "A right of action, on the other hand, 'is the remedial right accorded to a person to enforce a cause of action and arises only when a person's rights are infringed.'" Lee, 290 Va. at 249. Multiple rights may arise under a single cause of action, but "a wrongful act generally gives rise to only a single indivisible cause of action."

In the instant case, the plaintiffs are seeking declaratory and injunctive relief regarding future arrests and prosecutions that plaintiffs assert are certain to occur. These prosecutions will

7

necessarily include a separate "set of operative facts" that gives rise to the right of action. Lee, 290 Va. at 248. Therefore, although there remains the issue of whether plaintiffs have standing to proceed based on future occurrences, the court does not believe that the instant matter addresses the same cause of action. Accordingly, the doctrine of claim preclusion does not prevent suit.

Similarly, the doctrine of issue preclusion does not bar plaintiffs' claims. Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Lee, 290 Va. at 246 (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). Here, as explained, there are no factual issues that have already been litigated, as the facts simply have not yet unfolded. Moreover, defendants do not assert that plaintiffs actually litigated their constitutional claims in the state court proceedings. Instead, defendants argue that plaintiffs had the opportunity to do so in their previous state court proceedings, but chose not to raise these issues.

In arguing that plaintiffs' claims are barred by res judicata, the defendants rely upon Colvin v. Deaton. 577 F. Supp. 925 (W.D. Va. 1984). In Colvin, ten individuals brought constitutional challenges to the Interdiction Statute. The court held that res judicata precluded the plaintiffs from bringing their claims because plaintiffs had the opportunity to fully and fairly litigate their constitutional claims in their state court proceedings, but chose not to do so. Id. at 928.

The court questions whether the plaintiffs in the instant matter had a full and fair opportunity to litigate their constitutional claims. See Allen v. McCurry, 449 U.S. 90, 101 (1980) (holding that res judicata can apply to § 1983 claims but noting that "[c]ollateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full

8

and fair opportunity to litigate the claim or issue decided by the first court"). In determining that the plaintiffs had a full and fair opportunity to litigate their constitutional claims in their state court proceedings, the Colvin court relied, in part, on (1) the fact that the plaintiffs "were represented by counsel at their state court hearing"; and (2) the fact that "[t]heir present claim for declaratory, injunctive, and monetary relief arises from the very fact of the state court proceedings themselves." Colvin, 577 F. Supp. at 928-29. The district court also referenced Southern Jam, Inc. v. Robinson, 675 F.2d 94 (5th Cir. 1982), a case in which res judicata barred a plaintiff's constitutional claims because the plaintiffs did not take the opportunity to raise these claims at the state court proceeding. The Colvin court observed that the state law applied in Southern Jam required a party to raise any claim it may have against an opposing party that arose out of the same transaction or occurrence in that same proceeding. Colvin, 557 F. Supp. at 930. In Virginia, however, "[a]ll counterclaims are permissive." Tyler v. Berger, No. Civ.A. 605CV00030, 2005 WL 2596164, at *3 n.2 (W.D. Va. Oct. 13, 2005); Va. Code § 16.1-88.01. The fact that counterclaims are permissive in Virginia supports the argument that plaintiffs may not have had the opportunity to fully and fairly litigate their claims. See Brown v. Transurban USA, Inc., 144 F. Supp. 3d 809, 832 (E.D. Va. 2015) ("The plain language of Rule 1:6 . . . limits the application of res judicata to bar future claims only by a 'party whose claim for relief . . . is decided on the merits.' If, in the prior case, no counterclaim was raised by the prior defendant, she cannot fairly be said to have been a 'party whose claim for relief . . . [was] decided on the merits.'") (quoting Virginia Supreme Court Rule 1:6(a)).

Similarly, while the instant matter does "arise from the very fact of the state court proceedings themselves," namely, the order of interdiction, unlike in Colvin, plaintiffs are not seeking to invalidate those state court proceedings. Instead, plaintiffs seek prospective relief

9

relating to the future enforcement of the consumption prong of the Interdiction Statute. This request does not prevent the court from giving "a state court judgment the same force and effect as it has in the state in which it was rendered" because no such state court judgment has been made. Colvin, 577 F. Supp. at 929. If successful, plaintiffs remain interdicted with their previous convictions intact, and defendants would be free to prosecute them as interdicted individuals for other proscribed behavior in the future. Moreover, unlike Colvin, the plaintiffs in the instant action were either interdicted in absentia or without counsel. See id. ("Those interdicted were represented by the same counsel in those proceedings . . . ."). In short, the court does not find defendants' reliance on Colvin persuasive.

Defendants also argue that plaintiffs have failed to take advantage of a state court remedy: the interdicting court may amend, alter, or withdraw an interdiction order at any time. Va. Code § 4.1-333(B). However, plaintiffs correctly point out that, when there is no state criminal proceeding pending, "[e]xhaustion of state judicial or administrative remedies . . . [is] not necessary." Ellis v. Dyson, 421 U.S. 426, 432 (1975). "[W]here there is simply threatened prosecution, . . . the opportunity of adjudication of constitutional rights in a federal forum, as authorized by the Declaratory Judgment Act, becomes paramount." Id. (citing Steffel v. Thompson, 415 U.S. 452, 462-463 (1974)). Consequently, the court does not believe that plaintiffs' claims are precluded.

### c. Standing

Although not barred by res judicata, plaintiffs' claims must also be ripe for adjudication. Federal courts address "cases" or "controversies," and abstract injury does not suffice. O'Shea v. Littleton, 414 U.S. 488, 493-94 (1974). Accordingly, "[a] claim is unripe 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"

Case 7:16-cv-00095-GEC   Document 36   Filed 02/08/17   Page 10 of 35   Pageid#: 452

United States v. Simmons, 604 F. App'x 280, 280 (4th Cir. 2015) (per curiam) (quoting Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 270 (4th Cir. 2013)). Defendants' argument is based on the fact that plaintiffs seek injunctive relief in regards to future events and facts that have not yet been developed.

To have standing in a pre-enforcement challenge, a plaintiff "must show a threat of prosecution that is both real and immediate . . . before a federal court may examine the validity of the criminal statute." Doe v. Duling, 782 F.2d 1202, 1205-06 (4th Cir. 1986) (citing cases). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . ." O'Shea, 414 U.S. at 496. However, "[p]ast wrongs [are] evidence bearing on 'whether there is a real and immediate threat of repeated injury. . . .' [T]he prospect of future injury rest[s] 'on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the [allegedly unconstitutional] criminal law.'" City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quoting O'Shea, 414 U.S. at 495-97).

Here, plaintiffs have alleged that they are homeless alcoholics, who are compelled to possess and consume alcohol. Because they are homeless, this possession and consumption is necessarily in the public view, repeatedly subjecting them to the same set of circumstances that led to their convictions under the consumption prong of the Interdiction Statute. Moreover, each of the remaining named plaintiffs has been arrested under the Interdiction Statute between ten and thirty times. The court believes that these facts, as alleged, raise a sufficient case or controversy. From the face of the complaint, there is "'a sufficient likelihood' of encountering some future harm" from the enforcement of the Interdiction Statute. Bane v. Va. Dep't of Corrections, No. 7:12-CV-159, 2012 WL 6738274, at *4 (W.D. Va. Dec. 28, 2012) (quoting

11

Equal Rights Ctr. v. Abercrombie & Fitch Co., 767 F. Supp. 2d 510, 516 (D. Md. 2010)). This "sufficient likelihood" is enough "to permit a plaintiff to seek injunctive relief." Id.; see also Vester v. Rogers, 795 F.2d 1179, 1181 n.2 (4th Cir. 1986) (rejecting the argument that plaintiff lacked standing when the regulation at issue had been applied to him previously and plaintiff demonstrated a likelihood that it would be applied to him again).

As to the unnamed plaintiffs, once the named litigants have established standing, "[t]his conclusion does not automatically establish that [the named plaintiffs are] entitled to litigate the interests of the class [they] seek to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interest of the class.'" Sonsa v. Iowa, 419 U.S. 393, 403 (1975) (citing Fed. R. Civ. P. 23(a)); see also Melendres v. Arpaio, 784 F.3d 1254, 1261-62 (9th Cir. 2015) (discussing how the standing requirement is addressed in relation to the named plaintiff and whether the named plaintiff may bring claims on behalf of a putative class is considered under a Rule 23(a) analysis) (citing 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th Ed.)). Therefore, the court believes that the named plaintiffs have pled the requisite real and immediate harm to confer standing. Whether they may bring claims on behalf of the putative class of homeless alcoholics will be analyzed under Federal Rule of Civil Procedure 23.

### d. Statute of Limitations

Defendants next assert that the indirect nature of plaintiffs' challenge does not excuse plaintiffs from complying with the appropriate statute of limitations. The Federal Declaratory Judgment Act ("DJA") does not provide a statute of limitations. 118 East 65th Owners, Inc. v. Bonner Props., Inc., 677 F.2d 200, 202 (2d Cir. 1982). Instead, it adopts the applicable limitations of the suit "in which the issues involved would have been litigated if the [DJA] had

not been adopted." Id. Additionally, the DJA does not provide an independent jurisdictional basis; it merely provides a supplemental remedy. City Nat'l Bank v. Edmisten, 681 F.2d 942, 945 n.6 (4th Cir. 1982) ("[I]t is clear that § 2201 is remedial only, and is not itself a basis for federal subject matter jurisdiction."). Therefore, in this action, jurisdiction is based on plaintiffs' claims under 28 U.S.C. § 1983. See 28 U.S.C. § 1331 (providing jurisdiction for claims arising under federal law). "There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied." Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991). In Virginia, the statute of limitations for personal injury claims is two years, and therefore, a two-year statute of limitations applies in the instant case. See A Soc'y Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) ("With regard to the § 1983 . . . claims, the statute-of-limitations period for both is two years.").

While state law dictates the applicable limitations period, federal law determines when the cause of action accrues. Nasim v. Warden, 64 F.3d 951, 955 (4th Cir. 1995). A cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. The Fourth Circuit adheres to the doctrine of continuing violation, in which "claims premised upon allegations concerning a continuing pattern of unlawful conduct that remains in effect when a lawsuit is filed are not barred by the statute of limitations, even if the alleged pattern commenced prior to an otherwise pertinent limitations period." Scott v. Clarke, 64 F. Supp. 3d 813, 826 (W.D. Va. 2014) (citing sources). For the continuing violation doctrine to apply, an actual violation must have occurred within the limitations period. Pledger v. City of Virginia Beach, 103 F.3d 119, 1996 WL 671730, at *1 (4th Cir. 1996) (citing Woodard v. Lehman, 717 F.2d 909, 915 (4th Cir. 1983)). A "mere allegation

13

of continuing discrimination without any identification of a discriminatory event within the statute of limitations period is insufficient . . . ." Nealon v. Stone, 958 F.2d 584, 590 n.4 (4th Cir. 1992).

Defendants assert that four of the five original plaintiffs were interdicted more than two years ago, and that at that time, the plaintiffs had sufficient facts about the harm done that a reasonable inquiry would have revealed their cause of action. Thus, because the suit was filed more than two years after their cause of action allegedly arose, defendants contend that the suit is barred by the statute of limitations. Consistent with their previous arguments, plaintiffs point out that their cause of action has not yet accrued, as they are seeking injunctive and declaratory relief in relation to future events. In the alternative, plaintiffs assert that the continuing violation applies because plaintiffs Manning and Deckerhoff were last convicted in November of 2015 and plaintiffs Walls and Williams in March and May of 2016. All four have convictions within the statute of limitations.

The court agrees that the statute of limitations has not lapsed because plaintiffs are seeking prospective relief. See Poe v. Lynchburg Training Sch. and Hosp., 518 F. Supp. 789, 794 (W.D. Va. 1981) ("The remedies which plaintiffs are now permitted to seek encompass prospective relief only, premised on an allegedly continuing deprivation. . . . Since the alleged deprivation is of a continuing nature, the action . . . is obviously not time barred.") (citing Williams v. Norfolk and Western Ry. Co., 530 F.2d 539, 542 (4th Cir. 1975)); cf. Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 799 (4th Cir. 2001) (explaining that the doctrine of laches may be applied to equitable claims but that the doctrine does not apply to prospective injunctive relief as such an injunction is "entered only on the basis of current, ongoing conduct that threatens future harm"). Moreover, to the extent a statute of limitations applies to plaintiffs'

14

claims for declaratory relief, if at all, each of the four remaining named plaintiffs can point to a recent conviction, allegedly in violation of their Constitutional rights, that is within the two-year limitations period. Accordingly, the court does not consider plaintiffs' claims time barred.

## II.     Substantive Arguments

### a.  Eighth Amendment Claims

Plaintiffs allege that enforcement of the consumption prong of the Interdiction Statute constitutes cruel and unusual punishment in violation of the Eighth Amendment because it punishes the status of being a homeless alcoholic. In contrast, defendants assert three reasons why the Eighth Amendment claim fails.[3] For the reasons set forth below, the court will dismiss plaintiffs' Eighth Amendment claim.

First, defendants argue that Heck v. Humphrey, 512 U.S. 477 (1994), bars the claim. In Heck, the Supreme Court held that if a § 1983 claim would necessarily invalidate an existing and presumptively valid state court judgment of conviction, the § 1983 claim is not cognizable unless the plaintiff alleges and proves that the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." Id. at 486-87. Thus, if in granting relief, judgment in plaintiffs' favor would suggest the invalidity of the conviction or sentence, the suit must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Id. at 487. This doctrine applies regardless of whether damages or injunctive relief is sought. Harvey v. Horan, 278 F.3d 370, 375 (4th Cir.

---

[3]     Plaintiffs contend that defendants' third argument, that the Interdiction Statute does not violate Eighth Amendment Proportionality principles, is misplaced because plaintiffs are not challenging "the length of any future jail sentence." Pl.'s Br. in Opp'n 36, Docket No. 21. Because there is no challenge to the potential sentence that would be imposed, the court will not consider a proportionality analysis.

2002). Therefore, defendants argue, because plaintiffs have not pled that the lawfulness of the state court conviction has been impugned, they fail to state a claim for relief.

Defendants' argument misunderstands the relief requested by the plaintiffs. They do not seek to invalidate their previous state court convictions or interdiction proceedings. Instead, they seek prospective injunctive relief requiring the defendants to comply with the Eighth and Fourteenth Amendments. Such claims are not subject to dismissal under the Heck line of cases. See Wilkinson v. Dotson, 544 U.S. 74, 81 (noting that "the prisoner's claim for an injunction barring future unconstitutional procedures did not fall within habeas' exclusive domain" and was not barred by Heck) (emphasis in original); Lawrence v. McCall, 238 F. App'x 393, 396 (10th Cir. 2007) (affirming the district court's determination that Heck does not bar the plaintiffs from seeking prospective relief).

Second, defendants argue that the Interdiction Statute does not violate the Eighth Amendment's prohibition of cruel and unusual punishment because it criminalizes conduct, not the status of being a homeless alcoholic. Plaintiffs' argument in response relies upon the Fourth Circuit's pronouncement that "the State cannot stamp an unpretending chronic alcoholic as a criminal if his drunken public display is involuntary as the result of disease." Driver v. Hinnant, 356 F.2d 761, 765 (4th Cir. 1966). Plaintiffs' reliance upon Driver, however, necessarily hinges on the continued validity of that holding, which plaintiffs contend was not overruled by the United States Supreme Court in Powell v. Texas, 392 U.S. 514 (1968) (discussing the scope of the Supreme Court's holding in Robinson v. California, 370 U.S. 660 (1962)). Plaintiffs also assert that their claim is further supported by two recent Ninth Circuit cases, Ledezma-Cosino v. Lynch, 819 F.3d 1070 (2016) and Jones v. City of Los Angeles, 444 F.3d 1118 (9th Cir. 2006).

16

In Ledezma-Cosino, a Ninth Circuit panel addressed whether a chronic alcoholic could be deemed a person of "bad moral character," thus excluding him from electing "voluntary removal" when faced with removal proceedings brought pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. 819 F.3d at 1074-75. The panel found that the government's classification of chronic alcoholism was not rationally related to whether the individual had good moral character. Id. Plaintiffs aver that this determination rested on the conclusion that the "habitual drunkard" exclusion of 8 U.S.C. § 1101(f)(1) criminalized the status of being an alcoholic and not any particular conduct. However, Ledezma-Cosino is inapplicable for at least three reasons. First, the Ninth Circuit granted a petition for a rehearing en banc. Ledezma-Cosino v. Lynch, 839 F.3d 805 (9th Cir. 2016). In doing so, the Ninth Circuit stated, "The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." Id. This court sees no reason to give that opinion more precedential value than the Ninth Circuit itself. Second, the Ledezma-Cosino plaintiff brought due process and equal protection claims and not Eighth Amendment ones. 819 F.3d at 1072. Third, the Ledezma-Cosino panel held that "link[ing] a person's medical disability with his moral character" could not survive rational basis review. Id. at 1076. The Ninth Circuit did not address whether a statute that linked conduct incident to the disease could survive rational basis scrutiny. Instead, the Ledezma-Cosino court expressly noted that "when or how persons with chronic alcoholism may be punished for criminal acts committed while in an alcoholic state is another question to be considered elsewhere." Id. at 1078 n.1. Accordingly, the court finds Ledezma-Cosino inapposite to the instant case.

The Ninth Circuit's holding in Jones, however, addresses a more difficult issue. In Jones, the Ninth Circuit reasoned that "[a] closer analysis of Robinson and Powell instructs that the

17

involuntariness of the act or condition the City criminalizes is the critical factor delineating a constitutionally cognizable status, and incidental conduct which is integral to and an unavoidable result of that status, from acts or conditions that can be criminalized consistent with the Eighth Amendment." Jones, 444 F.3d at 1132. However, the Jones opinion was vacated as part of the parties' settlement agreement, and district courts within the Ninth Circuit have rejected its precedential value. See Lehr v. City of Sacramento, 624 F. Supp. 2d 1218, 1225 (2009) ("This Court finds that, though the Jones opinion is informative, it is not binding, and the Court will limit the weight given the decision accordingly."); Anderson v. City of Portland, No. 08-1447-AA, 2009 WL 2386056, at *7 (D. Or. July 31, 2009) ("Ultimately, I part company with the reasoning employed by Jones . . . ."). After careful consideration of Robinson, Powell, and Fourth Circuit precedent, this court declines to adopt the holding set forth in Jones. Instead, the court believes that Powell articulated two important principles applicable to the instant case: (1) that Robinson did not reach the question of whether the Eighth Amendment prohibits punishment of conduct symptomatic of a disease; and (2) that the doctrines of criminal responsibility are traditionally the province of the states.

   In Robinson v. California, the Supreme Court found unconstitutional a law that made it a crime "to be addicted to the use of narcotics." 370 U.S. at 664. The Supreme Court determined that the statute made the "'status' of narcotic addiction a criminal offense, for which the offender may be prosecuted . . . whether or not [the offender] has ever used or possessed any narcotics within the State." Id. at 666. Therefore, the Supreme Court held that the statute at issue punished an illness, narcotic addiction, that may be contracted innocently or involuntary, in violation of the Eighth Amendment.

The Supreme Court visited a similar issue in Powell v. Texas, 392 U.S. 514 (1968), when an alcoholic brought a constitutional challenge to a statute that prohibited public intoxication. In upholding the constitutionality of the statute, the plurality clarified the scope of Robinson: to prohibit the criminalization of "mere status." Powell, 392 U.S. at 532 (1968). The Supreme Court observed:

> It is suggested in dissent that Robinson stands for the 'simple' but 'subtle' principle that '(c)riminal penalties may not be inflicted upon a person for being in a condition he is powerless to change.' In that view, appellant's 'condition' of public intoxication was 'occasioned by a compulsion symptomatic of the disease' of chronic alcoholism, and thus, apparently, his behavior lacked the critical element of mens rea. Whatever may be the merits of such a doctrine of criminal responsibility, it surely cannot be said to follow from Robinson. . . . [Robinson] thus does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' or 'occasioned by a compulsion.'

Id. at 533-534 (emphasis added). Accordingly, the Court declined to extend the Eighth Amendment protection to "involuntary" conduct. Instead, "[t]he court specifically rejected in Powell the notion that since the status of alcoholism could not be criminally punished under Robinson, conduct symptomatic of alcoholism (e.g. public drunkenness) was constitutionally protected as well." Fisher v. Coleman, 486 F. Supp. 311, 316 (W.D. Va. 1979).

This rejection has been understood by courts within this circuit as abrogating Driver. See Fisher, 486 F. Supp. at 316 ("In so holding, the court overruled and made inapplicable the holdings in the cases of Driver v. Hinnant, 356 F.2d 761 (4th Cir. 1966) and Easter v. District of Columbia, 361 F.2d 50 (D.C. Cir. 1966), insofar as those cases held that the Eighth Amendment bars criminal punishment of behavior symptomatic of alcoholism."); Rakes v. Coleman, 359 F. Supp. 370, 380 (E.D. Va. 1973) ("Driver . . . turned in essence upon the concept of mens rea specifically rejected in Powell. Accordingly, the Court concludes that Powell overrules Driver.").

19

Moreover, the defendants correctly cite to published opinions from this district and the State of Virginia which hold that the Interdiction Statute "does not make the status of alcoholism a criminal offense, but merely makes specific behavior . . . unlawful." Fisher, 486 F. Supp. at 316; Jackson v. Commonwealth, 604 S.E.2d 122, 124 (Va. Ct. App. 2004) ("Code § 4.1-322 imposes no criminal sanction for the status of being an alcoholic. It forbids specific behavior: possession of alcohol and public drunkenness by interdicted persons. Therefore, . . . Code § 4.1-322 does not violate the Eighth Amendment . . . ."). Indeed, under the statutory scheme, a person cannot be subjected to criminal penalties unless he or she engages in the act of consuming, possessing, or attempting to consume or possess alcohol. Va. Code § 4.1-305. Thus, the statute punishes conduct.[4]

Furthermore, and consistent with the statute analyzed in Powell, the Interdiction Statute imposes "a criminal sanction for public behavior which may create substantial health and safety hazards . . . and which offends the moral and esthetic sensibilities of a large segment of the community." Powell, 392 U.S. at 532. The dissent in Jones recognized that "both the [Supreme] Court and [the Ninth Circuit] have constrained this category of Eighth Amendment violation to persons who are being punished for crimes that do not involve conduct that society has an interest in preventing." 444 F.3d at 1139 (Rymer, J., dissenting); see also Anderson, 2009 WL 2386056, at *7 (noting, in rejecting plaintiffs' Eighth Amendment claim, that "a critical factor is whether and to what degree the City's enforcement of the [challenged] ordinances criminalizes

---

[4]  The court notes that plaintiffs assert that they are prosecuted for constructive possession of alcohol and thus are not engaged in the "act" of possessing alcohol. However, the court cannot find any case suggesting that constructive possession is without an actus reus. Haskins v. Commonwealth, 602 S.E.2d 402, 404 (Va. Ct. App. 2004) (noting that constructive possession can be shown by "acts, statements, or conduct of the accused . . . .") (emphasis added). Moreover, the Interdiction Statute penalizes not only possession and consumption but attempted possession and consumption, which also requires an "act." Hix v. Commonwealth, 270 Va. 335, 347 (2005) (noting that an attempt to commit a crime is comprised of both the intent to commit the crime and "a direct, ineffectual act done towards its commission").

20

'conduct that society has an interest in preventing'"). In <u>Powell</u>, the plurality stressed the importance of that consideration:

> [T]he most troubling aspects of this case, were <u>Robinson</u> to be extended [to include involuntary conduct derivative of status], would be the scope and content of what could only be a constitutional doctrine of criminal responsibility. . . . We cannot cast aside the centuries-long evolution of the collection of interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual . . . . The doctrines of actus reus, mens rea, insanity, mistake, justification, and duress have historically provided the tolls for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States.

<u>Id.</u> at 533-34. In Virginia, the <u>Jackson</u> court aptly observed that "suggestions for changes in societal views on the cause and effects of alcoholism and their impact on the laws of the state should be addressed in the legislature." 604 S.E.2d at 125. Accordingly, the court concludes that defendants have failed to state an Eighth Amendment claim for cruel and unusual punishment under a theory that the Interdiction Statute punishes status and not conduct. The Supreme Court has not answered "the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' or 'occasioned by a compulsion'"; courts within this circuit have discounted the validity of <u>Driver</u> and upheld Eighth Amendment challenges to the Interdiction Statute; and determining the outer contours of what can be punished is properly left to the States.[5] <u>Powell</u> at 533-34. Moreover, to hold differently would open the door to challenges to punishments which seemingly fit squarely within the bounds of the Eighth Amendment, such as claims by narcotics addicts for being punished for the status of "being" in possession of drugs.

---

[5]     Similarly, the court generally "defers to a state court's interpretation of a state statute." <u>Bush v. Palm Beach Cty. Canvassing Bd.</u>, 531 U.S. 70, 76 (2000). As discussed, a Virginia appellate court has already determined that the Interdiction Statute punishes conduct. <u>See Jackson</u>, 604 S.E.2d at 124 ("Code § 4.1-322 imposes no criminal sanction for the status of being an alcoholic.").

Similarly, a variety of sex offenders could evade punishment by arguing that their conduct was symptomatic of their disease. See Id. at 545. Without clear authority to do so, the court is unwilling to extend the Eighth Amendment protections to such lengths.

To the extent plaintiffs argue that Powell, Fisher, and Jackson were decided on inadequate records, the court is not persuaded. While the plurality in Powell stated, "We are unable to conclude, on the state of this record or on the current state of medical knowledge, that chronic alcoholics . . . suffer from an irresistible compulsion to drink and to get drunk in public," the Supreme Court also emphasized that it had not articulated "a constitutional doctrine of criminal responsibility." Powell, 392 U.S. at 535. The undeveloped record, therefore, was not determinative. Additionally, the plurality declined to extend Robinson to "the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' or 'occasioned by a compulsion.'" Id. Further, the decisions in Jackson and Fisher based their holdings on more than just a deficient record. See Fisher, 486 F. Supp. at 316 (holding that the Interdiction Statute makes specific behavior unlawful); Jackson, 604 S.E.2d at 125 (holding that the Interdiction Statute requires an act and thus does not punish status).

Plaintiffs, however, also argue that the Interdiction Statute, as applied to them as homeless individuals, violates the Eighth Amendment because their homelessness provides them with no other place to consume or possess alcohol other than in public. This argument is based on the assertion that the Interdiction Statute punishes status and not conduct, which has the result, plaintiffs allege, of punishing plaintiffs for just "being" a homeless alcoholic. As discussed, the court does not believe the Interdiction Statute punishes status. See Fisher, 486 F. Supp. at 316 (finding that the Interdiction Statute did not violate the Eighth Amendment when

the homeless plaintiff had admitted alcoholism). The Interdiction Statute makes it illegal for interdicted individuals to possess or consume alcohol, which is an act, regardless of whether that possession or consumption is in public or in the confines of their own home. Va. Code § 4.1-305.[6] Thus, in holding that the Interdiction Statute punishes acts, the court does not believe the fact of plaintiffs' homelessness makes the application of the Interdiction Statute to their conduct violative of the Eighth Amendment. In sum, the court concludes that plaintiffs have failed to state an Eighth Amendment claim and will dismiss Count One.

### b. Fourteenth Amendment Due Process Claims

Plaintiffs claim that the Interdiction Statute, as applied, deprives them of the due process guaranteed by the Fourteenth Amendment. The Fourteenth Amendment to the United States Constitution protects citizens from being deprived of "liberty" or "property" without "due process." U.S. Const. amend. XIV, § 1. In order to prevail on a procedural due process claim, a plaintiff must show: "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011). Plaintiffs make two arguments: first, that they are denied due process because they are not afforded counsel at their civil interdiction proceedings; and second, that they are denied due process because the civil nature of the interdiction proceeding allows the Commonwealth to prove an element of the consumption-prong crime by a preponderance of the evidence. Defendants argue that due process does not require the appointment of counsel at interdiction proceedings, because such proceedings are civil in nature and the individual is not subject to immediate arrest, prosecution,

---

[6]     The court acknowledges an exception to Va. Code § 4.1-305: "Any person who keeps and possesses lawfully acquired alcoholic beverages in his residence for his personal use . . . ." Va. Code § 4.1-200. However, interdicted individuals may not lawfully acquire alcoholic beverages, and thus, this exception does not apply.

or imprisonment. Instead, it is plaintiffs' "subsequent defiance of the law . . . that brings into play the criminal process" and the right to counsel. Ferguson v. Gathright, 485 F.2d 504, 506 (4th Cir. 1973). Finally, defendants contend that proof of being a "habitual drunkard" is not an element of the crime; rather, defendants must prove beyond a reasonable doubt that the individual was interdicted.

Due process requires fair notice and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Beyond that, its requirements are "flexible and call[] for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). The Supreme Court has observed that the Due Process Clause creates a presumption that an indigent litigant has a right to appointed counsel only when an adverse decision would result in his or her deprivation of physical liberty. Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C., 452 U.S. 18, 25 (1981) ("The pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation."). However, the Due Process Clause does not require the appointment of counsel for indigent persons in every such civil proceeding. See Turner v. Rogers, 564 U.S. 431, 443 (2011) (surveying past cases and observing that the right to counsel attaches "'only' in cases involving incarceration, not that a right to counsel exists in all such cases") (emphasis in original). The exact requirements of due process are determined by an examination of the relevant factors set out by the Supreme Court in Mathews v. Eldridge. See, e.g., Turner, 564 U.S. at 444 ("[W]e consequently determine the 'specific dictates of due process' by examining the 'distinct factors' that this Court has previously found useful in deciding what specific safeguards the

24

Constitution's Due Process Clause requires in order to make a civil proceeding fundamentally fair."). Therefore, the court must first determine whether plaintiffs have sufficiently pled that their civil interdiction proceedings deprive them of their physical liberty. If not, the court then must analyze whether the net balance of the private interest at stake, the government interest, and the risk that the procedures used will lead to erroneous deprivations outweigh the presumption of counsel that arises only when there is a loss of personal freedom. See Lassiter, 452 U.S. at 28 ("We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.").

Here, the court is not convinced that plaintiffs have pled facts demonstrating that the civil interdiction hearings themselves deprive them of their physical liberty. The court finds Ferguson v. Gathright, 485 F.2d 504 (4th Cir. 1973), instructive. In Ferguson, an individual was convicted of driving a motor vehicle after his license had been revoked. Id. at 505. Seeking habeas relief, the individual argued that he was deprived of due process because he did not receive the aid of counsel at the revocation proceeding. Id. at 505-06. In denying relief, the Fourth Circuit highlighted the important difference between the "quasicriminal" revocation proceeding and subsequent criminal proceeding: the revocation hearing did not result in the loss of liberty or threat of incarceration. Id. at 506. Instead, the individual came under the threat of incarceration "only if he subsequently determine[d] to take the law into his own hands and to operate a motor vehicle on the public highway without a valid permit." Id. (emphasis in original).

In the instant case, plaintiffs are not incarcerated upon an order of interdiction being entered against them. However harsh the label of "habitual drunkard" may be, it is the subsequent act of consuming, possessing, or attempting to consume or possess alcohol that gives

Case 7:16-cv-00095-GEC Document 36 Filed 02/08/17 Page 25 of 35 Pageid#: 467

rise to the deprivation of physical liberty. See id. (rejecting the argument that "because the [civil] proceedings provide a basis for the subsequent prosecution for the crime . . . they must be deemed an integral and essential part of that prosecution"). Moreover, the plaintiffs are afforded counsel at these subsequent proceedings in which incarceration is at risk. Therefore, it is not the civil proceedings that lead to the loss of liberty. Consequently, the presumptive right to counsel is not implicated. See Lassiter, 452 U.S. at 28.

Plaintiffs, however, contend that they are alcoholics and are thus compelled to consume and possess alcohol. Because they are homeless, this possession and consumption occurs in the public view, leading to their deprivation of liberty. Accordingly, plaintiffs contend that the presumption of a right to appointed counsel applies. Even assuming that the interdiction proceeding deprives the plaintiffs of physical liberty, the court finds that the Due Process Clause does not require the appointment of counsel at that proceeding. In making this determination, the court considers the nature of the "private interest that will be affected," the comparative risk of an erroneous deprivation, and the government interest at stake to determine whether plaintiffs were afforded sufficient due process. Mathews, 424 U.S. at 335.

Here, as in Turner, the "private interest that will be affected" weighs in favor of the right to counsel if, as plaintiffs argue, being interdicted likely leads to their incarceration. The Due Process Clause is implicated when imprisonment is at issue. See, e.g., Turner, 564 U.S. at 445. However, in contrast to the plaintiffs' interest, the court cannot ignore the Commonwealth's obvious concern in protecting the safety and welfare of its citizens by seeking to make illegal, in certain instances, the consumption or possession of alcohol. See Mitchell v. Comm'r of Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir. 1999) ("It cannot seriously be disputed that [the

Commonwealth] has a legitimate interest in discouraging alcohol and drug abuse."). The determination of what due process is required seemingly hinges on the third factor: the risk of erroneous deprivation.

Regarding this third factor, the court is reminded that each of the named plaintiffs is an alcoholic who is compelled to possess and consume alcohol, often in the public view because of his homelessness. They seek to certify a class of homeless alcoholics. Virginia Code § 4.1-333 provides that a "court may enter an order of interdiction" when "after a hearing upon due notice it appears to the satisfaction of the circuit court . . . that any person . . . has shown himself to be a habitual drunkard . . . ." In this situation and with these procedural protections, including notice, a hearing, and the ability of the issuing court to amend or alter the order of interdiction, the court believes that the risk of erroneously finding an alcoholic who is compelled to consume and possess alcohol a "habitual drunkard" is minimal. Moreover, it seems unlikely that the assistance of an attorney would change the result. See United States v. Kerley, No. 02CR1529, 2004 WL 187154, at *3 (S.D.N.Y. Jan. 29, 2004) ("This Court reads the third prong of the Eldridge balancing test as an inquiry into whether an attorney's legal skills or training would alleviate the risk of erroneous decisions" and noting that, as a practical matter, the presence of an attorney would not have helped the plaintiff). In light of these facts, "[i]t is difficult to see how additional process could significantly reduce the chance of erroneous deprivation." Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 149 (4th Cir. 2014); see also Turner, 564 U.S. at 446 ("[W]e must take account of opposing interests, as well as consider the probable value of 'additional or substitute procedural safeguards.'").

The court recognizes that in the case of some individuals, the risk of erroneous deprivation may be greater, tilting the balance towards the appointment of counsel. However,

27

"due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed." Gagnon v. Scarpelli, 411 U.S. 778, 788 (1973). As in Lassiter, the court believes that "the decision whether due process calls for the appointment of counsel for indigent [individuals in interdiction proceedings should] be answered in the first instance by the trial court, subject, of course, to appellate review." 452 U.S. at 31.

Plaintiffs also allege that the Interdiction Statute violates their Fourteenth Amendment due process rights because the Interdiction Statute allows the Commonwealth to prove an element of a crime using a preponderance of the evidence standard of proof. To be criminally convicted under the Interdiction Statute, the Commonwealth must show that the defendant was interdicted and engaged in a prohibited act. See Va. Code § 4.1-305. In In re Winship, the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. 358, 364 (1970). Plaintiffs contend that this statutory scheme allows the Commonwealth to prove the facts necessary to sustain a conviction at a civil proceeding where the state need not meet such an onerous burden.

The fundamental flaw in plaintiffs' argument is that being a "habitual drunkard," the showing required in an interdiction proceeding, is not an underlying fact that leads to incarceration. Instead, the Commonwealth must prove the fact that the individual has been interdicted, in addition to proving that defendant has possessed, consumed, or attempted to possess or consume alcohol. Va. Code § 4.1-305. Given that plaintiffs are appointed counsel at this subsequent criminal proceeding, that they are afforded notice and an opportunity to be heard prior to interdiction, and that there is an available means of challenging the underlying

interdiction, albeit perhaps not without difficulty, the court concludes that plaintiffs have failed to state a valid Fourteenth Amendment due process claim.

### c. Fourteenth Amendment Vagueness Claim

In Count Five, plaintiffs challenge the Interdiction Statute under a void-for-vagueness theory. "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). In evaluating whether a statute is vague, a court considers both whether it provides notice of the unlawful activity and whether it adequately curtails arbitrary enforcement. See United States v. Klecker, 348 F.3d 69, 71 (4th Cir. 2003). Plaintiffs claim that the civil component of the Interdiction Statute is tantamount to a criminal proceeding, because they will inevitably be convicted under the consumption prong of the Interdiction Statute. Consequently, because Virginia Code § 4.1-333 does not define "habitual drunkard," plaintiffs assert that it is void-for-vagueness.

It is well-settled that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974). "[W]here a statute does not regulate First Amendment freedoms, claims of overbreadth and vagueness may not be brought by persons whose actions fall clearly within the terms of the statute in question." Fisher v. Coleman, 486 F. Supp. 311, 314 (W.D. Va. 1979) (citing Broadrick v. Oklahoma, 413 U.S. 601, 608-10 (1973)). It seems readily apparent that the statutory term "habitual drunkard" applies to homeless alcoholics compelled to possess and consume alcohol with no choice but to do so in public spaces. See id. (finding the plaintiff, a homeless alcoholic, lacked standing to sue

under the void-for-vagueness theory). Plaintiffs do not have standing to mount a facial challenge to the Interdiction Statute under a void-for-vagueness theory.

To the extent that plaintiffs assert that the statute, as applied to them, is unconstitutionally vague because it does not provide sufficient notice of the proscribed conduct, the court does not agree.

> The Constitution does not require a precise statutory definition for every essential term used in a statute, but merely requires that the terms used have a meaning which would give a person of ordinary intelligence fair notice that his conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

Id. at 314. When assessing the constitutional clarity of the terms of a statute, the court evaluates the statute in light of the conduct to which the statute is applied. United States v. Nat'l Dairy Products Corp., 372 U.S. 29, 31 (1963). State statutes are presumed to be valid and "should be construed whenever possible so as to uphold their constitutionality." Telvest, Inc. v. Bradshaw, 547 F. Supp. 791, 796 (E.D. Va. 1982) (citing Graham v. Richardson, 403 U.S. 365, 382-83 (1971)). A statute will not fail simply because there is difficulty in determining whether certain marginal offenses fall within their language. Nat'l Dairy Products Corp., 372 U.S. at 32.

In the instant case, the Interdiction Statute contains explicit standards which law enforcement may apply to prevent arbitrary and discriminatory enforcement. The court further believes that it puts the plaintiffs on reasonable notice as to the proscribed conduct. Compare Va. Code § 4.1-305 (making it illegal for an interdicted person "to consume, purchase or possess, or attempt to consume, purchase or possess, any alcoholic beverage"), with Tomlin v. Anderson, 106 F.3d 402, 1997 WL 35577, at *5 (6th Cir. 1997) (upholding a statute that made it illegal for a person to possess a firearm "while under a disability," including persons who were "drug

30

dependent, in danger of drug dependence, or a chronic alcoholic"). Moreover, the issue of the statute's vagueness as applied to a homeless alcoholic has been litigated in this district previously. See Fisher, 486 F. Supp. at 314-15. The Fisher court determined that the term "habitual drunkard" was sufficiently precise. Id. at 315. ("[T]he common meaning of the terms habitual drunkard clearly encompasses one who . . . is admittedly in the continual habit of being intoxicated from alcohol."). This court sees no reason to depart from the holding in Fisher, which upheld the Virginia Interdiction Statute as applied to an admitted alcoholic with no home who was routinely convicted for public intoxication.[7]

### d. Equal Protection Claim

Lastly, defendants contend that plaintiffs have failed to state an equal protection claim. Defendants argue that the Interdiction Statute does not discriminate against a protected class and does not implicate a fundamental right. Defendants also argue that the Interdiction Statute is the proper exercise of the Commonwealth's police power in promoting public safety by subjecting recidivist individuals to heightened criminal sentences for possession of alcohol and public intoxication. Plaintiffs allege that they state an equal protection claim because they are treated differently than similarly-situated individuals and because the Interdiction Statute implicates a fundamental right: the right to be free from incarceration.

The Equal Protection Clause of the Fourteenth Amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Simply put, a State generally cannot "burden[] a fundamental right, target[] a suspect class,

---

[7] To the extent plaintiffs argue that Fisher is distinguishable because they have alleged no convictions for public intoxication prior to interdiction, the court notes that plaintiffs are seeking prospective injunctive relief. With that in mind, the ten to thirty convictions each plaintiff has received are squarely in line with the numerous convictions the plaintiff in Fisher had received, further demonstrating that the instant matter is on all fours with Fisher.

or intentionally treat one differently than others similarly situated . . . ." Loesel v. City of Frankenmuth, 692 F.3d 452, 461 (6th Cir. 2012). As with vagueness challenges, "[i]n considering an equal protection challenge, [courts] generally will presume the legislation at issue to be valid and will uphold the statute if the classification it draws is rationally related to a legitimate purpose. If, however, the statute employs a suspect class or burdens the exercise of a constitutional right," strict scrutiny is applied. Mitchell v. Comm'r of the Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir. 1999). When a fundamental right is not implicated, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Once this threshold is passed, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Classifications based not on a suspect class will be upheld if they are rationally related to a legitimate government interest, as will statutes that do not burden a fundamental right. Id. Accordingly, the court considers whether the Interdiction Statute targets a suspect class, treats plaintiffs differently from similarly situated individuals, or burdens a fundamental right.

At the outset, the court notes that plaintiffs are not a suspect class. Alcoholics have not yet achieved that status. Mitchell, 182 F.3d at 274. Neither have homeless individuals. Joel v. City of Orlando, 232 F.3d 1353, 1359 (11th Cir. 2000). Therefore, plaintiffs have not stated a claim that the statute impermissibly targets a suspect class.

The court next turns to the question of whether plaintiffs were treated differently than similarly-situated individuals. Plaintiffs frame their argument as if they are similarly situated to non-interdicted individuals and non-alcoholics. The court does not consider interdicted

32

individuals and non-interdicted individuals, or alcoholics and non-alcoholics, to be similarly situated. To demonstrate that they are similarly situated to other individuals, the plaintiffs must be "similar in all aspects relevant to attaining the legitimate objectives of legislation." Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 291 (4th Cir. 2007).

In the instant case, those individuals who have been interdicted have different legal rights than those who have not been: they have been either convicted of driving under the influence or shown in a judicial proceeding to be a habitual drunkard, prohibiting them from engaging in certain conduct. See, e.g., Berg v. Egan, 979 F. Supp. 330, 337 (E.D. Pa. 1997) (noting that distinctions between people with different rights and responsibilities are less likely than other distinctions to be irrational or arbitrary); United States v. Nicolas-Juan, 426 F. App'x 154, 2011 WL 1624963, at *1 (4th Cir. Apr. 29, 2011) (finding that a convicted criminal alien was not similarly situated with a non-criminal alien). Nor is the court convinced that they are, despite this difference, "similar in all aspects relevant to attaining the legitimate objectives of legislation," when a possible aim of the legislation is to protect the public from the harms of excessive alcohol consumption. Van Der Linde Housing, Inc., 507 F.3d at 291. Importantly, even if plaintiffs were similarly situated to non-alcoholics, plaintiffs have alleged no discriminatory purpose or intent in treating non-alcoholics and alcoholics differently. See Morrison, 239 F.3d at 654 ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

Plaintiffs, however, also argue that the criminal prong of the Interdiction Statute treats similarly-situated interdicted individuals disparately, as homeless interdicted individuals are allegedly prosecuted more so than similarly-situated non-homeless interdicted individuals. This

Case 7:16-cv-00095-GEC   Document 36   Filed 02/08/17   Page 33 of 35   Pageid#: 475

claim also fails as the complaint is devoid of any allegation that the facially-neutral criminal prong of the Interdiction Statute has a discriminatory intent or purpose. See Morrison, 239 F.3d at 654. Consequently, unless the plaintiffs demonstrate that a fundamental right is implicated, rational basis will apply.

In equal protection cases, "the focus, for purposes of determining whether a 'fundamental interest' is involved, is not upon the punishment or other imposition to which the complaining party has been subjected, but rather upon the activity of the complaining party which has been made the reason for the punishment or imposition." United States v. Cohen, 733 F.2d 128, 133 (D.C. Cir. 1984) (emphasis in original). As a result, the court does not apply strict scrutiny when the consequence of violating a regulation or substantive law is incarceration. Id. With this understanding, the activity giving rise to the punishment is the possession or consumption of alcohol by homeless alcoholics who have been interdicted. Possession and consumption of alcohol is not a fundamental right. Cf. Giordano v. Connecticut Valley Hosp., 588 F. Supp. 2d 306, 321-22 (D. Conn. 2008) (upholding a smoking ban at a state-operated psychiatric facility and finding that plaintiffs did not have a fundamental right to smoke). If the consumption prong of the Interdiction Statute violated the fundamental right of being free from incarceration, it would follow that every penal statute or civil contempt proceeding that led to incarceration would need to survive strict scrutiny. Accordingly, the court does not believe that the Interdiction Statute implicates a fundamental right and will review the statutory scheme under a rational basis standard.

The plaintiffs assert that the Interdiction Statute does not survive this highly deferential standard of review. They contend that there is no rational basis for criminalizing the possession and consumption of alcohol by homeless alcoholics. In support of this argument, plaintiffs again

34

rely on Ledezma-Cosino, in which the Ninth Circuit determined that whether someone was an alcoholic had no rational relationship to their good moral character. 819 F.3d at 1075. For the reasons discussed above, Ledezma-Cosino is not applicable to the instant case. Moreover, the Commonwealth has a legitimate interest in discouraging alcohol and drug abuse. See Mitchell, 182 F.3d at 274. It cannot be said that preventing the possession or consumption of alcohol by individuals who, like plaintiffs, admittedly cannot mitigate their alcohol consumption, or who have been adjudged to be at risk of abusing alcohol through interdiction proceedings, is not rationally related to this legitimate interest. As a result, the court will grant defendants' motion to dismiss plaintiffs' equal protection claims.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss will be granted. The Clerk is directed to strike this case from the court's active docket and to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This ___8ᵗʰ___ day of February, 2017.

_____
Chief United States District Judge